Carol A Sobel SBN 84483
Weston Rowland SBN 327599
Law Office of Carol A. Sobel
2632 Wilshire Boulevard, #552
Santa Monica, CA 90403
t. (310) 393-3055
e. carolsobellaw@gmail.com
e. rowland.weston@gmail.com

David Loy SBN 229235
Aaron R. Field SBN 310648
First Amendment Coalition
534 4th St., Suite B
San Rafael, CA 94901
t.(415) 460-5060
e. dloy@firstamendmentcoalition.org
e. afield@firstamendmentcoalition.org

Peter Bibring SBN 223981
Law Office of Peter Bibring
2140 W Sunset Blvd # 203,
Los Angeles, CA 90026
t.(213) 471-2022
e. peter@bibringlaw.com

Paul Hoffman, SBN 71244
Michael Seplow, SBN 150183
John Washington, SBN 315991
Schonbrun, Seplow, Harris, Hoffman & Zeldes LLP
200 Pier Avenue #226
Hermosa Beach, California 90254
t.(310) 396-0731
e. hoffpaul@aol.com
e. mseplow@sshhzlaw.com
e. jwashington@sshhlaw.com

Susan E Seager SBN 204824
Law Office of Susan Seager
128 N. Fair Oaks Avenue
Pasadena, CA 91103
t. (310) 890-8991
e. susanseager1999@gmail.com

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

| | |
|---|---|
| LOS ANGELES PRESS CLUB, STATUS COUP,<br><br>P<small>LAINTIFFS</small>,<br><br>v.<br><br>CITY OF LOS ANGELES, a municipal entity, JIM MCDONNELL, LAPD CHIEF, sued in his official capacity;<br><br>D<small>EFENDANTS</small>. | Case No. 2:25-CV-05423-HDV-E<br><br><br>HON. HERNÁN D. VERA<br><br>DECLARATION OF CAROL A SOBEL |

1
DECLARATION OF CAROL A. SOBEL

DECLARATION OF CAROL A SOBEL

I, CAROL A. SOBEL, declare as follows:

1. I am a counsel for plaintiffs in this action. I am an attorney admitted to practice before the Supreme Court of California and the Central District of California, among other federal courts. I make this declaration from facts of which I have based on personal knowledge and could and would testify to competently.

2. From 1985 to 1997 I was the First Amendment attorney at the ACLU Foundation of Southern California. In that capacity, I participated in all of the ACLU's litigation involving demonstration activities in the City of Los Angeles. Since entering private practice in 1997, I have continued to litigate First and Fourth Amendment protest cases. I estimate that I have been lead counsel or co-counsel on more than two dozen cases challenging police actions against demonstrators in Los Angeles over the past 30 years.

3. Among the First Amendment cases in which I was involved while at the ACLU was a lawsuit arising from protests of the veto by then-Governor Pete Wilson of AB101, an omnibus gay rights bill. The lawsuit, titled *Marmillion v. City of Los Angeles*, involved approximately 350 individuals who participated in a demonstration in Century City, across from the Century Plaza Hotel, where Governor Wilson was speaking at a Republican fundraiser event. *Marmillion* involved, in part, allegations of improper and capricious dispersal orders, as well as inappropriate use of force with batons by officers with the Metro mounted unit. Former ACLU staff attorney Jon Davidson and volunteer counsel Carol Watson were lead attorneys in *Marmillion*.

4. Following the uprising after the 1991 beating of Rodney King by the Los Angeles Police Department, I was one of three attorneys who worked with LAPD Captain Sandy Wasson of Risk Management and then Lieutenant Michael Hillman of Metropolitan Division over the course of nearly six months to revise the LAPD's Manual sections on Crowd Control Management and Use of Force.

5.      In 2000, in advance of and following the Democratic National Convention being held at the Staples Center, the National Lawyers Guild and the ACLU Foundation of Southern California filed three cases on behalf of organizers of planned protests at the Democratic National Convention. I was counsel for the National Lawyers Guild on each of those actions.

