Carol A Sobel SBN 84483
Weston Rowland SBN  327599
Law Office of Carol A. Sobel
2632 Wilshire Boulevard, #552
Santa Monica, CA 90403
t. (310) 393-3055
e. carolsobellaw@gmail.com
e. rowland.weston@gmail.com

David Loy SBN 229235
Aaron R. Field SBN 310648
First Amendment Coalition
534 4th St., Suite B
San Rafael, CA 94901
t.(415) 460-5060
e. dloy@firstamendmentcoalition.org
e. afield@firstamendmentcoalition.org

Peter Bibring SBN 223981
Law Office of Peter Bibring
2140 W Sunset Blvd # 203,
Los Angeles, CA 90026
t.(213) 471-2022
e. peter@bibringlaw.com

Paul Hoffman, SBN 71244
Michael Seplow, SBN 150183
John Washington, SBN 315991
Schonbrun, Seplow, Harris, Hoffman
& Zeldes LLP
200 Pier Avenue #226
Hermosa Beach, California 90254
t.(310) 396-0731
e. hoffpaul@aol.com
e. mseplow@sshhzlaw.com
e. jwashington@sshhlaw.com

Susan E Seager SBN 204824
Law Office of Susan Seager
128 N. Fair Oaks Avenue
Pasadena, CA 91103
t. (310) 890-8991
e. susanseager1999@gmail.com

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

LOS ANGELES PRESS CLUB,
STATUS COUP,

PLAINTIFFS,

v.

CITY OF LOS ANGELES, a municipal
entity,  JIM MCDONNELL, LAPD
CHIEF, sued in his official capacity;

DEFENDANTS.

Case No. 2:25-CV-05423-HDV-E

HON. HERNÁN D. VERA

**VOLUME TWO** OF PLAINTIFFS'
EXHIBITS TO' EX PARTE
APPLICATION FOR A TEMPORARY
RESTRAINING ORDER AND ORDER
TO SHOW CAUSE RE
PRELIMINARY INJUNCTION

1

# Exhibit 7

CALIFORNIA COMMISSION ON PEACE OFFICER STANDARDS AND TRAINING

# Basic Course Workbook Series

## Student Materials

**Learning Domain 24**
**Handling Disputes/Crowd Control**
**Version 4.0**

THE MISSION OF THE CALIFORNIA COMMISSION ON PEACE OFFICER STANDARDS AND TRAINING IS TO CONTINUALLY
ENHANCE THE PROFESSIONALISM OF CALIFORNIA LAW ENFORCEMENT IN SERVING ITS COMMUNITIES

54

**Basic Course Workbook Series**
**Student Materials**
**Learning Domain 24**
**Handling Disputes/Crowd Control**
**Version 4.0**

© Copyright 2007
California Commission on Peace Officer Standards and Training (POST)
All rights reserved.

Published 1999
Revised January 2006
Revised July 2007
Updated December 2021

This publication may not be reproduced, in whole or in part, in any form or by any means electronic or mechanical or by any information storage and retrieval system now known or hereafter invented, without prior written permission of the California Commission on Peace Officer Standards and Training, with the following exception:

California law enforcement or dispatch agencies in the POST program, POST-certified training presenters, and presenters and students of the California basic course instructional system are allowed to copy this publication for non-commercial use.

All other individuals, private businesses and corporations, public and private agencies and colleges, professional associations, and non-POST law enforcement agencies in-state or out-of-state may purchase copies of this publication, at cost, from POST as listed below:

From POST's Web Site:
**www.post.ca.gov**
Go to Ordering Student Workbooks

## POST COMMISSIONERS

| | |
|---|---|
| Joyce Dudley – Chair | District Attorney<br>Santa Barbara County |
| Rick Braziel – Vice Chair | Educator<br>Humboldt State University |
| Alan Barcelona | Special Agent<br>California Department of Justice |
| Ingrid Braun | Sheriff-Coroner<br>Mono County Sheriff's Department |
| Lai Lai Bui | Sergeant<br>Sacramento Police Department |
| Barry Donelan | Sergeant<br>Oakland Police Department |
| Robert T. Doyle | Sheriff<br>Marin County |
| Kelly Gordon | Chief<br>Monterey Park Police Department |
| P. Lamont Ewell | Public Member |
| Geoff Long | Public Member |
| Tina Nieto | Chief<br>Marina Police Department |
| James O'Rourke | Sergeant<br>California Highway Patrol |
| Batine Ramirez | Sergeant<br>Placer County Sheriff's Department |
| John Marsh<br>Representing Rob Bonta<br>Attorney General<br>Ex-Officio Member | Chief<br>Director of Division of Law Enforcement |

# THE ACADEMY TRAINING MISSION

The primary mission of basic training is to prepare students mentally, morally, and physically to advance into a field training program, assume the responsibilities, and execute the duties of a peace officer in society.

# FOREWORD

The California Commission on Peace Officer Standards and Training sincerely appreciates the efforts of the many curriculum consultants, academy instructors, directors and coordinators who contributed to the development of this workbook. We must also thank the California law enforcement agency executives who allowed their personnel to participate in the development of these training materials.

This student workbook is part of the POST Basic Course Training System. The workbook component of this system provides a self-study document for every learning domain in the Basic Course. Each workbook is intended to be a supplement to, not a substitute for, classroom instruction. The objective of the system is to improve academy student learning and information retention and ultimately contribute to you becoming a peace officer committed to safety, and to the communities you will serve.

The content of each workbook is organized into sequenced learning modules to meet requirements as prescribed both by California law and the POST Training and Testing Specifications for the Basic Course.

It is our hope that the collective wisdom and experience of all who contributed to this workbook will help you, the student, to successfully complete the Basic Course and to enjoy a safe and rewarding career as a peace officer.


MANUEL ALVAREZ, Jr.
Executive Director

# Table of Contents

| Topic | See Page |
|---|---|
| **Preface** | **iii** |
| Introduction | iii |
| How to Use the Student Workbook | iv |
| **Chapter 1:    Peace Officer Responsibilities** | **1-1** |
| Overview | 1-1 |
| Introduction to Disputes | 1-3 |
| Peace Officer Safety | 1-8 |
| Intervention Techniques | 1-15 |
| Chapter Synopsis | 1-19 |
| Workbook Learning Activities | 1-21 |
| **Chapter 2:    Defusing, Mediating, and Resolving Disputes** | **2-1** |
| Overview | 2-1 |
| Defusing Techniques | 2-3 |
| Mediation and Conflict Resolution | 2-9 |
| Chapter Synopsis | 2-16 |
| Workbook Learning Activities | 2-17 |

*Continued on next page*

62

# Table of Contents, Continued

| Topic | See Page |
|---|---|
| **Chapter 3:    Specific Types of Disputes** | **3-1** |
| Overview | 3-1 |
| Family Disputes | 3-3 |
| Landlord/Tenant Disputes | 3-10 |
| Disputes Involving Repossession | 3-20 |
| Chapter Synopsis | 3-28 |
| Workbook Learning Activities | 3-30 |
| **Chapter 4:    Crowd Dynamics** | **4-1** |
| Overview | 4-1 |
| The Freedom of Speech | 4-3 |
| Crowd Dynamics | 4-7 |
| Chapter Synopsis | 4-17 |
| Workbook Learning Activities | 4-18 |
| **Chapter 5:    Crowd Management and Control** | **5-1** |
| Overview | 5-1 |
| Crowd Management | 5-3 |
| Crowd Control | 5-7 |
| Riot Control | 5-13 |
| Phases of Riot Development | 5-21 |
| Crowd Control Formations | 5-24 |
| Chapter Synopsis | 5-30 |
| Workbook Learning Activities | 5-31 |
| **Glossary** | **G-1** |

# Preface

## Introduction

| | |
|---|---|
| **Student workbooks** | The student workbooks are part of the POST Basic Course Instructional System. This system is designed to provide students with a self-study document to be used in preparation for classroom training. |

| | |
|---|---|
| **Regular Basic Course training requirement** | Completion of the Regular Basic Course is required, prior to exercising peace officer powers, as recognized in the California Penal Code and where the POST-required standard is the POST Regular Basic Course. |

| | |
|---|---|
| **Student workbook elements** | The following elements are included in each workbook:<br><br>• chapter contents, including a synopsis of key points,<br>• supplementary material, and<br>• a glossary of terms used in this workbook |

# How to Use the Student Workbook

**Introduction**

This workbook provides an introduction to the training requirements for this Learning Domain. It is intended to be used in several ways: for initial learning prior to classroom attendance, for test preparation, and for remedial training.

**Workbook format**

To use the workbook most effectively, follow the steps listed below.

| Step | Action |
|------|--------|
| 1 | Begin by reading the:  Preface and How to Use the Workbook, which provide an overview of how the workbook fits into the POST Instructional System and how it should be used. |
| 2 | Refer to the Chapter Synopsis section at the end of each chapter to review the key points that support the chapter objectives. |
| 3 | Read the text. |
| 4 | Complete the Workbook Learning Activities at the end of each chapter.  These activities reinforce the material taught in the chapter. |
| 5 | Refer to the Glossary section for a definition of important terms. The terms appear throughout the text and are bolded and underlined the first time they appear (e.g., **term**). |

# Chapter 1

# Peace Officer Responsibilities

## Overview

| | |
|---|---|
| **Learning need** | When called to handle a dispute, peace officers must be aware of their responsibility to keep the peace in order to prevent a civil matter from escalating into a criminal activity that could threaten the safety of peace officers and the persons involved. |

**Learning objectives**

The chart below identifies the student learning objectives for this chapter.

| After completing study of this chapter, the student will be able to: | Objective ID |
|---|---|
| • Explain the responsibilities of peace officers at the scene of a dispute. | 24.01.1 |
| • Describe measures peace officers should take to protect their own safety and the safety of others when:<br> - approaching,<br> - making initial contact, and<br> - once inside a residence or area where a dispute is taking place. | 24.01.2<br>24.01.3<br>24.01.4 |
| • Describe intervention techniques that can be used to protect the safety of peace officers, other persons, or property. | 24.01.5 |

*Continued on next page*

66

# Overview, Continued

**In this chapter**    This chapter focuses on peace officer responsibilities and safety issues involved when handling disputes. Refer to the chart below for specific topics.

| Topic | See Page |
|-------|----------|
| Introduction to Disputes | 1-3 |
| Peace Officer Safety | 1-8 |
| Intervention techniques | 1-15 |
| Chapter Synopsis | 1-19 |
| Workbook Learning Activities | 1-21 |

# Introduction to Disputes

**Introduction**      A substantial amount of a peace officer's duties is spent responding to calls
related to disputes. Such calls may involve a simple complaint between two
neighbors to potentially violent confrontations between people. For all
disputes though, a peace officer's primary role when handling a dispute is to
keep the peace and restore order.

**Community**         Many disputes come to the attention of peace officers either through a request
**expectations**      of one or more of the parties involved or from an uninvolved party who sees
or overhears the dispute taking place.

No matter how the call is initiated, members of the community expect peace
officers to have the authority to intercede along with the skills required to
resolve the dispute and restore order.

*Continued on next page*

68

# Introduction to Disputes, Continued

**Officer responsibilities**

In all situations involving disputes, the responding peace officer's primary responsibility is to keep the peace and restore order.

The following table identifies the peace officer actions that may be involved in order to keep the peace and restore order at the scene of a dispute.

| Officers may be called upon to... | in order to... |
|---|---|
| • take necessary safety precautions | • protect:<br>- themselves,<br>- each of the involved parties,<br>- bystanders, and/or<br>- property. |
| • establish and maintain control | • prevent the dispute from escalating further. |
| • defuse the situation | • bring the level of emotions of the involved parties to a manageable level. |
| • gather facts and information | • determine what the problem is that is causing the dispute. |
| • determine if a crime has taken place | • take appropriate law enforcement action(s). |
| • apply appropriate problem-solving techniques | • assist the involved parties in reaching their own solution(s) to the problem. |
| • make appropriate referrals when necessary | • aid the involved parties in seeking additional intervention necessary to solve the problem. |

*Continued on next page*

69

# Introduction to Disputes, Continued

| | |
|---|---|
| **Civil disputes** | Many dispute situations are noncriminal in nature and do not require peace officers to take any law enforcement actions. Any problem between two or more parties where no criminal act is involved is called a **civil dispute**.<br><br>In a situation involving a civil dispute peace officers may be called upon to advise the involved parties about the methods that can be used to resolve the dispute. |
| **Volatile nature of disputes** | Peace officers must always keep in mind that disputes are confrontations between involved parties. Peace officers may be seen by one or more of the involved parties as a possible solution while others may see it as an intrusion into a personal matter.<br><br>By the time peace officers are called, the involved parties may have reached a highly emotional state. Even a civil dispute, if not properly handled, can quickly escalate into a criminal matter. |

| | |
|---|---|
| Example: | Smith and Jones were involved in an argument over Smith's refusal to repay some money that Jones had loaned him. *(civil dispute)* |
| | In the course of the argument, Jones became so enraged that he struck Smith with his fist. *(misdemeanor criminal matter)* |
| | Smith then pulled a handgun from his coat pocket and fired at Jones, seriously wounding him. *(felony criminal matter)* |

*Continued on next page*

70

# Introduction to Disputes, Continued

**Criminal matters**

When a dispute becomes a criminal matter, a number of specific actions may be required on the part of the peace officer. The following table identifies a number of factors involved when handling a dispute that has become a criminal matter.

| Factor | Officers may be called upon to... |
|---|---|
| Safety of peace officer(s), victim(s), and/or property | • establish control of the situation.<br>• seek appropriate medical aid if necessary. |
| Crime identification | • determine whether all the required elements of a crime can be established based on the available facts.<br>• establish the intent of the person(s) who committed the crime. (Many crimes arising out of disputes requires the establishment of *specific intent*.) |
| Law enforcement actions | • determine whether the crime is a felony or misdemeanor. (Peace officers generally cannot arrest for a misdemeanor not committed in their presence.)<br>• make arrest(s) or take other required law enforcement action(s) (e.g., cite and release). |

*Continued on next page*

71

# Introduction to Disputes, Continued

| | |
|---|---|
| **Legal advice** | Because members of the community often see peace officers as authority figures, they may take the comments and opinions expressed by peace officers as "the law." When involved in handling a dispute, peace officers must be cautious of what they say and not *give any form of legal advice* to any of the parties involved in the dispute. |

When called upon, peace officers may refer involved parties to:

- that individual's private attorney,
- the district attorney,
- the public defender,
- the city attorney,
- legal aid services, or
- mediation services

| | |
|---|---|
| **Focus on goal** | When responding to a call involving a dispute, peace officers need to have a clear goal in mind and remain focused on that goal and avoid getting sidetracked while dealing with the dispute. |

> NOTE:    It is important for peace officers to remain flexible and objective when responding to dispute calls.

| | |
|---|---|
| **Resolution at first visit** | In all calls involving disputes, responding peace officers' goals must include an attempt to resolve in a single visit, the problem causing the dispute. |

Additional visits to a disturbance increase the level of danger for the peace officers and parties involved. Involved parties may be on their guard and less receptive to a peaceful resolution to the situation.