6.      The first case, *SEIU Local 660 v. City of Los Angeles,* Case No. CV 00-7119-GAF (C.D. Cal. Jul 20, 2000), resulted in a preliminary injunction invalidating the entire public assembly/marches permitting scheme in advance of the Democratic Convention. The second, *D2K Convention Planning Coalition, et al. v. Chief Bernard Parks*, cv-00-08556 DPP (RZx) (C.D. Cal. 2000), successfully prevented a physical attack by the LAPD on the protestors at their Convergence Center on the eve of the convention. This tactic was used by the police in advance of the 2000 Republican National Convention in Philadelphia and a large demonstration in Washington, D.C. that same year to prevent protests. On the evidence presented by plaintiffs in the *D2K* case, the district court issued an order, requiring the LAPD to seek a warrant from the federal court before any entry of the Convergence Center.

7.      The third lawsuit from the 2000 DNC, *National Lawyers Guild v. City of Los Angeles*, 00-1193-S3 (CFMS) (C.D. Cal. 2000), was filed after the DNC to address the crowd control policies of the LAPD, including the use of force and the abrupt termination of a largely peaceful protest by the LAPD at the convention. In 2005, I was the lead attorney involved in negotiating a settlement of the DNC litigation with former LAPD Commander Stuart Maislin and former Deputy Chief Michael Hillman. The 2000 DNC was the first time the LAPD used "rubber bullets" against protestors. Participants in the demonstrations were shot with "rubber bullets" as they followed police orders and exited the Staples Center Parking lot. Others were struck in the head and neck with batons by officers on horseback. Still others were struck by officers on motorcycles while walking on

the sidewalk to their cars.  I was personally present at the Staples Center parking lot, the site of the demonstrations, throughout the DNC and both personally observed and personally experienced the deployment of "rubber bullets" and the use of the horses to attack individuals attempting to leave the protest site after the LAPD declared an unlawful assembly.

8.       Shortly after the use of force against protestors at the DNC, the Los Angeles Police Department again deployed similar force against a permitted protest at the annual October 22nd Coalition to End Police Abuse march in 2000.  The president of the Police Commission at the time, Gerald Chaleff, granted permission for a march that would circle the block where the former police headquarters on Los Angeles Street, Parker Center, was located.  However, then Assistant Chief Robert Vernon did not want the protestors to march around police headquarters so he deliberately ignored the permit, blocked protestors' path with horses and mounted officers, and then kettled protestors on Los Angeles Street in front of Parker Center.

9.       I was taking the deposition of Commissioner Chaleff in another case when he received the call about Chief Vernon's rejection of the permit.  Commissioner Chaleff spoke to me and then confirmed that the protestors could march the permitted route.  Despite Chaleff's reaffirmation of the permit, the LAPD blocked the marchers' passage on 1st Street with a skirmish line of officers on horseback, then charged the protestors and forced them back onto Los Angeles Street, where they used overhand baton strikes to injure protestors. The LAPD also used "rubber bullets." *Davies v. City of Los Angeles*, CV 01-09080 FMC (MANx),   One individual I represented in this case suffered a fractured arm when he raised it to prevent a baton strike to his head by officers on horseback.

10.      Along with Barry Litt and Paul Hoffman, I was approved as class counsel in a lawsuit involving a large-scale police assault on an immigrant rights march and rally in MacArthur Park in Los Angeles on May Day, 2007. See *Multi-Ethnic Immigrant Worker Organizing Network ("MIWON") v. City of Los Angeles*,

246 F.R.D. 621 (C.D. Cal. 2007). Former Judge Matz appointed us as lead class counsel for settlement purposes for eight consolidated cases filed in federal court arising from the May Day events. I argued the class certification motion for the *MIWON* plaintiffs. The decision granting certification is published at the citation set forth above.

11. At the hearing on the motion for class certification, Judge Matz directed Plaintiffs' counsel to file with the Court a list of all the prior settlements of lawsuits against the City and the LAPD for violations of the rights of protestors. We were directed to include those cases that led to injunctive relief orders and those that were resolved by the payment of damages only. As the order on certification notes, I submitted the information as a Supplemental Declaration with attachments. 246 F.R.D. at 627. The order granting class certification discusses some of the evidence submitted by me to the court of prior incidents.

12. Ultimately, the Court entered a structured settlement addressing required policy changes by the LAPD. A true and correct copy of the *MIWON* Structured Settlement issued by the Court is attached at Exhibit 18.