# Peace Officer Safety

| | |
|---|---|
| **Introduction** | Responding to a call involving a dispute can be one of the most dangerous parts of a peace officer's job. Violence related to disputes is among the leading causes of peace officer injuries and deaths. For this reason, all calls involving disputes must be handled with caution. |
| **Conscious safety habits** | Because of the frequency of calls involving disputes, peace officers can easily regard such calls as routine. Approaching a task as routine can be deadly when a situation involves a dispute. Calls regarding disputes must never be considered routine.<br><br>Peace officers must establish a pattern of conscious safety "habits" when disputes are involved. The following table illustrates the difference between routine and a conscious safety habit. |

|  | **Definition** | **Examples** |
|---|---|---|
| **Routine** | • Developed to use time efficiently<br>• Often involves actions without conscious thought | • Showering and dressing for work |
| **Conscious safety habit** | • Actions that become automatic with practice but still involve conscious decisions to:<br>  - remain alert,<br>  - avoid unnecessary risk, or<br>  - perform a task in the safest possible way | • Cleaning a firearm<br>• Standing in such a way that an officer's firearm is not within reach of a subject<br>• Watching a subject's hands |

*Continued on next page*

73

# Peace Officer Safety, Continued

**Plan of action**

Peace officer safety requires the establishment of a plan of action, based on known information, that is flexible enough to adjust for changing circumstances.

This plan may be based on a "worst case scenario" of identifying the worst thing that could be encountered and include:

- identifying an objective based on the nature of the call (e.g., stop a conflict, reduce noise, protect property, etc.),
- establishing the roles and responsibilities of each peace officer involved,
- identifying the location of the dispute (e.g., bar, area of known gang activity, etc.),
- identifying who and how many are involved.

**Initial information**

Peace officer safety begins with having a clear mental picture of the event or the nature of the dispute prior to actually responding to a call. Peace officers may need to request additional information regarding:

- the name and description of involved parties,
- the condition of the involved parties (e.g., indications of drug or alcohol use),
- the circumstances of the call (e.g., what initiated the call, how the call came in, was there more than one call to dispatch, etc.),
- whether or not each of the involved parties are still present,
- whether or not there are other people present (e.g., bystanders, family members, etc.),
- identification of the reporting party,
- the known or suspected presence of weapons,
- record of prior calls in the same location or involving the same parties, or
- specific nature of the call (e.g., very hostile neighborhood, level of aggression, etc.).

*Continued on next page*

74

# Peace Officer Safety, Continued

**Arrival
at the
scene**

One of the most critical times for any peace officer involved in handling a
dispute is the arrival and entry to the scene. Peace officers rarely have the
element of surprise.

Peace officers must be conscious of their own safety and the safety of others
even before they enter the scene of the dispute. The following table identifies a
number of safety guidelines related to arrival at the scene of a dispute.

| | **Guidelines** |
|---|---|
| **Patrol vehicle** | • Approach in a manner that does not "announce" arrival (i.e., use of excessive speed or noise, use of light or flashlight, slamming of doors).<br>• Park in a location that is not easily visible to the involved parties (i.e., at least one house away).<br>• Secure the vehicle. |
| **Observation** | • Observe the area surrounding the location of the dispute for<br>  - parties leaving the area,<br>  - people congregating in the area, or<br>  - anything out of the ordinary.<br>• Examine windows, doors, and roof for people observing peace officers' approach.<br>• Use flashlights or spotlights only if necessary. |
| **Backup** | • Wait for backup when necessary. |
| **Approach** | • Listen for loud voices or other sounds that may indicate the nature and extent of the dispute (e.g., shouting, arguing, loud music, etc.). |
| **Access** | • Stand off to the side of the entrance door rather than directly in front of it, preferably to the doorknob side.<br>• If there is a screen door or storm door, open it if it blocks the peace officer's view of the premises.<br>• Employ available cover and concealment. |

*Continued on next page*

## Peace Officer Safety, Continued

**Nighttime approaches**

Frequently calls involving disputes take place during nighttime hours. Under such conditions, peace officers should take additional precautions when approaching a scene. These precautions include:

- not using the spotlight to illuminate the house or area,
- not parking in a brightly illuminated area (e.g., under a streetlight),
- keeping interior lights of the patrol vehicle dark, and
- leaving the flashers of the patrol vehicle off when practical and safe.

**Initial contact**

One of the most critical times for peace officers responding to a dispute call may be the entry to the premises. Peace officers must always remember that they have arrived at what may be a confrontation where emotions are high.

On arrival at the premises, peace officers should make a safe entry. To help ensure a safe initial contact, peace officers should:

- activate a body-worn camera if issued,
- quietly approach, stand at a safe location, listen before knocking,
- knock normally or otherwise announce their presence,
- identify themselves as peace officers,
- state their purpose,
- request entry, and
- wait a reasonable amount of time for consent.

*Continued on next page*

76

# Peace Officer Safety, Continued

| | |
|---|---|
| **Initial contact** (continued) | Before entering, peace officers should: |

- be cautious of responses such as "It's open" or "Come in" given by a person who is not in the peace officer's sight. Under such circumstances, peace officers should request that the individual come to the door.
- establish rapport once contact is made by:
  - introducing themselves,
  - explaining the purpose of their presence,
  - explaining how the call was received (if appropriate).
- watch the hands and demeanor of the person who answers the door for weapons or potential weapons, nervousness, a confrontational manner, suspicious behavior.
- request that dogs be secured.
- be aware that their vision may be initially impaired when going from the light (outdoors) into a darker area (indoors).
- maintain a polite, professional demeanor.

| | |
|---|---|
| **Exigent circumstances** | **Exigent circumstances** are emergency situations requiring swift action to prevent: |

- imminent danger to life, or
- serious damage to property.

If there are exigent circumstances that lead peace officers to *reasonably believe* someone inside a dwelling may be injured or in immediate need of help, those peace officers may enter the property without consent.

*Continued on next page*

77

# Peace Officer Safety, Continued

**After initial contact**

Once entrance has been made, there are a number of actions peace officers should take to protect their own safety and the safety of others.

The following table identifies safety guidelines associated with these actions.

| Action | Safety Guidelines |
|---|---|
| Assess the existence of current or potential violence | • If a violent physical encounter is in progress, the involved parties should be separated immediately.<br>• Note the condition of the premises looking for signs of previous violent acts.<br>• Ask if other people are present.<br>• Visually inspect the area for potential weapons.<br>• Inquire about the existence and location of weapons. |
| Make initial contact with the involved parties | • Locate *all* occupants (e.g., involved parties, family members, other persons in the area, etc.).<br>• Search the involved parties for weapons visually and, if appropriate, search them physically.<br>• Determine the condition of the involved parties. Look for signs of:<br>  - drug or alcohol use,<br>  - emotional or psychiatric problems, or<br>  - extreme stress.<br>• Determine the relationship between the involved parties. |

*Continued on next page*

# Peace Officer Safety, Continued

| Action | Safety Guidelines |
|---|---|
| Establish and maintain control | • Move parties out of potentially dangerous areas where weapons or items that could be used as weapons may be accessible (e.g., kitchens, bedrooms, etc.).<br>• Maintain visual contact with all parties at all times.<br>• Keep sight of partner at all times.<br>• Have involved parties sit down if appropriate. (If violence potential is high, peace officers should remain standing.)<br>• Constantly reassess the situation for potential violence. |

**After initial contact** (continued)

NOTE:     At any time during a dispute call, a tactical retreat should be utilized if the circumstances dictate.

79

# Intervention Techniques

**Introduction**    Before a dispute can be resolved in an orderly manner, peace officers may be
required to intervene in order to ensure the safety of themselves, others, and
property.

**Intervention**    Intervention techniques range from mere presence to physical force. The
**techniques**    amount of force, if any, peace officers use to intervene will depend on the
circumstances of the incident. A peace officer may be faced with a situation
that requires moving directly from verbal force to physical force for their
safety or the protection of others.

The following table identifies techniques that peace officers may select from.

| Intervention Technique | Additional Information |
|---|---|
| Presence and demeanor | • The mere sight or the professional presence of peace officers may be all that is required to stop participants from arguing or fighting.<br>• Professional presence includes:<br> - the symbol of authority that is conveyed by a law enforcement uniform,<br> - a calm and impartial demeanor on the part of peace officers,<br> - the gestures and stance of each peace officer, and,<br> - each peace officer's use of personal space by not invading another's personal space. |

*Continued on next page*

80

# Intervention Techniques, Continued

**Intervention techniques**
(continued)

| Intervention Technique | Additional Information |
|---|---|
| Strategic communication | • May be used when mere presence alone is not successful<br>• Utilize deescalation techniques and employ tactical communication<br>• Do not attempt to embarrass or belittle anyone or to threaten arrest. This may only anger the person further and escalate the situation. |
| Verbal commands | • Give clear directions and instructions<br>• Identify consequences for failure to comply |
| Physical force | • Use of control holds or less lethal methods to separate parties and gain control (e.g., pepper spray, baton, handcuffs, etc.).<br>• Deadly force or threat of deadly force should only be used in life threatening situations. |

**Resolution**    Once peace officers have safely entered and gained control, they can begin to defuse the situation, mediate the dispute, and work toward resolving the problem.

*Continued on next page*

81

## Intervention Techniques, Continued

**Examples**    Example:    Peace officers were called to an apartment where
neighbors reported a loud fight between two roommates
that had been going on for hours. On arrival, the peace
officers found the front door standing open. When one
officer knocked on the door, a voice called, "We're in the
kitchen. Come on in." Instead of going in, the peace
officer called out, "We're peace officers. Would you come
to the door, please?" The officer waited a few moments
and then repeated the statement. A man came to the door.
The peace officers explained the purpose of their visit and
asked to come into the apartment. The man replied, "If
you can talk some sense into my crazy roommate, you're
welcome." The officers followed safety guidelines for
entering the scene of a dispute.

Example:    Continuing the above example: Once inside the apartment,
the officers inspected the area and saw no signs of
violence. They located the other occupant in the kitchen.
Neither man appeared to be armed. The peace officers
suggested that they move to the living room and sit down
so they could "be more comfortable." The peace officers
followed safety guidelines once they were on the scene of
a dispute.

*Continued on next page*

82

## Intervention Techniques, Continued

**Examples**
(continued)

| | |
|---|---|
| Example: | Peace officers were called to the scene of a family dispute involving a mother and daughter. The peace officers arrived to find the two women yelling at each other on the front porch of their house. The mother continued to scream abuse at her daughter. One peace officer said in a calm, low tone, "Ma'am, please lower your voice." After several minutes, the mother began to sob and allowed herself to be guided inside the house. The peace officer used an appropriate amount of intervention to gain control of the situation. |
| Non-example: | Continuing the above example: As the peace officers entered the house with the mother, they allowed the daughter to follow behind them. She produced a knife and attempts to stab her mother. The peace officers neglected to remain alert and watch a subject's hands at all times and the incident escalated into a criminal matter. |

83

# Chapter Synopsis

| | |
|---|---|
| **Learning need** | When called to handle a dispute, peace officers must be aware of their responsibility to keep the peace in order to prevent a civil matter from escalating into criminal activity that could threaten the safety of peace officers and the persons involved. |
| **Officer responsibilities [24.01.1]** | In all situations involving disputes, the responding peace officer's primary responsibility is to keep the peace and restore order. |
| **Arrival on the scene of a dispute [24.01.2]** | One of the most critical times for any peace officer involved in handling a dispute is the arrival and entry to the scene. Peace officers rarely have the element of surprise. Peace officers must be conscious of their own safety and the safety of others even before they enter the scene of the dispute. |
| **Initial contact [24.01.3]** | Before entering, peace officers should be cautious of responses such as "It's open" or "Come in" given by a person who is not in the peace officer's sight. Under such circumstances, peace officers should request that the individual come to the door. |
| | Establish rapport once contact is made by introducing themselves, explaining the purpose of their presence explaining how the call was received (if appropriate). |
| | Watch the hands and demeanor of the person who answers the door for weapons or potential weapons, nervousness, confrontational manner, suspicious behavior. Request that dogs be secured before officers enter. Be aware that a peace officer's vision may be initially impaired when going from the light (outdoors) into a darker area (indoors). Maintain a polite, professional demeanor. |

*Continued on next page*

84

# Chapter Synopsis, Continued

| | |
|---|---|
| **After initial contact [24.01.4]** | The following safety guidelines include actions that peace officers should take to protect their own safety and the safety of others once entry has been gained to the scene of a dispute. |

- Assess the existence of current or potential violence.
- Make initial contact with the involved parties.
- Establish and maintain control.

| | |
|---|---|
| **Intervention techniques [24.01.5]** | Before a dispute can be resolved in an orderly manner, peace officers may be required to intervene in order to ensure the safety of themselves, others, and property. The amount of force peace officers use will depend on the circumstances of the incident. |

# Workbook Learning Activities

**Introduction**      To help you review and apply the material covered in this chapter, a selection
of learning activities has been included. No answers are provided. However,
by referring to the appropriate text, you should be able to prepare a response.

**Activity
questions**

1. List three examples of conditions that could indicate exigent circumstances
for entrance to private property without first getting permission to do so
when responding to a dispute call. List three examples of conditions that
would not.

2. You and your partner are called to investigate a dispute involving two
neighbors. You knock at the first house, but no one answers. When you
approach the second house, you find the front door open. After knocking
and announcing yourselves as peace officers, someone responds by
yelling, "Yeah, we're back here. Come on back." There are no loud or
angry voices and no outward signs of violence. What should you do? What
safety precautions should you take? Explain the reasons for your answers.

*Continued on next page*

86

# Workbook Learning Activities, Continued

**Activity
questions**
(continued)

3.  What would indicate a potential safety hazard for peace officers as they approach a private residence? An apartment that is on an upper floor of a large building? A fenced backyard with people in it?

4.  You and your partner receive a call involving two women, loud noises, and screaming. The call was placed by an elderly neighbor who lives in an apartment next to the two women. You have been provided with the name of the involved parties and with the fact that peace officers have been called to the apartment several other times by the same neighbor complaining about loud music and noise. Describe your plan of action for responding to the call.

*Continued on next page*

87

# Workbook Learning Activities, Continued

**Activity questions**
(continued)

5.  Continuing the scenario of question number four: After knocking on the door of the apartment, a young woman opens the door. The guard chain is on the door and the woman peers out through a three-inch opening. You hear loud music and the sounds of another person scuffling in the background. What do you say to her? Without opening the door any further, the woman tells you that the "place is a mess" and that her roommate was just partying a little to "let off steam." She said, "That old lady has it in for us and is always complaining about something." Describe your next action(s).