13. Judge Matz's order discusses two cases in particular. One, the *Marmillion* case, involved a protest outside the Century Plaza Hotel in 1991 in response to Governor Pete Wilson's veto of AB101, the omnibus gay rights bill. Along with Jon Davidson, then at the ACLU, I represented an individual who participated in that protest and had his eye socket injured when he was struck in the face with a baton by a Metro Mounted Unit officer.

14. I was also counsel in the 1992 *Vassos* case cited in Judge Matz's order, where the City agreed to changes in crowd control policies, including dispersal orders. *Id.* at 627. I represented Marilyn Vassos and her husband, Angelo Vassos, several times. This case involved the arrest of Vassos and others based on an illegal declaration of an unlawful assembly and an insufficient order to disperse. A copy of the 1995 settlement in the *Vassos* case is attached as Exhibit 19. As the *Vassos*

and *MIWON* settlements establish, many of the issues applicable to declaring and dispersing a purported unlawful assembly and that were the subject of revisions to LAPD policies and training 30 years ago are still at issue here.

15. I was also counsel, along with Paul Hoffman and others, in *National Lawyers Guild, et al. v. City of Los Angeles*, CV 01-6877) FMC (C.D. Cal.). The Court entered a stipulated consent judgment, incorporating the terms of the 2005 agreement reached in the settlement of the post-DNC litigation in *National Lawyers Guild*, *supra*. The Stipulated Judgment provided for policy and training revisions in crowd control practices, as well as for the Court to retain jurisdiction to enforce any violation of the judgment for a specified period of years. A copy of the agreement is attached at Exhibit 20.

16. Based on events at the 2000 DNC, the ACLU filed a lawsuit on behalf of several journalists – television and photographic – for violation of their First Amendment rights. The case *Al Crespo v. City of Los Angeles*, Case No. CV 00-08869 (GHK) (C.D. Cal. filed Aug. 21, 2000), resulted in a settlement, setting out the parameters for press access. A copy of the *Crespo* settlement is attached to my declaration at Exhibit 21.

17. After the *MIWON* settlement, along with Mssrs. Hoffman, Litt and others, I was counsel in two subsequent class actions involving mass arrests by the LAPD and the failure to give adequate dispersal orders as required by the combined DNC/*MIWON* settlement. Neither involved the discharge of KIPs. The next protests where KIPs were discharged against members of the public and the press without a declaration of an unlawful assembly and a lawful dispersal order were the 2020 protests following the death of George Floyd. Along with Mssrs. Hoffman and Litt, I was appointed as class counsel in the case. *Black Lives Matter, et al. v. City of Los Angeles, et al.*, Case No. cv-20-5027 CBM (ASx).

18. In *Black Lives Matter*, Plaintiffs initially filed an Ex Parte Application for a Temporary Restraining Order. In opposition, the City argued that

the George Floyd protests were an unusual event and unlikely to recur. The City made this same argument unsuccessfully in opposition to any injunctive relief in the *MIWON* case. 246 F.R.D. at 628.

19. Although Judge Marshall initially denied an emergency injunction in *BLM*, within a short time thereafter, the LAPD deployed KIPs and other force at multiple protests without adequate, if any, lawful justification for using such force and without adequate, if any, dispersal orders. Plaintiffs renewed their request for injunctive relief based on anti-Trump protests in Tujunga in July 2020, where bean bag projectiles were shot at several individuals at close range, causing significant injury to each protestor who was targeted.

20. Plaintiffs also cited to the use of force by the LAPD on July 17, 2021 in response to a protest at Wi-SPA. That matter is now the subject of litigation in the District Court. *Woodward, et al. v. City of Los Angeles, et al.*, Case No.: 2:22-cv-1306 GW (AJR). The Ninth Circuit recently summarily denied the individual officer's interlocutory appeal in a related case. *Singh v. Jenal*, 2025 U.S. App. LEXIS 4799 (9th Cir. 2025).

21. In addition, to support the renewed application for injunctive relief, Plaintiffs cited a 2021 protest a year after Breonna Taylor was killed by the police in March 2020 in Louisville, Tennessee, and the use of force against protestors and arrests of press at protests in response to the City's closure of an encampment of unhoused individuals in Echo Park. Based on these incidents of the repeated use of force by the LAPD, the Court granted the motion on the new evidence submitted by Plaintiffs of an ongoing threat of harm. *See* 2021 U.S. Dist. LEXIS 171184, 2021 WL 3162706 (issuing preliminary injunction on use of KIPs).