*Continued on next page*

# Workbook Learning Activities, Continued

**Student notes**

89

# Chapter 2

# Defusing, Mediating, and Resolving Disputes

## Overview

**Learning need**

Peace officers must develop appropriate skills for defusing, mediating and resolving disputes in order to protect their safety and the safety of others, as well as prevent the dispute from escalating.

**Learning objectives**

The chart below identifies the student learning objectives for this chapter.

| After completing study of this chapter, the student will be able to: | Objective ID |
|---|---|
| • Explain appropriate techniques for defusing a potentially violent dispute. | 24.02.2 |
| • Describe appropriate techniques for conducting a brief interview of the parties involved in a dispute. | 24.02.4 |
| • Summarize the steps involved in the problem-solving process for mediating a dispute. | 24.02.5 |

*Continued on next page*

90

# Overview, Continued

**In this chapter**     This chapter focuses on the methods officers can use when handling disputes.
Refer to the chart below for specific topics.

| Topic | See Page |
|---|---|
| Defusing Techniques | 2-3 |
| Mediation and Conflict Resolution | 2-9 |
| Chapter Synopsis | 2-16 |
| Workbook Learning Activities | 2-17 |

# Defusing Techniques

| | |
|---|---|
| **Introduction** | People who are involved in disputes have often reached highly emotional states by the time law enforcement officers arrive at the scene. Conversation and mediation between the peace officers and the involved parties may not be possible until the emotional levels of the involved parties have been lowered and brought to a manageable level. |
| **Defusing** | **Defusing** is a process of reducing the potential for violence and bringing emotional levels to a manageable level to restore order. The primary objective of defusing is to calm each person so that conversation can take place. |

The use of defusing techniques may be required when the parties involved in a dispute are so:

- angry or hostile with each other that a calm discussion is not possible, or
- upset or hysterical and unable to communicate.

| | |
|---|---|
| **Defusing techniques** | The most appropriate technique to use to defuse a dispute will depend on the specific situation. Peace officers will need to select a strategy that is most appropriate based on their analysis of the situation. |

*Continued on next page*

92

# Defusing Techniques, Continued

**Defusing techniques** (continued)

The following table identifies a number of techniques that are used to defuse a confrontation involving angry people.

| Technique | Additional Information |
|---|---|
| Separate the involved parties | <ul><li>Separation provides the opportunity for each person to regain composure.</li><li>Move each party far enough away from each other so that peace officers can talk to each privately.</li><li>Position the involved parties so as to break their eye contact with each other and so that their backs are to each other, and each is facing a peace officer.</li><li>Peace officers should be in positions that allow them to keep sight of each other.</li><li>Separating the involved parties also helps peace officers verify statements by obtaining independent information from each person.</li></ul> |
| Speak in a calm firm tone | <ul><li>Give calm, direct instructions using a firm voice.</li><li>The parties involved in the dispute will have to quiet down in order to hear what the peace officer is saying to them.</li><li>When peace officers exhibit a quiet and controlled demeanor, other people are likely to do so also.</li><li>Avoid potentially demeaning remarks such as "Calm down" or "Quit acting like a child."</li><li>Use silence strategically.</li></ul> |

NOTE:    <u>If children are present, try to keep them in a separate room if possible.</u>

*Continued on next page*

# Defusing Techniques, Continued

**Defusing techniques (continued)**

| Technique | Additional Information |
|---|---|
| Distract the individual | • Draw attention away from the other person and toward the peace officer.<br>• Make comments that are not related to the dispute (e.g., "Is that a picture of your kids?", "May I turn the television off?"). |
| Pretend not to understand | • When a peace officer pretends not to understand, it encourages the person to repeat statements and possibly give more details.<br>• A person's focus often shifts from anger to concentrating on ways of getting the peace officer to understand that person's point of view. |
| Use active listening | • Maintain eye contact with the speaker and acknowledge what has been said with nods and encouragement.<br>• Repeating or rephrasing the person's statement may give that person the impression that the peace officer understands them.<br>• This produces a feeling that the person may have an ally without the peace officers actually taking sides. |

**Bringing involved parties together**

Once emotions have been brought under control and peace officers have gained control of the situation, the involved parties can be brought together again, and peace officers can begin to help them resolve the problem in a calm rational manner.

*Continued on next page*

94

# Defusing Techniques, Continued

| | |
|---|---|
| **Bringing involved parties together** (continued) | Even though it may appear that the involved parties are now calm and rational, peace officers must always remember that dispute situations are volatile. The dispute may erupt again if peace officers do not maintain their control of the situation. |

| | | |
|---|---|---|
| **Examples** | Example: | Peace officers were called to a small strip mall where two men were shouting at each other in the parking lot. After peace officers arrived, they saw that one of the men had positioned his car, so it was blocking the other's car parked in the mall lot. When he saw the peace officers, the man whose car was blocked yelled, "Arrest this guy, he's illegally blocking my car." The other man shouted, "He stole my space--I was waiting for that space and this guy pulled around me and took it. I'm staying." The peace officers separated the two men, each peace officer talking to each one individually. Both peace officers listened carefully to each man's side of the incident and gradually both individuals became calmer. Then the peace officers brought the two together and got the disputants to agree that the man blocking the other's car would back it up to allow the first man to leave. The issue was resolved. |

*Continued on next page*

95

# Defusing Techniques, Continued

| | | |
|---|---|---|
| **Examples** (continued) | Example: | Peace officers responded to a complaint from a cafe owner who reported that a woman was harassing his customers. On arrival, the peace officers observed a crowd of people watching and commenting on an elderly woman and a man in a shouting match in front of a sidewalk cafe. When the man saw the peace officers, he said, "Thank God! Please arrest this lady-she's driving my customers' nuts." The woman immediately responded by saying, "I have a right to be here. I'm not bothering anybody." One peace officer said, "Let's step over here where customers can't hear and discuss this quietly." The peace officers interviewed the disputants individually and allowed each party to tell their side of the story. The woman spoke in a somewhat rambling and confused manner, but eventually it emerged that she liked to visit the cafe on Sunday morning when patrons were having coffee and reading the newspapers. She would go from table to table asking for the coupons in the Sunday papers. The owner reported that she appeared every Sunday, she was a nuisance, and he was sick of her and so were his customers. The peace officers listened attentively to both parties and after they were certain they understood the situation, they brought the two back together. After some discussion the two parties resolved the issue: the lady agreed to leave the premises and the cafe owner agreed not to press for further action from law enforcement. |

*Continued on next page*

96

## Defusing Techniques, Continued

**Examples**
(continued)

Non-example:    Continuing the above Example: The peace officers did not
take the parties aside. Instead, one of the peace officers
spoke condescendingly to the elderly lady, saying, "Now
if you don't act like a good girl and go home, I'll have to
arrest you." The lady became flustered and agitated and
several patrons and passersby began to make angry
comments about the treatment she was receiving. They
began yelling at the peace officers. By not using
appropriate techniques, the peace officers made the
situation more explosive and became the focus of
hostility.

# Mediation and Conflict Resolution

| | |
|---|---|
| **Introduction** | There is a greater likelihood of follow-through and resolution to a problem if the individuals involved in a dispute reach their own solutions to the problem. When proper mediation techniques are used to help the involved parties solve their own problems, there is also less of a chance that peace officers will be called back to the scene again for the same reason. |
| **Mediation and Conflict Resolution** | **Mediation** is a problem-solving technique that allows peace officers to assist people involved in a dispute in reaching their own solutions to a problem. |
| | **Conflict Resolution** is a solution to the problem that is accepted by both parties to the dispute and that makes further peace officer action unnecessary. |
| **Fact finding interview** | Before any mediation techniques can be applied, peace officers must first gather information from the involved parties regarding the cause(s) of the problem as well as the nature and scope of the dispute itself. |
| | The interview at the scene of a dispute should not be viewed as an interrogation -- but rather as a brief fact-finding interview to determine the root problem prompting the dispute. |

*Continued on next page*

98

# Mediation and Conflict Resolution, Continued

**Fact finding interview** (continued)

The following table identifies a number of guidelines for conducting a fact-finding interview.

| Actions | Interview Guidelines |
|---------|---------------------|
| Maintain control of the interview at all times | <ul><li>Set ground rules and then make sure they are enforced.</li><li>Allow only one person to speak at a time. Don't allow interruptions or interference.</li><li>Ensure that each person has an opportunity to speak.</li><li>Hold the speaker to the topic at hand.</li><li>Maintain eye contact with the speaker.</li><li>Don't allow the person to turn the interview around and ask the questions.</li></ul> |
| Ask appropriate questions | <ul><li>Use open ended questions, asking the person "what" and "how."</li><li>Avoid leading questions that make the person feel as if that person is being cross examined (e.g., "Don't you think that ...").</li><li>Allow the person to speak freely and openly within the set ground rules.</li><li>Ask if there have been similar problems before.</li><li>If any behavior is described as "abnormal" ask if that person has been taking medications.</li></ul> |

*Continued on next page*

99

# Mediation and Conflict Resolution, Continued

**Fact finding interview** (continued)

| Actions | Interview Guidelines |
|---|---|
| Remain impartial | • Recognize that there are as many sides to the dispute as there are parties involved.<br>• Avoid jumping to conclusions or assuming understanding until all sides are heard.<br>• Try not to make suggestions or give personal advice.<br>• Be conscious of nonverbal behaviors that may indicate insincerity on the part of the peace officer. |

**Ending the interview**

At the end of the interview, peace officers should:

• summarize what each party has said,
• highlight the main issues, and
• make sure that each person agrees with the summary of what that person has said.

If the individual does not agree with a peace officer's summary, additional questions should be asked to clarify any misunderstanding.

**When not to mediate**

Peace officers should not attempt to mediate a solution to a dispute if:

• one party has left or refuses to cooperate,
• a crime has taken place and law enforcement action is required, or
• one of the involved parties is being taken into custody under the provisions of *Welfare and Institutions Code Section 5150.*

*Continued on next page*

100

# Mediation and Conflict Resolution, Continued

**Problem solving mediation process**

After each party involved in the dispute has been briefly interviewed and the problem has been identified and agreed upon, peace officers can begin a step-by-step problem-solving mediation process.

The following table identifies the steps of this process.

| Step | Action | Additional Information |
|------|--------|------------------------|
| 1 | Elicit suggestions. | • Have the involved parties suggest ways of resolving or improving the situation.<br>• Be persistent.<br>• Don't allow the involved parties to look to the officers for recommendations or answers.<br>• Persons will be more committed to their own ideas than they will to others. |
| 2 | Discuss possible suggestions. | • Allow each person to discuss the suggestions that have been made.<br>• Try to avoid offering opinions (positive or negative) or suggesting modification to any suggestion. |
| 3 | Use negotiation to arrive at an agreement. | • An agreement does not have to represent an exact 50/50 split of compromises.<br>• Don't allow illegal remedies.<br>• Don't push one person's suggestion over another's. |

*Continued on next page*

# Mediation and Conflict Resolution, Continued

**Problem solving mediation process** (continued)

| Step | Action | Additional Information |
|------|--------|------------------------|
| 4 | Summarize agreement. | • Make sure each person involved in the dispute has a clear understanding of what is involved in the resolution that has been agreed upon. |
| 5 | Encourage follow through. | • Encourage the involved parties to have confidence in the agreed upon resolution to the problem.<br>• Have the involved parties identify and agree upon what steps they will each take in their part of the follow through. |

**Closure**

Before peace officers leave the scene, they should once again review what the agreed upon solution is and each party's commitment to follow through with that solution.

Peace officers should thank the involved parties for their cooperation and efforts and say they can call back if they need to.

*Continued on next page*

102

## **Mediation and Conflict Resolution,** Continued

**Examples**          Example:          Peace officers responded to a complaint from a woman who said that her driveway was being blocked by a workman's truck. On arrival, the officers found that the truck belonged to a construction crew building an addition to the house next door. One of the peace officers interviewed the woman and the other peace officer talked to the neighbor who was building the addition. The woman stated that the crew frequently used her driveway, littered her yard, and continued work into the night, causing her to lose sleep. She wanted the project halted by the police. The neighbor said that the woman had tried and failed to get the city to refuse permission for the home addition and had been hostile to him and his family ever since, calling the police over imagined and/or trivial problems. After interviewing the individuals separately, the peace officers brought them together and asked for ideas on how to resolve the situation. After some discussion, the two parties agreed on some ground rules for the rest of the construction period and that if there were further problems, they would discuss them with each other before calling law enforcement.

*Continued on next page*

103

## Mediation and Conflict Resolution, Continued

| | | |
|---|---|---|
| **Examples**<br>(continued) | Example: | A peace officer was called to mediate a dispute between two neighbors. An argument erupted between Mr. Blane and Mr. Davis, over a fence that Mr. Blane had built. Mr. Davis claimed the fence was two feet onto Mr. Davis' property. Mr. Davis, furious at the encroachment on his land, began painting the fence bright orange. Mr. Blane demanded that Mr. Davis stop painting. Mr. Davis claimed that since that portion of the fence was entirely on his property, he could do as he pleased. Mr. Blane claimed the fence was not hurting anything. The peace officer intervened and told both parties to stop all actions. After briefly interviewing each neighbor, the peace officer asked the men if they had any ideas how to solve the problem. After further discussion, the two parties decided to collect the necessary evidence (photos, witnesses, etc.) and handle the dispute as a civil matter. |
| | Non-example: | Continuing the above Example: Instead of asking the two neighbors for their ideas on how to solve the situation, the peace officer said that, since the fence was on Mr. Davis' property, Mr. Blane could do nothing about Mr. Davis painting it orange. This did nothing to resolve the issue of whose property the fence was on. |

104

# Chapter Synopsis

| | |
|---|---|
| **Learning Need** | Peace officers must develop appropriate skills for defusing, mediating and resolving disputes in order to protect their safety and the safety of others, as well as prevent the dispute from escalating. |
| **Defusing [24.02.2]** | Defusing is a process for reducing the potential for violence and bringing emotional levels to a manageable level to restore order. |
| **Interviewing parties in a dispute [24.02.4]** | Before any mediation techniques can be applied, peace officers must first gather information from the involved parties regarding the cause(s) of the problem as well as the nature and scope of the dispute itself. |
| **Mediation [24.02.5]** | After each party involved in the dispute has been briefly interviewed and the problem has been identified and agreed upon, peace officers can begin a step-by-step problem-solving mediation process. |

# Workbook Learning Activities

**Introduction**    To help you review and apply the material covered in this chapter, a selection of learning activities has been included. No answers are provided. However, by referring to the appropriate text, you should be able to prepare a response.

**Activity questions**

1.  How might peace officers use silence as a strategy when defusing a conflict between hostile persons?

2.  You are called to the scene where a dispute between the owner of a sidewalk fruit stand and two women is in progress. The dispute is taking place on a busy street with heavy vehicle and pedestrian traffic. As you approach, the owner, who speaks with a heavy accent, is clinging to one woman's arm and is shouting "Send her jail! Stole fruit! Thief!" The woman is screaming at the owner, "Let go! I didn't steal nothing---get your hands off me!" Her companion runs toward you and screams, "This guy is nuts! He's attacking my friend!" Describe what actions you can take to defuse the situation. What precautions should you take to protect your own safety and the safety of others?