22. Attached to my declaration are several after-action reports examining several large-scale demonstrations over the past two decades and the LAPD's response to each. Each is an official document obtained by me from public websites for the Los Angeles Police Department, Los Angeles City Council, or the

Los Angeles Police Commission. Each document was downloaded by me from the official Los Angeles government website on which it appeared. For each exhibit, I identified the source and the internet url.

23. Exhibit 22 is a true and correct copy of the after-action report issued by the LAPD after the Mayday 2007 assaults, titled An Examination of May Day 2007. www/lacp.org/2007-Articles Main/100907-Main First-FinalReport. The Report identifies, among other deficiencies, the failure to designate an area for media and the subsequent violations of the *Crespo* agreement. *Id.* at pp. 43-44. The Report sets out specific remedial action to accommodate the media. *Id.* at p. 48. The Report also sets out remedial action needed to address dispersal orders and use of force.

24. Following the 2020 George Floyd protests in Los Angeles, three separate reports were issued documenting deficiencies and recommendations for policy reform. Two are attached to my declaration. The first report was entitled "An Independent Examination Of The Los Angeles Police Department 2020 Protest Response." Exhibit 23 is a true and correct copy of the report by former LAPD personnel, including Gerald Chaleff and Sandy Jo MacArthur, at the request of the City Council. It is available online at the City Council File Index at KM_C554e-20210310155205.

25. Attached at Exhibit 24 is a copy of the "Safe LA|2020" after-action report issued by the LAPD on the 2020 George Floyd protests. It is available on the department's website: https://www.lapdpolicecom.lacity.org/041321/BPC_21-066. The LAPD report noted that, in the course of the protests, the Chief's office "emailed the Al Crespo v. City of Los Angeles decision to Department personnel and reminded officers of journalists' right to cover public protests even if an unlawful assembly is declared and an order to disperse is issued." Ex. 24, p. 19. The Chaleff Report noted the failure to comply with the *Crespo* settlement. Ex.

23, pp. 85-86. The LAPD report noted only that, in the midst of the protests, they emailed everyone a copy of the *Crespo* settlement. Ex. 23, p.  .

26. Attached at Exhibit 25 is the communication from the Board of Police Commissioners to the Los Angeles City Council Public Safety Committee with the attachments and recommendations for reform initiatives following the 2020 Floyd protests. The entire document is available on the Los Angeles City Council File Index at 01RM136_KM-C284e-20211008114408.

27. Attached at Exhibit 26 is the after-action report prepared by the LAPD following the March, 2021 clearance of an encampment of unhoused persons at Echo Park. The Report predates the amendment of Penal Code Sec. 409.

28. In its report on the Echo Park police response, the LAPD took the position that the press was required to disperse along with the public if an unlawful assembly was declared. Ex. 26, p.53. "As stated in the Department's Media Relations Handbook, California Penal Code Sections 407 and 409 state that the media is not exempt from the requirement to disperse after an unlawful assembly has been declared. Department policy further states that, 'After declaring an unlawful assembly, the Department will designate a dispersal route for all persons present, including the news media, to use when evacuating."

29. The LAPD's action at Echo Park, restricting media access, predates the amendment of California Penal Code Sec. 409.7 but postdates the decision of the Ninth Circuit in *Index Newspapers LLC v. United States Marshals Serv.*, 977 F.3d. 817, 826 (9th Cir. 2020), declining to lift district court injunction ensuring press right to remain after dispersal order.

30. Attached to my declaration at Exhibits 79 and 80 are true and correct copies of two documents issued by the LAPD concerning Assembly Bill 48 and Senate Bill 98. The first document, dated 10-30-2020, is signed by Deputy Chief Dominic Choi. It sets out recognition for members of the press at protests and

1  demonstrations and reminds all department personnel that journalists may remain
2  in an area when an unlawful assembly is declared and a dispersal order issued.
3      31.   The second document is a memorandum dated December 8, 2021 to
4  the Board of Police Commissioners and attaching a copy of a notice sent to all
5  department personnel from Chief Moore on AB 48 and SB 98.
6      I declare under penalty of perjury that the foregoing is true and correct.
7  Executed this 2nd day of July, 2025, at Santa Monica, California.

*/s/ Carol A. Sobel*