*Continued on next page*

106

# Workbook Learning Activities, Continued

**Activity questions**
(continued)

3.  Continuing the scenario from question 2: A crowd is beginning to gather around you and the people involved in the dispute. Two of the bystanders are trying to get your attention to give you their viewpoints on what has taken place. How might the conditions described in the scenario hinder your attempts to mediate the dispute? What actions should you take to overcome them?

# Workbook Learning Activities

Suggested corrections to this workbook can be made by going to the POST website at:  www.post.ca.gov

*Continued on next page*

108

# Workbook Learning Activities, Continued

**Student notes**

# Chapter 3

# Specific Types of Disputes

## Overview

**Learning need**

Peace officers must be aware of the nature of certain types of disputes, as well as the laws that pertain to each type in order to take the appropriate measures to resolve the dispute.

**Learning objectives**

The chart below identifies the student learning objectives for this chapter.

| After completing study of this chapter, the student will be able to: | Objective ID |
|---|---|
| • Discuss safety considerations officers should be aware of when responding to a family dispute. | 24.03.1 |
| • Describe crimes associated with landlord/tenant disputes, including:<br>- tenant lockout/seizure of property,<br>- vandalism,<br>- unauthorized entry,<br>- disruption of utility services, and<br>- re-entry following a lawful eviction. | 24.03.2<br>24.03.3<br>24.03.4<br>24.03.5<br>24.03.6 |
| • Explain peace officers' role when called to a dispute involving a repossession.<br>- vehicle<br>- property | 24.03.7 |
| • Determine when possession is complete in the course of a repossession.<br>- vehicle<br>- property | 24.03.8 |

*Continued on next page*

110

# Overview, Continued

**In this chapter**    This chapter focuses on the laws and appropriate officer actions for handling certain types of disputes.  Refer to the chart below for specific topics.

| Topic | See Page |
|-------|----------|
| Family Disputes | 3-3 |
| Landlord/Tenant Disputes | 3-10 |
| Disputes Involving Repossession | 3-20 |
| Chapter Synopsis | 3-28 |
| Workbook Learning Activities | 3-30 |

111

# Family Disputes

| | |
|---|---|
| **Introduction** | A large number of all homicides and assaults take place within the family. Because of this, one of the most common and the *most dangerous* type of dispute that peace officers are called to is a dispute that involves family members. |
| **Involved parties** | Most often, husband and wife relationships come to mind when one considers who might be involved in a family dispute. But family disputes can and frequently do involve any number of persons within a household.<br><br>Examples of potential parties of a dispute can include, but are not limited to:<br><br>• intimate partners,<br>• cohabitants,<br>• roommates,<br>• people separated or divorced,<br>• parents and children,<br>• siblings, or<br>• other relatives. |
| **Reasons for conflict** | There are many potential sources for conflicts within the dynamics of a family. Some of the most common include, but are not limited to, disputes about one or more of the following:<br><br>• Finances<br>• Property<br>• Treatment or custody of children<br>• Marital infidelity<br>• Discipline or other parent/child conflicts<br>• Household responsibilities |

*Continued on next page*

112

# Family Disputes, Continued

| | |
|---|---|
| **Reasons for conflict** (continued) | • Jealousy<br>• Drug use<br>• Alcohol consumption<br>• Employment<br>• Hobbies, clubs, or other activities |

| | |
|---|---|
| **Officer safety** | Peace officers must regard every family dispute as a potentially explosive and dangerous situation. By the time peace officers are called, emotions are high, and the heat of the disturbance may be at its most dangerous level.<br><br>Whenever peace officers respond to a call involving a family dispute, they should remember the following points when considering their own safety as well as the safety of others.<br><br>• Peace officers may be unwelcome or even viewed as an intrusion by one or more of the involved parties.<br>• Concealed weapons or household items within a home may be accessible to the persons involved in the dispute.<br>• The use of drugs or alcohol by one or more of the involved parties can inhibit rational behavior.<br>• Peace officer actions or remarks that are perceived by members of the household as callous can inflate hostilities further. Anger may be transferred to the peace officer.<br>• If one or more of the involved parties is placed under arrest, other members of the family or household may become hostile toward the arresting peace officers.<br><br>NOTE:    Peace officers should not treat cases of domestic violence as a family dispute. Guidelines for handling incidents of domestic violence are found in LD 25: *Domestic Violence*. |

*Continued on next page*

113

# Family Disputes, Continued

| | |
|---|---|
| **Attempting resolutions** | Peace officers must treat every dispute involving family members with utmost caution. |
| | By exposing the cause(s) of the dispute through the problem-solving mediation process, the peace officers themselves may become the focal point of the anger and frustration of the involved parties. Family members may unite against peace officers as an "uninvited third party." |
| | Peace officers need to keep the focus on the causes of the dispute and not allow it to shift to the peace officers themselves. |
| **Officer involvement** | The structure of the family can vary greatly based on many cultural factors as well as choices of lifestyle. |
| | Peace officers who respond to family disputes must guard against allowing their own personal opinions or beliefs to affect their attitudes or actions toward the parties involved in the dispute. They must also guard against being drawn into the dispute or becoming emotionally involved, no matter what the circumstances are. |
| | Peace officers must never lose sight of their primary responsibility: to keep the peace and restore order. |
| **Temporary separation** | Sometimes, as part of a mediation and in addition to a referral, it may be advisable to suggest a voluntary temporary separation of the involved parties. Such separations involve one or more of the family members leaving the premises for a specific length of time (e.g., staying with a friend or other family member overnight). |
| | A temporary separation may allow emotions to cool to a level where further mediation can take place. |

*Continued on next page*

114

# Family Disputes, Continued

**Referrals**        Family disputes are often complex and cannot be quickly resolved by peace officers. Peace officers should be prepared to provide additional resources. (e.g., dispute resolution services, family counseling services, alcohol, and drug hotline).

**Additional information**        Additional information regarding the laws and the handling of conflicts related to family disputes may be found in the following:

LD 7:    *Crimes Against People,*
LD 9:    *Crimes Against Children,*
LD 10:   *Sex Crimes,*
LD 11:   *Juvenile Law and Procedure,* and
LD 25:   *Domestic Violence.*

*Continued on next page*

115

# Family Disputes, Continued

**Examples**    Example:    Officers Smith and Jones received a call regarding a family dispute. A woman had reported her husband and son were having a "horrible argument" in the driveway of their house. She also said she was afraid "one of them was going to get hurt." The peace officers arrived and found the two men in the driveway. The older man was holding a large stick and the younger man was trying to take the stick away from him. Both men were visibly upset, yelling, and screaming at each other.

Officer Smith told both of them to move away from each other and put the stick on the ground. Both of the men complied and did as they were told, however, both of them continued yelling at each other. The peace officers were able to convince both of the subjects to stop yelling. The subjects were interviewed separately.

The peace officers discovered that the argument stemmed from the adult sons' unwillingness to follow the "rules of the house." The conflict between the two of them had been a long-standing issue, but this was the first time the police had been called.

Both men agreed that their issues with one another went a lot deeper than the current argument. Using some good mediation techniques, the officers were able to get both of them to agree to seek counseling. The peace officers supplied them with information regarding family services. The son agreed to stay with an aunt for a few days. He packed a few clothes and left the house.

*Continued on next page*

116

## Family Disputes, Continued

**Examples**
(continued)

Example:

The peace officers' first action to get the attention of both parties was the first step toward resolving the dispute. The peace officers deescalated the situation and gained compliance using command presence and clear commands. Separating the parties, away from each other, further calmed the situation and allowed peace officers to interview both parties

By the use of patience and some good mediation techniques the peace officers were able to establish some agreement between the two to seek help. The safety of both parties was insured and one of them left the home for a few days. There was agreement on the part of both parties to work toward a long-term solution to their problem.

*Continued on next page*

117

## Family Disputes, Continued

**Examples**
(continued)

Non-example:

Rather than taking the actions noted in the previous example, the peace officers did not attempt to separate the men. Instead, Officer Smith ordered the men to "calm down and keep quiet!" He proceeded to lecture the young man about following the rules while he lived under his father's roof and told the young man he should be ashamed that his mother had to call law enforcement officers. The peace officer's lecture and attitude enraged the young man further and the young man began yelling at Officer Smith. When Officer Jones attempted to intervene, the father became angry and started to shout at the peace officers to "stop attacking my kid!" Because of Officer Smith's actions and comments and the peace officer's failure to mediate, the peace officers themselves became the focus of both men's anger.

# Landlord/Tenant Disputes

**Introduction**  Just as with all other types of disputes, when called to a dispute involving a landlord and tenant the primary responsibility of responding peace officers is to keep the peace and restore order. Once this has been achieved, effective handling of the dispute often requires an understanding of the applicable laws related to landlord and tenant actions.

**Nature
of dispute**  Signing a lease requires a tenant to make timely rent payments and not to damage the property. For example, a landlord is required to respect the privacy of the tenant and not enter the property unless either the tenant has given permission, or there is an emergency (e.g., a broken water pipe) that requires immediate attention to prevent further damage to the property.

Disputes often arise when one member of the agreement (e.g., the landlord) believes the other (e.g., the tenant) is in violation of the contract (e.g., hasn't paid the rent on time).

**Dispute
resolution**  Landlord/tenant disputes involving criminal actions on the part of the landlord or the tenant, may need to be handled with the appropriate law enforcement actions (e.g., arrest, cite and release, etc.).

If a dispute arises for reasons other than a criminal act, peace officers should attempt to mediate and reach an acceptable resolution between the involved parties.

An acceptable resolution may include referring the involved parties to the appropriate agency that can resolve the problem that has caused the dispute.

*Continued on next page*

# Landlord/Tenant Disputes, Continued

**Tenant lockout/ seizure of property**

Occasionally, when a tenant is behind in the rent, the landlord may attempt to jam the entrance or change the lock on the door in order to prevent the tenant's further use of the dwelling. Additionally, the landlord may seize property belonging to the tenant until the rent is paid. Such actions may be unlawful.

The following table further identifies these criminal acts on the part of a landlord.

| Unlawful Landlord Action | Crime Elements | Classification | *Penal Code Section* |
|---|---|---|---|
| Tenant lockout | • Every person:<br>  - using or procuring,<br>  - encouraging or assisting another to use,<br>• any force or violence<br>• in entering upon or detaining | misdemeanor | *418* |
| Seizure of tenant's property | • any lands or other possession of another,<br>• except in the cases and in the manner allowed by law | | |

NOTE:    *Penal Code Section 418* does not apply when the action is taken as part of a lawful eviction.

NOTE:    In order to lawfully take possession of a tenant's property, landlords must first obtain a court order allowing them to do so. *(Civil Code Section 1861(a))*

NOTE:    Even with a lien, a landlord generally cannot seize any property necessary to the tenant's livelihood or any necessary household items (e.g., stove, refrigerator, beds, tools related to a person's profession, etc.).

*Continued on next page*

120

# Landlord/Tenant Disputes, Continued

**Vandalism**

It is also unlawful for a landlord to remove the doors and/or windows to the tenant's dwelling or destroy the tenant's personal property in an effort to harass the tenant.

The following table further identifies the crime of vandalism on the part of a landlord.

| Unlawful Landlord Action | Crime Elements | Classification | *Penal Code Section* |
|---|---|---|---|
| Removal of doors and/or windows<br><br>Damage or destruction of tenant's property | • Every person<br>• who maliciously:<br>  - defaces with graffiti or other inscribed material,<br>  - damages, or<br>  - destroys<br>• any real or personal property<br>• not his or her own's<br>• in cases other than those specified by law | misdemeanor | *594* |

NOTE:    Even though landlords are technically destroying their own property (i.e., removing doors and/or windows), the courts have held that the tenant has a property interest in the premises. Actions of destruction by the landlord constitute a malicious act on the part of the landlord against the tenant.

*Continued on next page*

# Landlord/Tenant Disputes, Continued

**Authorized entry**

A landlord may enter the dwelling of a tenant without permission only when:

- entry is reasonable (e.g., to repair a leaking pipe, and or prior notice in writing, investigate smoke, etc.), *or*
- the tenant has consented by the lease to the landlord's entry at will.

**Unauthorized entry**

If a landlord enters a tenant's dwelling without prior permission in order to harass the tenant or to "snoop around," the landlord has committed the crime of unauthorized entry (trespass). The following table further identifies the crime of unauthorized entry (trespass) on the part of a landlord.

| Unlawful Landlord Action | Crime Elements | Classification | *Penal Code Section* |
|---|---|---|---|
| Entering without a legitimate reason or without permission from the tenant | <ul><li>Every person</li><li>other than:<ul><li>- a public officer, or</li><li>- employee acting within the course and scope his or her employment in performance of a duty imposed by law,</li></ul></li><li>who enters or remains in any:<ul><li>- noncommercial dwelling house,</li><li>- apartment, or</li><li>- another residential place</li></ul></li><li>without the consent of the:<ul><li>- owner,</li><li>- his or her agent, or</li><li>- person in lawful possession (tenant)</li></ul></li></ul> | misdemeanor | *602.5* |

*Continued on next page*

122

# Landlord/Tenant Disputes, Continued

**Disruption of utility services**

Landlords are not allowed to disrupt or disconnect one or more of the tenant's utilities as a means of forcing the payment of past rent. Such actions are not allowed by law.

The following table further identifies the crime of disruption of utility services on the part of a landlord.

| Unlawful Landlord Action | Crime Elements | Classification | *Penal Code Section* |
|---|---|---|---|
| Interruptions of a tenant's telephone, electricity, gas, water, or other utility services | A person who <br> • unlawfully and maliciously <br> - takes down, <br> - removes, <br> - injures, or <br> - obstructs <br> • any line of *telegraph, telephone,* or *cable television* or any other line to conduct electricity, or any part thereof | felony | *591* |
| Obstruction/ Interference of electric lines | Every person who <br> • unlawfully and maliciously <br> - takes down, <br> - removes, <br> - injures, <br> - interferes with, or <br> - obstructs <br> • an *electric line* or any part thereof that is erected or maintained by proper authority | felony | *593* |

*Continued on next page*

123

# Landlord/Tenant Disputes, Continued

**Disruption of utility services** (continued)

| Unlawful Landlord Action | Crime Elements | Classification | *Penal Code Section* |
|---|---|---|---|
| Interfere with/obstruct gas lines | Every person who<br>• willfully and maliciously<br>  - breaks,<br>  - digs up,<br>  - obstructs,<br>  - interferes with,<br>  - removes or injures<br>• any gas pipe or main or hazardous liquid pipeline or any part thereof | felony | *593c* |
| Obstruction of water works | Every person who<br>• willfully:<br>  - breaks,<br>  - digs up,<br>  - obstructs, or<br>  - injures<br>• any pipe or main for conducting water | misdemeanor | *624* |

NOTE:    Even if the landlord has proper legal grounds for evicting a tenant, it is unlawful for the landlord to interrupt utility services in an attempt to force the tenant to vacate the premises.

*Continued on next page*

124

# Landlord/Tenant Disputes, Continued

**Eviction process**

In order to evict a tenant, the landlord is required to give a three day pay or quit notice in writing. This notice demands that the tenant vacate the premises or come back into compliance with the rental agreement.

The notice must be delivered directly to the person or, if the person cannot be reached at home or at the place of business, a copy can be left with a person of suitable age at the residence. The notice can also be sent to the person through the U.S. mail.

A landlord may serve a tenant with an eviction notice when the:

- rent has not been paid by the tenant,
- tenant has violated the terms of the rental agreement (e.g., having a pet when not allowed, etc.), or
- tenant has stayed in the premises after the expiration of the rental contract period.

NOTE:        Evictions for any other reason may require a 30 day notice.

**Tenant, lodger, guest**

A lodger/ guest is not a tenant. A lodger is a roomer (and the only lodger) who has temporary possession of a dwelling unit with the owner, has unrestricted access to the entire unit and must be contracted for either room or room and board by providing something of value to the landlord for something of value, (i.e., mow the lawn, etc.).

**Unlawful detainer**

If the problem is not corrected after the three-day time period, the landlord must file a civil lawsuit known as an **unlawful detainer**. The court must then decide if the tenant is to be evicted.

NOTE:        The only legal advice that peace officers should give to either landlords or tenants involved in a dispute involving an eviction is to contact an attorney or seek other professional legal assistance.

*Continued on next page*

125

# Landlord/Tenant Disputes, Continued

**Reentry following a lawful eviction**

Once a lawful eviction has taken place, a tenant cannot lawfully reenter the dwelling from which evicted. The following table further identifies the crime of unauthorized reentry after a lawful eviction.

| Unlawful Tenant Action | Crime Elements | Classification | Penal Code Section |
|---|---|---|---|
| Reentering a dwelling after being evicted | Every person who<br>• has been removed from any lands<br>• by process of law,<br>• and who afterwards,<br>• unlawfully returns to settle, reside upon, or take possession of such lands | misdemeanor | *419* |

NOTE:    During the time that the civil action (unlawful detainer) is under consideration by the court, the tenant cannot be prohibited entry to the dwelling.

*Continued on next page*

126

# Landlord/Tenant Disputes, Continued

**Examples**    Example:    A peace officer responded to a call involving a dispute between a landlord and tenant. The landlord was angry because the tenant painted all the rooms in the apartment black. The tenant claimed that the lease did not prohibit this and in fact stated that the tenant was responsible for any painting required inside the apartment. Since no criminal act took place, the peace officer used appropriate mediation and resolution techniques to calm the landlord and tenant and restore order.

Example:    When a tenant came home after work, she realized that someone had been in her apartment. She confronted her landlord and accused him of snooping around in her apartment. When the landlord denied the action, the tenant called the local law enforcement agency and demanded that the landlord be arrested. When peace officers arrived, it was determined that a maintenance man had entered in order to investigate the source of a water leak. Since no crime had been committed, the peace officer used appropriate mediation and resolution techniques to calm the landlord and tenant and restore order. The landlord agreed to require maintenance personnel to leave a note for tenants stating that they had entered and for what reason. The tenant apologized to the landlord for her accusations.

*Continued on next page*

# Landlord/Tenant Disputes, Continued

**Examples**
(continued)

| | |
|---|---|
| Example: | A tenant, who was two months late with his rent, returned home to find that the lock had been changed on the door to his apartment. The landlord left a note saying that the tenant would not receive a new key until the rent was paid in full. Law enforcement officers were called, and peace officers explained to the landlord that his actions were unlawful. The landlord agreed to give the tenant a new key and to seek other lawful actions to obtain the back rent. |
| Non-example: | Continuing the above Example: Instead of explaining the law to the landlord and encouraging him to resolve the dispute, the peace officers arrested the landlord and took him into custody, escalating the situation into a criminal matter. |

128

# Disputes Involving Repossession

**Introduction**     Repossession is a civil matter between a seller and a buyer. If the buyer has signed a conditional sales contract to purchase goods over a period of time and does not live up to the terms of the contract, the seller can take back possession of, or *repossess* those goods.

**Officer responsibilities**     Peace officers normally do not become involved in a lawful repossession process other than to keep the peace and restore order. Generally, a notice and hearing are required before a seller can repossess property. It is not the responsibility of the peace officer to interpret a contract or to determine if there has been proper notice and hearing.

Peace officers may be called to a dispute involving a repossession by an individual who has a false impression that peace officers can be used as a "lever" on the other party involved. Peace officers must always guard against being placed in such a position.

**Due process**     Peace officers may not hinder or aid either party involved in a lawful repossession. Even an improper repossession, absent a criminal violation, is still a matter for civil action.

Because they are acting under the "color of state law," they may not force the buyer to surrender property, nor can they force a repossessor to return property that has been lawfully repossessed. Either action by the peace officer, without a specific court order, would violate one or the other person's right to "due process" under the 14th Amendment of the U.S. Constitution.

*Continued on next page*

# Disputes Involving Repossession, Continued

**Involved parties**

If peace officers are called to the scene of a dispute involving a repossession, they must determine the roles of the involved parties. The following table provides information regarding the primary parties of a repossession.

| Party | Additional Information |
|---|---|
| Repossessor | Will usually have a:<br>- company identification,<br>- private license,<br>- copy of the contract, or<br>- document describing the property to be repossessed. |
| Buyer | May be:<br>- the person who purchased the property (buyer),<br>- the buyer's spouse, or<br>- a third person in lawful possession of the property. |

*Continued on next page*

130

# Disputes Involving Repossession, Continued

**Who may repossess**

There are three groups of persons who may lawfully repossess property.

| Group | Additional Information |
|---|---|
| Sellers | • Owner of the title to the property.<br>• Includes full-time employees of the seller. Part-time employees may not be used for repossession purposes. *(Business and Professions Code 7522)*<br>• Members of this group do not need a state license. |
| Banks or finance companies | • Purchased the debt from the seller.<br>• Includes full-time employees of the bank or finance company.<br>• Members of this group do not need a state license. |
| Private repossessor | • Required to:<br>  - have a state license. *(Business and Professions Code 7500-7511)*<br>  - post the license at the principal place of business. *(Business and Professions Code 7503.8)*<br>  - carry a pocket identification card with photo. *(Business and Professions Code 7503.10(d))*<br>• Any person who violates these provisions may be fined. *(Business and Professions Code 7508)* |

*Continued on next page*

131

# Disputes Involving Repossession, Continued

**Complete possession**

Peace officers may be called upon to verify if a repossession is legal. In order to have complete possession of property, the repossessor must have complete dominion and control over the property. This takes place when the repossessor has:

- gained entry to the property, or
- when the property (if a vehicle) has been hooked up to a tow truck.

The property *does not* have to actually be removed from the buyer's property before the repossession is complete. If the repossessor *does not have complete possession* and the buyer objects, the property cannot be taken.

NOTE: Local policies and practices may differ regarding a repossessor entering enclosed areas other than private buildings or structures to recover property (e.g., a repossessor entering a fenced yard to recover patio furniture).

NOTE: Repossessors may go onto private property, but they cannot go into any area that is secured.

**Third party rights**

When the buyer has given a third person permission to use the property or maintain possession, then that person stands in for the buyer.

This third person may exercise the same rights and privileges as the buyer against the repossessor.

Repossessions cannot take place if the property, when discovered, is "in the possession of a bailor," meaning in a commercial parking lot where an attendant is on duty or in a check stand. The bailor has and keeps possession rights until redeemed by the buyer.

*Continued on next page*

132

## Disputes Involving Repossession, Continued

**Personal items**

Even when a repossession is complete, the buyer has the right to retain, remove, or later claim personal items from within the property that is being repossessed (e.g., clothing, tools, etc., from the trunk of the car).

The buyer cannot remove any property that is fixed, or an integral part of the property being repossessed, even if the item was purchased separately (e.g., radios).

**Law enforcement notification**

Whenever repossession is taken of any vehicle, or other property which is subject to registration by the Department of Motor Vehicles, the repossessor is required to notify local law enforcement agencies of the repossession. Notification must be made by the most expeditious means available.

Repossessors must also notify the law enforcement agency *in writing* within 24 hours after the repossession.

*Continued on next page*

133

# Disputes Involving Repossession, Continued

**Related crimes**

Occasionally, peace officers may have to take law enforcement action if a crime is committed in their presence during a dispute involving repossession.

Peace officers must bear in mind that specific intent may be required for a number of crimes to be complete. If the specific intent to commit an unlawful act is not present, no crime has taken place.

The following table identifies the crimes that are most commonly related to repossession disputes.

| Crimes Arising at Repossession Disputes | Classification | *Penal Code Section* |
|---|---|---|
| Vandalism | misdemeanor or felony | *594* |
| Assault | misdemeanor | *240* |
| Assault with a deadly weapon | felony | *245* |
| Battery | misdemeanor | *242* |
| Disturbing the peace | misdemeanor | *415* |
| Drawing, exhibiting, or unlawful use of a weapon | misdemeanor | *417* |
| Impersonating a peace officer | misdemeanor | *146* |

Peace officers should always remember that vehicles can be a very personal possession. Losing it may evoke highly emotional and volatile disputes.

NOTE:     Occasionally repossessors will break a lock on a garage or building to gain entry to repossess an item. In such cases, there is no specific intent to commit a felony. Their actions do not complete the crime of forcible entry.

*Continued on next page*

134

# Disputes Involving Repossession, Continued

**Stolen property reports**

Buyers may, intentionally or unintentionally, report property that has been repossessed as being stolen. If peace officers suspect that this might be the case, they should:

- inquire as to who owns the title to the property,
- determine whether the buyer is delinquent in payments, and
- determine whether the item is on the list of repossessed items on file with their law enforcement agency.

If a peace officer reasonably concludes that the property has been repossessed, the complainant should be referred to the title holder.

**Examples**

Example:        A repossessor located the vehicle he was to repossess in a grocery store parking lot. After the vehicle was hooked up to the tow truck, the owner of the vehicle came out and objected to the repossession. A passing law enforcement officer noticed the commotion and stopped to investigate. The peace officer determined that the repossessor was legitimate and that he had complete and lawful possession of the vehicle. The peace officer remained at the scene in order to calm the owner as the repossessor left with the vehicle in tow.

*Continued on next page*

135

## Disputes Involving Repossession, Continued

**Examples**
(continued)

Example:

Peace officers were called to the scene where a woman reported a prowler on her property. When peace officers arrived, they found a man attempting to open the woman's garage. The man identified himself as a repossessor who was there to repossess a motorcycle belonging to the woman's son. The woman refused to allow the man access to her garage where the motorcycle was being stored. She demanded that the man leave her property. Since the man had not entered the garage, he did not have complete possession of the motorcycle. The man left the scene. No crime was committed because there was no specific intent to unlawfully enter the structure or to steal the motorcycle.

136

# Chapter Synopsis

| | |
|---|---|
| **Learning need** | Peace officers must be aware of the nature of certain types of disputes, as well as the laws that pertain to each type in order to take the appropriate measures to resolve the dispute. |
| **Officer safety and family disputes [24.03.1]** | Peace officers must regard every family dispute as a potentially explosive and dangerous situation. By the time peace officers are called, emotions are high, and the heat of the disturbance may be at its most dangerous level. |
| **Tenant lockout/ seizure of property [24.03.2]** | Occasionally, when a tenant is behind in the rent, the landlord may attempt to jam the entrance or change the lock on the door in order to prevent the tenant's further use of the dwelling or seize property belonging to the tenant until the rent is paid. |
| **Vandalism [24.03.3]** | It is also unlawful for a landlord to remove the doors and/or windows to the tenant's dwelling or destroy the tenant's personal property in an effort to harass the tenant. |
| **Unauthorized entry [24.03.4]** | If a landlord enters a tenant's dwelling without prior permission in order to harass the tenant or to "snoop around," the landlord has committed the crime of unauthorized entry (trespass). |
| **Disruption of utility services [24.03.5]** | Landlords are not allowed to disrupt or disconnect one or more of the tenant's utilities as a means of forcing the payment of past rent. |

*Continued on next page*

137

## Chapter Synopsis, Continued

| | |
|---|---|
| **Reentry following a lawful eviction [24.03.6]** | Once a lawful eviction has taken place, a tenant cannot lawfully reenter the dwelling from which that person has been evicted. |
| **Officer responsibilities during a repossession [24.03.7]** | Peace officers normally do not become involved in a lawful repossession process other than to keep the peace and restore order. It is not the responsibility of the officer to interpret a contract or to determine if there has been proper notice and hearing. |
| **Complete possession [24.03.8]** | In order to have complete possession of property, the repossessor must have complete dominion and control over the property. This takes place when the possessor has gained entry to the property, or when the property (if a vehicle) has been hooked up to a tow truck. |

138

# Workbook Learning Activities

**Introduction**   To help you review and apply the material covered in this chapter, a selection of learning activities has been included. No answers are provided. However, by referring to the appropriate text, you should be able to prepare a response.

**Activity questions**

1. In your own words, describe some peace officer safety issues related to dealing with a family dispute. What are the dangers to officer safety in a dispute involving the repossession of a person's vehicle?

2. As a matter of safety, peace officers should assess the existence of current or potential violence when they enter an area where a dispute is occurring or has taken place. What signs might be evident at the scene of a family dispute?

*Continued on next page*

# Workbook Learning Activities, Continued

**Activity questions (continued)**

3.  How would the problem-solving mediation process differ when peace officers are called upon to handle a dispute involving a landlord and tenant as opposed to a family dispute? How would it be similar? Is there any difference in the safety precautions a peace officer should take? Explain the reasoning for your answers.

4.  You are called to the scene of a dispute between a landlord and two tenants. When you arrive, you find the furniture and personal items of the tenants have been placed in the front yard outside of the apartment building. The tenants claim that the landlord "threw them out" because he did not approve of their lifestyle. The landlord claims he has grown tired of all the excuses the tenants have given him for not paying their rent. How do you proceed? What actions should you take as a law enforcement officer?

*Continued on next page*

140

# Workbook Learning Activities, Continued

**Activity
questions**
(continued)

5.  Explain *why* the actions of peace officers are limited in a dispute involving
    a repossession where no criminal activity is involved.

6.  You are called to the scene of a dispute involving a repossession of a
    living room couch and love seat. The dispute has arisen because the
    repossessor, who is standing in the middle of the living room with his
    moving equipment, claims that he has the document that shows he is
    authorized to take the furniture. The homeowner produces canceled checks
    that he claims shows that he is current on all his payments. As
    a peace officer, what action(s) should you take?

# Chapter 4

# Crowd Dynamics

## Overview

| | |
|---|---|
| **Learning need** | Peace officers must have a clear understanding of the individual's rights and protections regarding free speech and assembly, along with the dynamics of the types of crowds that may form for the purpose of exercising those rights. |

| | |
|---|---|
| **Learning objectives** | The chart below identifies the student learning objectives for this chapter. |

| After completing study of this chapter, the student will be able to: | Objective ID |
|---|---|
| • Explain peace officer responsibilities regarding the protection of an individual's right to free speech and assembly. | 24.04.1 |
| • Discuss the role of law enforcement regarding crowd control. | 24.04.2 |
| • Describe psychological factors associated with crowd behavior. | 24.04.3 |
| • Discuss the phases of crowd development from a casual gathering through the development of a riot. | 24.04.4 |
| • Discuss the three primary roles individuals play within a crowd. | 24.04.5 |

*Continued on next page*

142

# Overview, Continued

**In this chapter**   This chapter focuses on the background information regarding an individual's right to free speech and the makeup and dynamics of crowds that form to exercise that right. Refer to the chart below for specific topics.

| Topic | See Page |
|-------|----------|
| The Freedom of Speech | 4-3 |
| Crowd Dynamics | 4-7 |
| Chapter Synopsis | 4-17 |
| Workbook Learning Activities | 4-18 |

# The Freedom of Speech

| | |
|---|---|
| **Introduction** | In the United States all people have the right of free speech and free assembly. Law enforcement officers must recognize these rights and actively protect persons who are lawfully exercising them. |

| | |
|---|---|
| **Constitutional protections** | The First Amendment of the U.S. Constitution states: |

> "Congress shall make no laws respecting an establishment of religion or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people to assemble, and to petition the government for a redress of grievances."

Article I, Section 3 of the California Constitution states:

> "The people have the right to instruct their representatives, petition government for redress of grievances, and assemble freely to consult for the common good."

| | |
|---|---|
| **Lawful activities** | Both the U.S. and California Constitutions guarantee all forms of lawful informational and demonstration activities (e.g., rallies, marches, picketing, leafleting, etc.). |

The protections regarding the freedom of speech under both Constitutions also apply to conduct used to communicate ideas (e.g., flag burning, taking a knee, etc.).

The government cannot prohibit these lawful activities or regulate them in any way that will prevent meaningful and effective communication other than to impose reasonable restrictions on time, location, and manner of such activities.

*Continued on next page*

144

# The Freedom of Speech, Continued

| | |
|---|---|
| **Scope of restrictions** | The scope of governmental restrictions related to the peoples' right to free speech and assembly increases as the conduct of those exercising their rights goes beyond speech itself.<br><br>For example, there may be few regulations restricting a person who is passing out leaflets in a public area and who is not impeding the normal flow of pedestrians.<br><br>The government may impose greater restrictions on an activity that involves trespassing on private property, blocking free passage on a public sidewalk, a public highway, or attempting to prevent others from doing their jobs. |
| **Individual responsibilities** | The rights all people have to march, demonstrate, protest, or to perform any other First Amendment activity comes with the responsibility to not abuse or violate the civil and property rights of others. Under no condition does the right to free speech and assembly include a right to cause injury to others or damage property. |

*Continued on next page*

145

# The Freedom of Speech, Continued

| | |
|---|---|
| **Role of law enforcement** | It is the responsibility of all law enforcement officers to protect and uphold each individual's right to free speech and assembly while also protecting the lives and property of all people.

Establishing a clear command structure during an incident is essential. When responding to an incident, individuals of any rank may serve as incident commander until relieved by a ranking peace officer.

When dealing with crowds, the role of law enforcement includes:

- protection of individual constitutional rights,
- fair and impartial enforcement of the law,
- protection of life and property,
- protection of vital facilities,
- prosecution of violators,
- safety of the public and peace officers, and
- prevention of disruption to commerce and community affairs. |

*Continued on next page*

146

# The Freedom of Speech, Continued

| | |
|---|---|
| **Restoring order** | If the actions of a group pass from lawful activities to unlawful activities, it is the responsibility of law enforcement to control those actions lawfully, efficiently, and with minimal impact upon the community.<br><br>The goal should be to protect lawful activity while identifying and addressing unlawful behavior. |
| **Professional integrity** | Peace officers must not allow personal or political opinions, attitudes, or religious views to affect their responsibility to protect an individual's right to free speech and assembly.<br><br>Peace officers must not be affected by:<br><br>• the content of the opinions being expressed,<br>• race, ethnic makeup, color, national origin,<br>• gender identity or expression, sexual orientation,<br>• mental or physical disabilities,<br>• age,<br>• appearances, or<br>• affiliations. |

# Crowd Dynamics

**Introduction**    Be aware various types of behaviors associated with crowds that may result in a public safety response. Crowds at times can be a blend of both lawful and unlawful conduct. Conduct can be lawful, individual and or group criminal acts, civil disobedience, and rioting. During some events, individuals or groups may exploit a lawful assembly to help conceal or otherwise facilitate criminal acts.

**Types of crowds**    There are many different types of crowds that officers should be aware of:

| Crowd Type | Description | Examples |
|---|---|---|
| Casual | • A group of people who happen to be in the same place at the same time<br>• Because there is no common bond, it would take substantial provocation to move this type of crowd toward a defiant act | • Shoppers<br>• Tourists |
| Cohesive | • A group of people who are drawn to an area for a specific purpose | • Spectators at a sporting event<br>• Guests at a party or social event<br>• Onlookers at a traffic collision or disaster site<br>• Participants at a community celebration |

*Continued on next page*

# Crowd Dynamics, Continued

| | Crowd Type | Description | Examples |
|---|---|---|---|
| **Types of crowds** (continued) | Expressive | • A group of people with a unity of purpose<br>• May know or closely identify with each other<br>• May have an internal command structure (leaders)<br>• Usually well organized | • Protestors<br>• Delegates at a political event<br>• Picketers at a labor dispute |
| | Demonstrative | • A group of people who are very emotional, passionate, or aggressive regarding their purpose<br>• Highly volatile and potentially dangerous<br>• Easily provoked to unlawful actions | • Protestors |
| | Antagonistic | • Uniformed<br>• Organized<br>• Non-affiliated<br>• Attempts to disrupt and prompt violence | • Counter protesters<br>• Agitators |

*Continued on next page*

# Crowd Dynamics, Continued

**Group psychological factors**

As crowds form, people within the crowd begin to lose individual characteristics and develop a group identity. The following table identifies a number of these behaviors associated with group behavior phenomena.

| Psychological Factors | Additional Information |
|---|---|
| Group identity | • Established quickly<br>• May be established informally or formally (e.g., membership in same organization such as a labor union)<br>• Can be very intense due to the emotions generated by the crowd<br>• Can be short lived<br>• Frequently an emotional bond rather than an intellectual bond |
| Group cohesiveness | • Development of a stronger identity ("*Us*" versus "*Them*" syndrome)<br>• Strong, often intense emotional bonding as individuals identify with the goals of the group<br>• Highly protective of members against "*outside*" influences or attacks<br>• Tendency for groups to act as one |
| Group-induced anonymity | • Loss of personal or individual identity<br>• Sense of protection in the large number of "*faceless individuals*"<br>• Individuals may act out in a manner that is not consistent with their normal behavior outside the group |

*Continued on next page*

150

# Crowd Dynamics, Continued

**Group psychological factors** (continued)

| Psychological Factors | Additional Information |
|---|---|
| Group potentiality for violence | • Violence is often spontaneous<br>• Emotional responses of large groups often become heated and result in violence<br>• Violence can be undirected, unfocused, or random<br>• Duration of protest<br>• Type and size of crowd<br>• Presence or protester elements (e.g., shields, protective clothing, and weapons)<br>• Lack of enforcement |
| Group violence | • Violence becomes contagious<br>• Violence may be precipitated by:<br>  - rumor, social media<br>  - stimulation by individuals' intent on causing violence, or<br>  - law enforcement action(s)<br>  - planned violence<br><br>NOTE:   A nonviolent crowd with peaceful intentions can explode suddenly due to a highly emotional response to any type of stimulus. |

*Continued on next page*

151

# Crowd Dynamics, Continued

**Phases of crowd development**

Crowds develop in phases as people begin to gather. At each phase, the crowd may act differently, and law enforcement actions and responses may have to be adjusted.

The following table identifies the phases of crowd development and the crowd actions associated with each.

| Phase | Group Action |
|---|---|
| Staging/ Preparation | • Pre-event promotion<br>• Pre-event training<br>• Pre-event reconnaissance and planning<br>• Pre-staged protester equipment |
| Grouping | • Individuals come together.<br>• Initial mingling takes place. |
| Interaction | • Individuals begin to identify with the group and solidify.<br>• Mass yelling begins to take place. |
| Volume | • Mass of individuals becomes a crowd.<br>• Noise volume increases (use of drums, bullhorns, yelling, music).<br>• No unlawful acts have taken place. |
| Overt act | • The point when unlawful/disruptive acts begin to take place.<br>• Event may be minor and committed by a single individual. |

*Continued on next page*

152

# Crowd Dynamics, Continued

| Mimicking | • Other members of the crowd copy the first offense (if no action was taken).<br>• Onlookers may start to take a more aggressive role.<br>• If allowed to go unchecked, a riot can begin.<br>• Inappropriate overt actions by law enforcement officers may lead to panic and riot. |
|---|---|
| Riot | • A portion of the crowd becomes involved in violent acts, or threats of violent acts if accompanied by immediate power of execution<br>• Any law enforcement actions should be proportional to the activities of the crowd. |

*Continued on next page*

153

# Crowd Dynamics, Continued

**Crowd composition**

There are various roles within a crowd. The following table further identifies each.

| Role | Additional Information |
|------|------------------------|
| Leaders | • Usually located near the rear and sides of the group<br>• May try to incite or copy overt acts started by others<br>• Can be organized<br>• May direct or feed information to the aggressors |
| Aggressors | • Usually near the front of the crowd (near law enforcement and/or media)<br>• Often seen or heard more than the leaders<br>• Often need or receive direction from the leader(s)<br>• Thrive on confrontation<br>• Often attempt to provoke a response from law enforcement |
| Followers/onlookers | • Located between the leaders and aggressors<br>• Primary involvement is out of curiosity or passive support<br>• Need direction and leadership (except during highly emotional situations)<br>• Subject to mood swings brought on by actions or reactions of others (e.g., leaders, law enforcement)<br>• Usually, nonconfrontational with law enforcement<br>• Usually react the quickest to law enforcement tactics |

*Continued on next page*

154

# Crowd Dynamics, Continued

| | Role | Additional Information |
|---|---|---|
| **Crowd composition** (continued) | Legal observers | • Usually spread throughout.<br>• Observe and document<br>• Record peace officer behavior and conduct for potential civil litigation.<br>• Easily identifiable clothing (e.g., neon green hat) |
| | Anarchist | • Usually found embedded in the crowd<br>• May or may not be in attendance<br>• Tend to be very organized<br>• Not affiliated with the group protesting.<br>• Primary intent is to cause anarchy<br>• Tend to be very violent<br>• Uses other protesters as shields<br>• Uses conventional/ non-conventional weapons |
| | Opportunist | • Seeks to use the protest as an opportunity to loot and/ or commit other crimes. |
| | Additional crowd composition | • Crowd sometimes have additional groups in attendance other than those listed in the table above (e.g., uncredentialed media or spectators) |

**Civil disobedience**

**Civil disobedience** is an *unlawful* event involving a planned or spontaneous demonstration by a group or groups of people.

**Historical perspective**

Acts of civil disobedience have played a primary role in the history of the United States. The Martin Luther King Jr. March for Jobs and Freedom 1963, Rosa Parks Bus Boycott 1955, Delano Grape Strike and Boycott 1965-1970, Women's March 2017.

*Continued to next page*

155

# Crowd Dynamics, Continued

**California perspective**

Numerous acts of civil disobedience have taken place within California. The following table describes a number of historical events.

| Decade | Location | Rationale for Disturbance |
|--------|----------|---------------------------|
| 1960's | Watts | Civil rights and race relations |
|        | Berkeley People's Park | Viet Nam War |
| 1970's | Isla Vista | Corporate involvement with war in Viet Nam |
|        | Los Angeles | Shah of Iran |
|        | Walnut Creek | Nazi rallies |
| 1980's | Berkeley | Apartheid in South Africa |
|        | San Francisco | Democratic National Convention |
|        | Los Angeles | Operation Rescue; Animal Rights |
| 1990's | San Francisco | Gulf War |
|        | Los Angeles | Rodney King verdict |
|        | Eureka | Deforestation |
|        | Davis | Animal rights |
| 2000's | Statewide | Immigration |
|        | Los Angeles | Lakers |
| 2010's | Statewide | Ferguson (Michael Brown)/ Black Lives Matter Movement |
|        | Statewide | Occupy Movement |
| 2020's | Statewide | George Floyd/ Black Lives Matter Movement |
|        | Statewide | Elections |
|        | Statewide | Pandemic/ State shutdowns |

*Continued on next page*

156

## Crowd Dynamics, Continued

| | |
|---|---|
| **Changing tactics** | Tactics used for crowd control are constantly evolving due to changes in law, technology and lessons learned. |
| **Law enforcement perspective** | Peace officers must continuously evaluate the need to take enforcement action, balancing the benefit, risk, and consequences of those actions or inactions. |

# Chapter Synopsis

| | |
|---|---|
| **Learning need** | Peace officers must have a clear understanding of the individual's rights and protections regarding free speech and assembly, along with the dynamics of the types of crowds that may form for the purpose of exercising those rights. |
| **Free speech and assembly [24.04.1, 24.04.2]** | It is the responsibility of all law enforcement officers to protect and uphold each individual's rights to free speech and assembly while also protecting the lives and property of all people. |
| **Group psychological factors [24.04.3]** | As crowds form, people within the crowd begin to lose individual characteristics and develop a group identity. |
| **Phases of crowd development [24.04.4]** | A crowd does not suddenly and spontaneously turn into a riot.  Crowds develop in phases as people begin to gather. At each phase, the crowd may act differently. |
| **Crowd composition [24.04.5]** | Individuals play three primary positions, leaders, aggressor, other forms of participant, and followers onlooking within a crowd. |

158

# Workbook Learning Activities

| | |
|---|---|
| **Introduction** | To help you review and apply the material covered in this chapter, a selection of learning activities has been included. No answers are provided. However, by referring to the appropriate text, you should be able to prepare a response. |

| | |
|---|---|
| **Activity questions** | 1. Describe a casual crowd, a cohesive crowd, and an expressive crowd, a demonstrative crowd, and an antagonistic crowd. |
| | 2. Describe how group cohesiveness and group-induced anonymity are demonstrated within a crowd attending an athletic event, a rock concert, and bystanders at the scene of a natural disaster. |

*Continued on next page*

159

# Workbook Learning Activities, Continued

**Activity
questions**
(continued)

3. Describe the roles that can be found within a crowd?

4. List at least three acts of civil disobedience and/or civil unrest that have
taken place in the United States or elsewhere in the world.

160

# Workbook Learning Activities, Continued

**Student notes**

161

# Chapter 5

# Crowd Management and Control

## Overview

**Learning need**

Peace officers need to understand the tactical principles involved in the management and control of crowds in order to ensure the protection of the First Amendment rights of the crowd, and the safety of the entire community.

**Learning objectives**

The chart below identifies the student learning objectives for this chapter.

| After completing study of this chapter, the student will be able to: | Objective ID |
|---|---|
| • Explain the primary law enforcement objective of: <br> - crowd management <br> - crowd control <br> - riot control | 24.05.01 |
| • Describe the phases of riot development. | 24.05.02 |
| • Apply common riot control formations used by law enforcement: <br> - skirmish line <br> - wedge/vee <br> - diagonal <br> - column <br> - arrest/rescue formations (e.g., circle) | 24.05.03 |

*Continued on next page*

162

# Overview, Continued

**In this chapter**    This chapter focuses on law enforcement actions related to the management
and control of crowds. Refer to the chart below for specific topics.

| Topic | See Page |
|---|---|
| Crowd Management | 5-3 |
| Crowd Control | 5-7 |
| Riot Control | 5-13 |
| Phases of Riot Development | 5-21 |
| Crowd Control Formations | 5-24 |
| Chapter Synopsis | 5-30 |
| Workbook Learning Activities | 5-31 |

# Crowd Management

| | |
|---|---|
| **Introduction** | A public assembly, even when lawful, may require the response of law enforcement. This response can range from observation to the application of crowd control strategies. |
| **Crowd management** | **Crowd management** refers to the techniques used by peace officers in response to a known event, activity, or occurrence. In situations involving crowd management, law enforcement agencies have the ability to assist in the planning, coordination, and management of the event. |

Events which may require law enforcement involvement in crowd management include, but are not limited to:

- First Amendment demonstrations and activities,
- parades,
- cultural programs,
- musical concerts,
- religious gatherings,
- community activities, or
- sporting events.

| | |
|---|---|
| **Law enforcement objective** | The main objective of crowd management is to ensure that the event *remains lawful* while providing for the protection of the First Amendment rights of all people. |
| **Principles of crowd management** | There are two primary principles involved in crowd management. |

- Incident planning
- Crowd containment

*Continued on next page*

164

# Crowd Management, Continued

**Incident planning**

Numerous crowd management strategies may be employed in order to meet the law enforcement objective. Whenever possible, development of these strategies should begin long before the event takes place. Strategies can include, but are not limited to:

- coordination of incident planning and preparation with potential event promoters,
- development of a unified and streamlined chain-of-command,
- involvement of community stakeholders (i.e., persons who have a legal, economic, or community interest in the event),
- deployment of sufficient numbers of peace officers and public safety personnel,
- ensuring law enforcement personnel have proper and sufficient equipment,
- establishment of the rules of conduct for the crowd, law enforcement officers, the media, etc.,
- development of a quick, effective response to violence or law violations,
- planning for mass arrests, developing predetermined responses/ options and arrest thresholds for specific criminal activity during the event,
- the permit process, and/or
- construct a written plan that contains, the Incident Command System, (ICS), State Emergency Management System (SEMS) and the National Incident Management System (NIMS).
- Review prior After Actions Report (AAR)
- Establish contingencies and **crowd intervention** techniques.

**Information sources**

The more information law enforcement agencies have regarding an event or planned demonstration, the better that agency can prepare to manage the crowds associated with the event.

Information may be gathered from:

- attendance at meetings,
- group representatives,
- stakeholders,
- flyers,
- informants,
- graffiti, or
- Internet/ social media.

*Continued on next page*

165

# Crowd Management, Continued

| | |
|---|---|
| **Types of information required** | There are numerous types of information that a law enforcement agency can use when planning for an event involving a crowd. These include but are not limited to the following. |

- Type of event (e.g., protest demonstration, community celebration, etc.)
- Location and the structures involved (e.g., open park, a public street, a convention center, a sports arena, etc.)
- Number of expected participants
- Emotional mood or makeup of the crowd (e.g., angry, passionate, celebratory, etc.)
- Nearby areas that may require special attention (e.g., access to hospitals, schools, freeways, major throughfares, critical infrastructure etc.)
- Requirements for parking, water, food, sanitary facilities, etc.
- Access to and from the area

| | |
|---|---|
| **Containment** | In most situations, once the group has been established, it is easier to contain them in a given area than it is to move them.

A containment should be established to contain the crowd when possible. This containment must be both controllable and flexible. Peace officers should control both the ingress (entry) and egress (exit) of the crowd within the perimeter. |

*Continued on next page*

166

# Crowd Management, Continued

| | |
|---|---|
| **Law enforcement presence** | In a crowd management situation, law enforcement presence is intended as a *preventive* measure and should remain low profile.<br><br>The presence of uniformed peace officers who display a command presence is often an adequate deterrent to any unlawful activities. It is preferable for the crowd to remain focused on the event itself rather than on peace officer actions at the event. |
| **Peace officer conduct** | An otherwise peaceful group can become enraged by inappropriate peace officer conduct such as individual peace officers engaging in verbal disputes with members of the crowd or by peace officers showing contempt for the crowd or its beliefs.<br><br>Peace officers must always remain *impartial and professional*. It is their role to protect the rights of the group while enforcing the law. Each peace officer must be aware of and comply with established rules of conduct as they apply to:<br><br>• peace officer actions,<br>• peace officer wellness/ safety briefing,<br>• actions of the participants in the event, and<br>• members of the media who may be covering the event. |
| **Agency policies** | Peace officers must be aware of and comply with their own agency policies and procedures regarding peace officer conduct and crowd management situations. |

# Crowd Control

| | |
|---|---|
| **Introduction** | There are countless reasons why people gather in large groups. They may gather in small spontaneous groups out of curiosity or in large crowds that form at a predetermined location out of a common cause. Either type of gathering can be passive or hostile, or a mixture of both. |
| **Crowd control** | <u>**Crowd control**</u> is the law enforcement response to a protest or gathering that has become unlawful and/ or violent. It may also require arrest and/ or deployment of dispersal tactics or even use of force. |
| **Law enforcement objective** | The law enforcement objective during crowd control is to control the situation, provide intervention, prevent violations of the law, and reasonably enforce observed violations of the law while balancing the groups' First Amendment rights of free speech and assembly. |
| **Potential for violence** | Certain events, even though preplanned, have a higher potential for violence or violations of the law. Often groups will gather to protest real or perceived infringements on the rights of that group. The emotions and reactions of the crowd must be carefully monitored during such events to provide as much lead time as possible for an appropriate law enforcement response. |

*Continued on next page*

# Crowd Control, Continued

**Potential for violence** (continued)

Events with a higher level of potential violence may include demonstrations involving:

- labor disputes,
- prolife/prochoice protests,
- environmental issues, or
- highly charged political or economic issues,
- anti-law enforcement protests

There are a number of types of events which draw large crowds and are normally peaceful, but which also have a potential for problems. Examples include:

- concerts,
- sporting events, or
- holiday celebrations (e.g., New Year's Eve, Fourth of July, etc.).

NOTE:    Law enforcement should remain vigilant as violence or criminal activity can occur at any event. (e.g., attacks on law enforcement, active attacker, etc.)

*Examples*: Gilroy Garlic Festival (2019), Black Lives Matter rally in Dallas, Texas (2016), Route 91 Festival Concert (2017), Charlottesville Protest (2017)

*Continued on next page*

169

## Crowd Control, Continued

**Initial response**

Peace officers encountering a crowd where there is a potential or imminent threat of violence must appraise the situation carefully. Factors that should be considered include the:

- emotional complexion of the group.
- presence of bystanders or opposing groups.
- potential for violence.
- safety of community members and law enforcement
- resources and tactical ability of peace officers at the time.
- environmental factors.

**Continued monitoring**

Crowd situations should be continually monitored by law enforcement personnel and technological resources to assess the crowd control situation. If necessary, peace officers should be prepared to advise their supervisor or agency of the crowd's status.

Peace officers should report any changes in the status of the crowd or the event so that those who are in command can modify any proposed course of action based on those changes. This may include identifying and/ or implementing reasonable crowd intervention techniques.

**Example**

Example:    Peace officers are assigned to perimeter duty. They see a protester "medical bus" distributing weapons, shields, and other protective equipment. A peace officer calls into the command post and reports their observations. This allows for possible realignment of additional peace officers or equipment.

*Continued on next page*

170

# Crowd Control, Continued

**Control principles**

Peace officer actions are based on the group's First Amendment rights weighed against the rights and safety of the entire community and the protection of property. If possible, the same basic tactics used in crowd management situations should be applied in a situation involving crowd control. Any plan of action should be flexible and adjusted according to the situation.

Additional control tactics may also apply. The following table further identifies tactical measures involved in crowd control.

| Control Principle | Additional Information |
|---|---|
| Isolation and containment | • A perimeter should be identified to contain the crowd.<br>• If necessary, the limits of the area may be marked by the placement of barricades or placement of additional peace officers.<br>• In mobile events the law enforcement response should be nimble and mobile to contain the event.<br><br>NOTE:    In situations that involve potential violence, peace officers should maintain the integrity of squads or platoons they are assigned to and avoid becoming isolated. |
| Law enforcement presence | • Consideration should be given to the impact of the visible presence of law enforcement at any event. |

*Continued on next page*

# Crowd Control, Continued

| Control principles (continued) | Control Principle | Additional Information |
|---|---|---|
| | Selective arrests | <ul><li>Unlawful acts that are not openly violent may be controlled by individual or multiple arrests of the specific individuals involved.</li><li>If the only unlawful act is the unlawful assembly, the crowd should be given the opportunity to disperse voluntarily before any arrests take place.</li><li>There must be sufficient personnel deployed at the scene to make arrests and ensure proper control.</li><li>Individual peace officers attempting to handle a situation alone may be placing themselves and others in danger and also further inciting the crowd.</li></ul><br>NOTE:    Additional information regarding dispersal orders is provided in later portions of this chapter. |

**Media coverage**

Representatives and equipment of the news media are likely to be present at any event that is considered controversial or has the potential for violence. Law enforcement actions can often be a key target for media attention in these situations.

In addition to the formal news coverage, individual members of the crowd may have recording devices. People may be assigned by event leaders and coordinators to photograph or record the peace officers who are present and their actions. Peace officers should assume they are on camera and are being recorded at all times.

*Continued on next page*

172

# Crowd Control, Continued

| | |
|---|---|
| **Media coverage** (continued) | Peace officers, unless assigned, should refrain from making comments or statements to the news media. |
| | *Penal Code Section 409.7* states that if peace officers close the immediate area surrounding any emergency field command post or any other command post, or establish a police line, or rolling closure at a demonstration, march, protest, or rally where individuals are engaged in activity that is protected by the First Amendment. A duly authorized representative of any news service, online news service, newspaper, or radio or television station or network may enter the closed areas described in this section. Peace officers shall not intentionally assault, interfere with, or obstruct the duly authorized representative. This section does not impose, and shall not be used as the basis for, criminal liability. |
| **Peace officer conduct** | As in all contacts with the public, the conduct of each law enforcement officer in a crowd management situation must be *professional and legal*. Individuals within the group may view law enforcement presence as an infringement or threat. Peace officers must remain calm and unbiased while at the same time remaining firm. |
| | If any peace officer is not absolutely clear on what the law enforcement objective of the mission is or what his or her individual duties are, it is that peace officer's responsibility to contact a supervisor to obtain clarification. |
| **Agency policies** | Peace officers must be aware of and comply with their own agency policies and procedures regarding peace officer conduct and crowd control situations. |

173

# Riot Control

| | |
|---|---|
| **Introduction** | Most large gatherings of people remain well behaved and law abiding. A crowd that gathers in support of, or in opposition to, a controversial or emotional theme may be more likely to evolve into an unruly demonstration. If the actions of the crowd escalate to the use of force or violence against people or property, the assembly becomes a **riot**. |

| | |
|---|---|
| **Riot** | *Penal Code Section 404* defines a **riot** as, "Any use of force or violence, disturbing the public peace, or any threat to use violence, if accompanied by immediate power of execution, by two or more persons acting together, and without authority of law." |

| | |
|---|---|
| **Riot control** | **Riot control** refers to the techniques used by peace officers in response to an escalation of crowd violence where reasonable force may be necessary to prevent additional violence, injuries, death, or the destruction of property. |

**Riot situations**

There are two types of riot situations.

| Type | Examples |
|---|---|
| Fixed | • Open areas<br>• Enclosed areas<br>• Intersections<br>• Buildings |
| Mobile | • A large crowd with small groups splintering off<br>• Small groups looting or causing damage or destruction<br>• Rioters on buildings throwing objects or firing at officers<br>• Large groups occupying freeways or throughfares. |

*Continued on next page*

# Riot Control, Continued

| | |
|---|---|
| **Law enforcement objective** | The First Amendment does not give individuals the right to break the law.<br><br>The objectives of law enforcement change once a crowd moves from exercising the right of free speech to criminal actions involving the rights of the public and violence against people or property. Under such conditions, the objectives of law enforcement become the protection of lives and property, and the restoration of order. |
| **Principles of riot control** | There are four primary principles of riot control.<br><br>• Containment<br>• Isolation<br>• Dispersal<br>• Restoration of order |
| **Incident planning** | Law enforcement agencies do not necessarily plan on a riot erupting from every crowd situation. But certain gatherings, based on the nature of the gathering or the group(s) involved, may be more prone to involve unlawful acts and violence.<br><br>Riot control is generally a contingency plan that is part of a well-prepared *crowd management* plan.<br><br>By planning for this possibility, agencies will have identified:<br><br>• crowd intervention techniques,<br>• specific operational tactics,<br>• arrest and enforcement thresholds,<br>• additional resources, equipment, and personnel that may be required,<br>• assignments of specific tasks,<br>• policies and procedures for mounting a quick, effective response to violence or violations of the law, and<br>• guidelines regarding the use of force options, including chemical agents, batons, impact munitions, etc. |

*Continued on next page*

# Riot Control, Continued

**Additional
riot control
principles**

The highly volatile nature of a violent crowd requires flexibility in thought
and planned actions. Peace officer actions must be based on issues of peace
officer safety, safety of the community, and protection of property.

The following table identifies tactical measures involved in riot control.

| Riot Control Principles | Additional Information |
|---|---|
| Containment | • Establish controllable and flexible perimeters to contain the crowd.<br>• Control ingress and egress, denying access and preventing others from joining the existing crowd. |
| Isolation | • Develop an inner perimeter to create a buffer zone between the inner and outer perimeters.<br>• Provide a means to identify intruders or unauthorized persons within the outer perimeter.<br>• Serve as an operating zone for peace officers, if necessary.<br>• Allow peace officers to focus their enforcement capabilities.<br>• May make rioters feel vulnerable and more likely to disperse. |
| Dispersal | • Can begin once the:<br>  - inner and outer perimeters have been established,<br>  - control forces are in position to support crowd movement, and<br>  - ingress and egress are controlled. |
| Restoration of order | • arrest<br>• detention<br>• transportation<br>• cite and release<br>• criminal investigation |

*Continued on next page*

176

# Riot Control, Continued

**Kinetic energy projectiles and chemical agents**

*Penal Code Section 13652(a)* states that **kinetic energy projectiles** and **chemical agents** shall not be used by any law enforcement agency to disperse any assembly, protest, or demonstration.

Kinetic energy projectiles and chemical agents shall only be deployed by a peace officer if the use is objectively reasonable to defend against a threat to life or serious bodily injury to any individual, including any peace officer, or to bring an objectively dangerous and unlawful situation safely and effectively under control, and only in accordance with all of the requirements stated in *Penal Code Section 13652(b).*

Kinetic energy projectiles or chemical agents shall not be used by any law enforcement agency solely due to any of the following:

- A violation of an imposed curfew
- A verbal threat
- Noncompliance with a law enforcement directive

**Dispersal orders**

*Penal Code Section 726* establishes the authority to issue a dispersal order "in the name of the people of the state."

The intent of a dispersal order is to permanently disperse a crowd, not merely relocate the problem. When a dispersal order is given, it should be made clear that the crowd is expected to immediately leave the area.

The dispersal order must be given in a manner so that it can be heard and understood by the intended audience. Based upon the circumstances, law enforcement command officers may need to:

- issue multiple announcements from various locations,
- use amplified sound,
- issue the orders in languages that are appropriate for the audience,
- position peace officers to the rear of the crowd to confirm and document that the order could be heard, or
- use video or audio for documentation purposes.
- Consider the unintended effects of the dispersal order.

*Continued on next page*

177

# Riot Control, Continued

| | |
|---|---|
| **Refusing to disperse** | *Penal Code Section 409* states that, "every person remaining present at the place of any riot, rout, or unlawful assembly, after the same has been lawfully warned to disperse, except public officers and persons assisting them in attempting to disperse the same, is guilty of a misdemeanor." |

**Peace officer actions regarding dispersal**

Throughout the dispersal process peace officers MUST remain patient, observant, alert, and cautious. The following table identifies peace officer actions when dispersing a crowd.

| Action | Additional Information |
|---|---|
| Provide instructions | • Provide clear, simple directions and instructions to avoid confusion.<br>• Provide appropriate time for the size of the crowd to comply with instructions. |
| Control dispersal routes | • Identify routes for exiting.<br>• Larger crowds may be divided into sections and one section cleared at a time to maintain control.<br>• Do not "box in," "press," or "force" a crowd to move too fast to prevent panic or violent resistance.<br>• Immediately cut off any attempt to evade the inner perimeter or to escape via an unauthorized route. |
| "Shrink" inner perimeter | • As the crowd disperses, the size of the inner perimeter can be reduced.<br>• Following the clearing of a section, it must be patrolled by sufficient personnel to prevent any return of rioters and the resumption of unlawful activity. |

*Continued on next page*

178

# Riot Control, Continued

| | |
|---|---|
| **Violent resistance or confrontation** | When dealing with crowds and civil disobedience situations, peace officers must work together as a professional, disciplined, and well-organized control force. Peace officers who face rioters on the line must be prepared to face possible violent resistance or confrontation. Such acts should be dealt with quickly and efficiently without excessive force or overreaction. |

Reasonable force is used to prevent escalation of violence and to overcome resistance to a lawful process. The decision to use force and the force options that may be applied in response to riot control incidents should be based on the type and amount of resistance encountered.

Peace officers must be familiar with their agency policies and procedures regarding riot control. Peace officers who violate these policies and procedures are liable for civil and criminal penalties.

**Arrest teams**

A large number of arrests often take place during law enforcement actions related to control of a riot. Arrests may be made for the failure to disperse once a dispersal order has been given or for specific crimes committed.

Multiple arrests are often handled by arrest teams (designated arrest officers) that are prepared and equipped to take custody of numerous persons. Arrest teams are usually made up of:

- a team leader,
- arresting officers, and
- cover officers.

*Continued on next page*

179

# Riot Control, Continued

**Preplanning for multiple arrests**

The most successful law enforcement strategy for dealing with mass arrests and bookings are proper planning, training, and comprehensive briefings of the involved peace officers.

Mass arrests procedures used must be flexible enough to handle challenges confronting peace officers in the field. Issues to be considered as part of preplanning for crowd management include, but are not limited to:

- safe location for the command post,
- use of multiple handcuffs, flex cuffs, and gloves,
- use of prepared arrest packets,
- establishing a location for a secure booking and holding area,
- transportation from the demonstration area to the booking area,
- maintaining continuity and accountability of arrestees from the arrest site through the booking process,
- prisoner custody and security,
- first aid and chemical agent decontamination, if necessary,
- procedures for citation and release or transport to jail, and
- videographer/photographer for the arrest team.

*Continued on next page*

180

# Riot Control, Continued

**Crimes related to crowds and riots**

The following table identifies a number of crimes related to crowds and riots.

| Criminal Action | Penal Code Section |
|---|---|
| Disturbing the peace | 415 |
| Malicious mischief | 594 |
| Trespass on enumerated lands | 602J |
| Participating in an unlawful assembly | 407 and 408 |
| Obstructing individual from entering or exiting health care facility, place of worship, or school | 602.11 |
| Resisting officers who are performing official duties | 69 and 148 |
| Entering an area that has been closed by law enforcement officers | 409.5 |
| Impeding officers at the scene of a disaster | 402 |
| Disobedience to a dispersal order | 409 |
| Refusal or failure to disperse on command | 416 |
| Requirement to arrest persons who do not immediately disperse | 727 |
| Participation in a **rout** | 406 and 408 |
| Incitement to riot | 404.6 |
| Participation in a riot | 404 and 405 |
| Advocating to kill or injure a peace officer | 151(a) |

# Phases of Riot Development

**Introduction**       There are several phases that crowds of individuals must go through before becoming a riot.

**Phases of riot development**       The following table identifies the phases involved in the development of a riot along with possible law enforcement actions at each phase.

| Phase | Group Action | Possible Law Enforcement Response |
|---|---|---|
| Staging/ Preparation | • Pre-event promotion<br>• Pre-event training<br>• Pre-event reconnaissance and planning<br>• Pre-staged protester devices | • Pre-event protective sweeps of anticipated areas<br>• Pre-staging resources (e.g., barricades, equipment, personnel, etc.)<br>• Identify law enforcement command and control |
| Grouping | • Individuals come together.<br>• Initial mingling takes place. | • Initial staging of resources and personnel |
| Interaction | • Individuals begin to identify with the group and solidify.<br>• Mass yelling begins to take place. | • Seek opportunities to collaborate with the group and facilitate a peaceful event.<br>• Consider law enforcement presence located in view of the crowd (can be a catalyst). |
| Volume | • Mass of individuals becomes a crowd<br>• Noise volume increases (use of drums, bullhorns, yelling, music).<br>• No unlawful acts have taken place. | • Peace officers on alert and deployed in tactical positions.<br>• Consider available resources to monitor crowd growth and development. |

*Continued on next page*

182

# Phases of Riot Development, Continued

**Phases
of riot
development**
(continued)

| Phase | Group Action | Possible Law Enforcement Response |
|-------|-------------|-----------------------------------|
| Overt act | • The point when a defiant, unlawful act takes place.<br>• Events may be minor and committed by a single individual.<br>• Acts may be a simple infraction or misdemeanor.<br>• If the act is allowed to go unchecked, mimicking begins. | • Peace officers watch for overt acts<br>• Ensure communication to chain of command<br>• Immediate enforcement actions should be considered (e.g., surgical removal or mass enforcement)<br><br>NOTE:    Give consideration to criminal investigation and apprehension |
| Mimicking | • Other members of the crowd copy the first offense (if no action was taken).<br>• Onlookers may start to take a more aggressive role.<br>• If allowed to go unchecked, a riot can begin.<br>• Inappropriate overt actions by law enforcement officers may lead to panic and riot. | • Immediate enforcement action against violators may cause the crowd to revert to a previous phase.<br>• Individual and unit discipline are critical.<br>• Overly aggressive law enforcement actions may agitate the crowd. |

*Continued on next page*

183

# Phases of Riot Development, Continued

**Phases
of riot
development**
(continued)

| Phase | Group Action | Possible Law Enforcement Response |
|-------|-------------|----------------------------------|
| Riot | • Substantial portion of the crowd becomes involved in unlawful acts. | • Actions are increased and expanded in proportion to the activities of the crowd to restore order. |

184

# Crowd Control Formations

**Introduction**    The use of squad formations can peace offer a practical and reliable method of delivering a tactical response to control crowds and riots. The appearance of a competent, professional, well organized, and disciplined contingent of law enforcement officers will frequently cause a disorderly group to become disheartened and cease disruptive or unlawful activities in the presence of these peace officers.

**Teamwork**    The basic element of crowd control is the squad. Properly employed and effectively applied, squad formations represent one of the most practical methods of controlling crowds and riots as well as providing for peace officer safety.

Squad members working as a single unit, presenting a professional demeanor, and instant obedience to commands provides maximum impression. But squad formations are effective only when *all members operate as a team.*

Unit integrity is essential for the team. Each peace officer must maintain personal discipline. Independent actions of any one member can jeopardize the work of the team and place peace officers in danger.

*Continued on next page*

185

# Crowd Control Formations, Continued

**Team makeup**

The number of peace officers and roles within a squad can vary. Peace officers within each squad may further be broken down into teams. The following table identifies an example of the different roles and responsibilities of the peace officers within a squad.

| Role | Responsibilities |
|------|------------------|
| Squad Leader | • Receives orders from the platoon leader or the tactical commander<br>• Gives orders for assembly, formation, and movement of the squad<br>• Gives assignments to team leaders or squad members |
| Point Officer | • At the front and center of most formations<br>• Usually has the first contact with the crowd<br>• Takes a position where the squad leader directs<br>• Other squad members base their positions depending on the position of the point officer<br>• May also be the assistant squad leader |
| Team Leaders | • Receive orders from the squad leader<br>• Frequently in charge of and in possession of special weapons such as chemical agents or less than lethal weapons |
| Squad Members | • The remainder of the squad<br>• Receive orders from their team leader or the squad leader<br>• May be assigned to carry and utilize special weapons and/or chemical agents<br>• Support team members |

*Continued on next page*

186

# Crowd Control Formations, Continued

**Formation selection**

Selection of an appropriate formation to use in specific situations is typically made by the peace officer in charge. The nature of the crowd may be such that peace officers may have to assume responsibility for team response.

In selecting the appropriate formation, consideration must be given to such factors as, but not limited to, the:

- size, demeanor, attitude, and intent of the crowd,
- surrounding terrain,
- availability of dispersal routes,
- objectives of the department,
- number of peace officers,
- training and experience of the peace officers, and
- available equipment and resources.

*Continued on next page*

187

# Crowd Control Formations, Continued

**Types of
formations**

There are a number of basic squad formations that have been successfully used
for years in every type of crowd or riot situation. Squad formations must be
flexible so that they can be modified to meet the existing situations.

The following table identifies some of the most common squad formations
used by law enforcement agencies.

| Formation | Description/Use | Example |
|---|---|---|
| Column | • Peace officers line up one behind the other<br>• Used to:<br>  - move a squad from one location to another,<br>  - divide a crowd, or<br>  - lead into other formations<br>• Maintains discipline en route to the location<br>• Promotes confidence of individual squad members<br>• Easy to maintain<br>• Appearance can be intimidating to the crowd | O<br>O<br>O<br>O<br>O<br>O<br>O |

*Continued on next page*

188

# Crowd Control Formations, Continued

| Formation | Description/Use | Example |
|---|---|---|
| Skirmish Line | • Aligns peace officers on a straight line<br>• Used to:<br> - move small crowds in a specific direction<br> - contain a group or maintain set limits, or<br> - block access to restricted areas (e.g., doorways, streets, etc.)<br>• Easy to form (especially from a column)<br>• Can be supplemented with other columns | OOOOOOOOOOO |
| Arrest/Rescue | • Peace officers form a circle around a designated group or individual facing outward<br>• Used to:<br> - protect peace officers<br> - rescue a subject, or<br> - affect an arrest or multiple arrests<br>• Dynamic perimeter within a hostile environment<br>• Can be intimidating<br>• Lack of mobility (some peace officers moving backward)<br>• Difficult to transition smoothly with crowd | OOO<br>O    O<br>O  X  O<br>O    O<br>OOO |

**Types of formations** (continued)

*Continued on next page*

# Crowd Control Formations, Continued

| | Formation | Description/Use | Example |
|---|---|---|---|
| **Types of formations** (continued) | Diagonal (Echelons) | • A slant line of peace officers<br>• Used to:<br>  - clear a crowd from the side of a building, enclosure, or wall<br>  - change the direction of a crowd<br>  - force groups into side streets or open areas<br>• Point officer has most contact with the crowd<br>• May require backup to prevent crowd members from getting behind officers | |
| | Wedge/Vee | • V-shaped formation with the point officers at the front and remaining peace officers forming at 45-degree angles on both flanks<br>• Used to:<br>  - break crowd into segments,<br>  - clear intersections, or<br>  - penetrate a crowd to execute an arrest/rescue formation<br>• Difficult to maintain<br>• Difficult to move laterally | |

NOTE:     There are numerous variations of these common formations along with additional formations that may be used by different law enforcement agencies.

*Continued on next page*

190

# Chapter Synopsis

| | |
|---|---|
| **Learning need** | Peace officers need to understand the tactical principles involved in the management and control of crowds in order to ensure the protection of the First Amendment rights of the crowd, and the safety of the entire community. |
| **Phases of riot development [24.05.5]** | There are several phases that crowds of individuals must go through before becoming a riot. |
| **Crowd management [24.05.5]** | Ensure that the event remains lawful while providing for the protection of the First Amendment rights of persons involved. |
| **Crowd control [24.05.11]** | Control the situation and prevent violations of the law when there is a potential or imminent threat by violence without infringing on the First Amendment rights of persons involved. |
| **Riot control objectives and principles [24.05.12]** | The law enforcement objectives and management principles of riot control are the protection of lives and property, and the restoration of order. |
| **Riot control formations [24.05.13]** | Selection of an appropriate formation to use in specific situations is typically made by the officer in charge. The nature of the crowd may be such that peace officers may have to assume responsibility for team response. |

# Workbook Learning Activities

**Introduction**    To help you review and apply the material covered in this chapter, a selection of learning activities has been included. No answers are provided.  However, by referring to the appropriate text, you should be able to prepare a response.

**Activity questions**

1.  In your own words, describe how the tactics used to manage a peaceful crowd at a community celebration differ from those that may be used to control a rowdy, boisterous crowd protesting deforestation outside the headquarters of a large corporation involved in lumbering. What tactics would be the same?

2.  Describe how the demeanor and personal conduct of an individual peace officer vary when working on the line in a crowd management situation to working on the line at a crowd control situation with a high potential for violence.

*Continued on next page*

192