HYDEE FELDSTEIN SOTO, City Attorney (SBN 106866)
DENISE C. MILLS, Chief Deputy City Attorney (SBN 191992)
KATHLEEN KENEALY, Chief Assistant City Attorney (SBN 212289)
**CORY M. BRENTE, Senior Assistant City Attorney (SBN 115453)**
200 North Main Street, 6th Floor, City Hall East
Los Angeles, CA 90012
Phone No.: (213) 978-7021 / Fax No.: (213) 978-8785
Email: cory.brente@lacity.org

Attorneys for Defendant CITY OF LOS ANGELES

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES PRESS CLUB, STATUS COUP, <br><br> Plaintiffs, <br> vs. <br><br> CITY OF LOS ANGELES, a municipal entity, JIM MCDONNELL, LAPD CHIEF, sued in his official capacity; <br><br> Defendants. | **CASE NO. 25-CV-05423 HDV-E** <br> Hon. Hernan D. Vera, Crtrm. 5B <br> Magistrate Judge Charles F. Eick, Crtrm. 750 <br><br> **DEFENDANT CITY OF LOS ANGELES' OPPOSITION TO PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION** |

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

1

Defendant CITY OF LOS ANGELES hereby submits the following Memorandum of Points and Authorities in Opposition to Plaintiffs' Application For Temporary Restraining Order and Order To Show Cause Re Preliminary Injunction.

Date: July 8, 2025

Respectfully submitted,

HYDEE FELDSTEIN SOTO, City Attorney
DENISE C. MILLS, Chief Deputy City Attorney
KATHLEEN KENEALY, Chief Asst City Attorney

By: /s/ *Cory M. Brente*

**CORY M. BRENTE**, Senior Assistant City Attorney
Attorneys for Defendant City of Los Angeles

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs filed this lawsuit on July 3, 2025, almost one month after the anti-immigration protests began on June 6, 2025 and continued through June 14, 2025, the day of the "No Kings" protest. *See* Dkt. #17. Plaintiffs claim that during these eight days of protests the Los Angeles Police Department ("LAPD"), who they claim has a lengthy history of violating the rights of journalists, allegedly continued to violate the federal and state law rights of journalists during these days of protests. *See id*. Plaintiffs claim that this alleged historical conduct by the LAPD is now grounds for an emergency temporary restraining order ("TRO") and preliminary injunction against the LAPD in order to gain its compliance with federal and state law. *See id.* Plaintiffs refer to numerous past instances of alleged misconduct by the LAPD but notably have failed to provide any evidence of any imminent misconduct towards journalists or any basis supporting the need for a TRO or preliminary injunction. *See id.*

Plaintiffs have not satisfied the criteria on which to impose a TRO or preliminary injunction against the LAPD much less the grounds for such an order on *ex parte* basis. Plaintiffs will likely not succeed on the merits. Plaintiffs also have not and cannot satisfy the "irreparable harm" element, which by nature is preventative not compensatory for alleged past wrongdoing. Speculative behavior also is not sufficient grounds to warrant issuing a TRO or preliminary injunction. Instructing someone to follow the law also is not a sufficient basis for a TRO or preliminary injunction.

Defendant agrees that the issues raised in Plaintiffs' complaint and *ex parte* application are important public safety issues, but they should not be decided haphazardly without a full and fair factual record on which to make such a decision. Local Rule 65-1 also precludes issuing a rush order for a preliminary injunction. Plaintiffs' own proposed order demonstrates the breadth and scope of the relief Plaintiffs seek, which is not appropriate on an *ex parte* basis. Because there is no pending emergency warranting *ex*

*parte* relief, and because of the important public safety issues at stake, the Court should not decide this matter on an expedited basis without a fully developed factual record.

As explained below, the relief Plaintiffs seek is unwarranted and overbroad, and the Court should deny their *ex parte* application for a TRO and preliminary injunction.

## II. LEGAL STANDARD FOR *EX PARTE* APPLICATIONS

"Unlike regularly noticed motions, applications for *ex parte* relief are inherently unfair and pose a threat to the administration of justice because the parties' opportunities to prepare are grossly unbalanced. The opposing party can rarely make its best presentation on the short notice accompanying an ex parte application. Hence, to justify use of *ex parte* procedures, a party seeking ex parte relief must show: (1) the moving party's case will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures; and (2) the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect. Failure to file a properly noticed motion constitutes sufficient grounds for denying an *ex parte* application." *Terry v. State Farm Gen. Ins. Co.*, 2017 U.S. Dist. LEXIS 228187, at *3-4 (C.D. Cal. July 27, 2017)(citations omitted).

## III. LEGAL STANDARD FOR TEMPORARY RESTRAINING ORDERS

Temporary restraining orders are drastic remedies and may only be granted if the party seeking them carries its burden of persuasion "by a clear showing." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *see Frontline Med. Assocs. v. Coventry Healthcare Workers Comp., Inc.*, 620 F. Supp. 2d. 1109, 1110 (C.D. Cal. 2009) (TRO and preliminary injunction standards are the same). That showing must be made as to each of four elements: (1) the moving party must be likely to succeed on the merits of its claim; (2) it must be likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities must tip in its favor; and (4) an injunction must be in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

The propriety of a TRO hinges on a significant threat of irreparable injury that must be imminent in nature. *Caribbean Marine Serv. Co. v. Baldridge*, 844 F.2d 668, 674 (9th

Cir. 1988). In addition, an adequate remedy at law, such as damages, must not exist. *Terrace v. Thompson*, 263 U.S. 197, 214 (1923).

### IV. PLAINTIFFS'S EX PARTE SHOULD BE DENIED AS THERE IS NO EMERGENCY BASIS FOR THE RELIEF SOUGHTS.

Plaintiffs claim that there is an emergency basis allowing for this ex parte application and that the issues raised cannot be decided on a regularly noticed motion. However, the opportunities for legitimate *ex parte* applications, even when timely sought, are extremely limited. *In re Intermagnetics America, Inc*., 101 B.R. 191, 193 (C.D. Cal. 1989). This is because *ex parte* applications "are inherently unfair, and they pose a threat to the administration of justice. They debilitate the adversary system. Though the adversary does have a chance to be heard, the parties' opportunities to prepare are grossly unbalanced. Often, the moving party's papers reflect days, even weeks, of investigation and preparation; the opposing party has perhaps a day or two." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995). *Ex parte* relief is not available to compensate for an alleged past wrong.

Plaintiffs refer to numerous past instances of alleged misconduct by the LAPD but notably have failed to provide any evidence of any imminent misconduct towards journalists or any basis supporting the need for ex parte relief or a TRO. Indeed, Plaintiffs waited almost one month after the first instance of alleged misconduct occurred at the ongoing June protests, which have since ended, to bring this issue to the Court's attention but apparently cannot wait to have their grievances heard via a regularly noticed motion. This is nothing short of gamesmanship. *Mission Power Eng'g Co.,* 883 F. Supp. at 490. Even where plaintiffs engage in legal behavior, however, injunctive relief is unavailable absent a showing of a likelihood of substantial and immediate irreparable injury, which are clearly absent here. *See Hodgers-Durgin v. De La Vina*, 199 F.3d 1037 (9th Cir.1999).

Plaintiffs' own proposed order demonstrates the breadth and scope of the relief Plaintiffs seek, which is not appropriate on an *ex parte* basis. For example, Plaintiffs want the Court to instruct the LAPD to follow the law and to refrain from enforcing the law

during or protecting themselves during protest situations. Plaintiffs also want the Court to issue an order that the LAPD must re-issue their policies every six months without any rational basis for such a request.

There is no irreparable harm or prejudice to Plaintiffs to have this issue decided on a regularly noticed motion. The City further requests that no adverse order issue without giving it an opportunity to present a defense with an adequately developed record that gives the Court the information it needs to make a thoughtful and well-informed decision on the merits. *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1259 (9th Cir. 2010).

Thus, there is no good cause to consider the relief sought by Plaintiffs on a shortened *ex parte* basis and for this reason, Plaintiffs' request should be denied.

## V.   PLAINTIFFS ARE NOT LIKELY TO SUCCEED ON THE MERITS AND THE REQUEST FOR A TRO SHOULD BE DENIED.

Plaintiffs are not likely to succeed on the merits. Indeed, the relief Plaintiffs seek would not only impact the parties here, but it would impact the safety and security of the public at large when a peaceful protest turns, sometimes quickly, into large scale violence, arson and looting, and assault towards the officers. It is not appropriate to deprive law enforcement of the tools it needs to protect and preserve the rights of those who wish to lawfully exercise their First Amendment rights, as well as the safety and security of the public at large, and also the officers assigned to monitor the protests.

In circumstances such as those at issue here, the City may well have "a legitimate interest in quickly dispersing and removing lawbreakers with the least risk of injury to police and others." *Forrester v. City of San Diego*, 25 F.3d 804, 807 (9th Cir. 1994). In that case, the "arrestees were part of a group of more than 100 protesters operating in an organized and concerted effort to invade private property, obstruct business, and hinder law enforcement. Although many of [those] crimes were misdemeanors, the city's interest in preventing their widespread occurrence was significant: 'The wholesale commission of common state-law crimes creates dangers that are far from ordinary. Even in the context of political protest, persistent, organized, premeditated lawlessness menaces in a unique

way the capacity of a State to maintain order and preserve the rights of its citizens.'" *Id.* (citing *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 287 (1993) (Kennedy, J. concurring).

While certain individual Plaintiffs may be entitled to damages, that does not mean they would be entitled to any permanent equitable remedy, let alone an extraordinary TRO, especially given the overbreadth of those equitable demands as discussed, below, in addressing the hardships to the City and the public interest. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

## VI. PLAINTIFFS'S HAVE NOT AND CANNOT DEMONSTRATE IRREPARABLE HARM AND THE REQUEST FOR A TRO SHOULD BE DENIED.

Plaintiffs have not satisfied the criteria on which to impose a TRO against the LAPD. Plaintiffs must "demonstrate that there exists a significant threat of irreparable injury." *Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1376 (9th Cir. 1985). Plaintiffs have not and cannot satisfy the "irreparable harm" element, which by nature is preventative not compensatory for alleged past wrongdoing. Speculative behavior also is not sufficient grounds to warrant issuing a TRO. Instructing someone to follow the law also is not a sufficient basis on which to issue a TRO. Plaintiffs' application rests on past events and provides no evidence of any immediate future irreparable harm if a TRO is not issued. Indeed, the delay in bringing this matter to the Court's attention demonstrates that there is no irreparable harm and that this matter should be fully and fairly litigated before the requested relief, if any at all, is issued. *See Oakland v. Tribune, Inc. v. Chronicle Publishing Co.*, 762 F.3d 1374, 1377 (9th Cir. 1985) ["Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm."]; *Lydo Enterprises, Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) ["A delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of the relief."]. Delays as short as one to three weeks weigh against granting extraordinary injunctive relief. *See, e.g.*, *TDBBS LLC v. Ethical Products, Inc.*, 2019 U.S. Dist. LEXIS

32207, *11 (D. Ariz. 2019) [court denied TRO request without prejudice to plaintiffs' request for preliminary injunction because plaintiffs waited three weeks after the allegedly offending conduct occurred to file its motion]; *Occupy Sacramento v. City of Sacramento*, 2011 U.S. Dist. LEXIS 128218, at *11-12 (E.D. Cal. 2011) [protesters' 25-day delay in seeking injunctive relief to enjoin police from enforcing a local ordinance and arresting people for remaining in city parks after closure hours for protests "contradicts Plaintiffs' claims of irreparable injury if the TRO does not issue"]; *United States v. Gaylor*, 2009 U.S. Dist. LEXIS 135825, at *5 (C.D. Cal. 2009) ["The fact that Plaintiff waited over a week after filing its complaint to seek a temporary restraining order strongly suggests" that no TRO is necessary to preserve the status quo or that plaintiff will suffer irreparable harm as a result of defendant's conduct.].

In *Hodgers-Durgin*, plaintiffs sought an injunction to prevent Border Patrol agents from stopping motorists driving near the border because the driver looked Mexican or Hispanic. *Id*. at 1039-40. Plaintiffs regularly engaged in legal behavior (i.e. driving near the border) that they alleged resulted in illegal conduct by defendants. However, despite the regularity of their legal conduct, plaintiffs alleged they had only been illegally stopped once in the past ten years. In significant part, the court noted that the Supreme Court has repeatedly cautioned that, absent a threat of immediate and irreparable harm, "federal courts should not enjoin a state to conduct its business in a particular way." *Id.* at 1042 (citations omitted). Accordingly, the court concluded that plaintiffs failed to show a likelihood of substantial and immediate irreparable injury sufficient to warrant ongoing judicial supervision of an agency ordinarily overseen by the executive branch. *Id*. at 1044.

Plaintiffs must establish that "extreme or very serious damage will result" absent a TRO, and, importantly, that their injuries are not "capable of compensation in damages." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (quotation marks omitted). Failure to establish irreparable injury, by itself, is grounds for the Court to deny Plaintiffs' application *See, e.g., Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) ["[B]ecause a

showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered."] (quotation marks omitted); *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) ["A showing of irreparable injury is the sine qua non of injunctive relief…. Significantly, even if Plaintiffs establish a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." (citations and quotation marks omitted)].

"Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction. A plaintiff must do more than merely allege imminent harm to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief." *Caribbean Marine Services Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (emph. in original; citations omitted). That a plaintiff has allegedly been injured in the past by the police is not a sufficient reason to impose injunctive relief because the claim that the police will purportedly violate plaintiffs' constitutional rights or fail to follow the law in the future is speculative. *Lyons*, 461 U.S. at 105-106; *Activation Products (CAN), Inc. v. Wecker*, 2017 U.S. Dist. LEXIS 4196, *3 (D. Ore. 2017) [court denied motion for temporary restraining order where "there is no allegation that [defendant's] conduct has increased in severity or frequency such that *immediate* relief is necessary."]; *Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*, 753 F.3d 862, 868 (9th Cir. 2014) ["But it is not the presence or absence of a past injury that determines Article III standing to seek injunctive relief; it is the imminent prospect of future injury."].

The Minnesota District Court's recent holding in *Goyette v. City of Minneapolis*, 2020 U.S. Dist. LEXIS 100761 (D. Minn. 2020), is instructive. In that case, arising from police conduct at protests after George Floyd's death, the district court denied a journalist's request for a temporary restraining order seeking to enjoin police from using less-lethal munitions during protests against journalists unless they "present an imminent

threat of violence or bodily harm to persons or damage to property." *Id.* at *8. The same day the journalist filed his complaint, June 2, 2020, he moved for a temporary restraining order. In support of his motion, the *Goyette* journalist argued, just as Plaintiffs do in the instant case, that he and other members of the media "have a reasonable fear that Defendants will continue to carry out their unconstitutional customs or policies of deploying less-lethal projectiles and chemical irritants without constitutionally adequate warning." *Goyette*, 2020 U.S. Dist. LEXIS 100761 at *6. Opposing the motion, the city submitted evidence that since May 31, 2020 (three days before plaintiff filed his complaint and TRO request), the police had not use chemical irritants or less-lethal munitions during the continuing protests. *Id.* at *7.

The Minnesota District Court denied the journalist's request for a temporary restraining order because there was no showing "the conduct he seeks to enjoin—occurring over a five-day period of unprecedented civil unrest—has occurred since May 31, 2020, or" that the "conduct is likely to recur imminently….As a result [plaintiff] has not established that harm is certain and of such imminence that there is a clear and present need for equitable relief." *Goyette*, 2020 U.S. Dist. LEXIS 100761, *10-11; *see also Arthur J. Gallagher & Co. v. Edgewood Partners Ins. Ctr.*, 2008 U.S. Dist. LEXIS 8924, at *7 n.4 (N.D. Cal. 2008)(finding one incident is insufficient to demonstrate a threat of present or future harm; citing *ACT-UP v. Walp*, 755 F. Supp. 1281, 1285-86 (M.D. Pa. 1991) (denying preliminary injunction based on isolated act of a state police officer blocking protestors from the state capital building when afterwards, the plaintiffs "easily strolled into the Capitol" and "held a press conference at the foot of the grand staircase . . . without molestation.").

Finally, because the purpose of a temporary restraining order is to preserve the status quo, the court should deny Plaintiffs' request. Even with a preliminary injunction, the usual purpose "is to preserve the status quo ante litem pending a determination of the action on the merits. The hearing is not to be transformed into a trial of the merits of the action upon affidavits, and it is not usually proper to grant the moving party the full relief

to which he might be entitled if successful at the conclusion of a trial. This is particularly true where the relief afforded, rather than preserving the status quo, completely changes it." *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 808 (9th Cir. 1963).

## VII. A PRELIMINARY INJUNCTION ALSO SHOULD NOT BE ISSUED ON THIS PARTIAL RECORD AND ON SUCH SHORT NOTICE.

The Court also should certainly deny a preliminary injunction. A preliminary injunction of extended duration can only follow notice and opportunity for a meaningful hearing. Fed. R. Civ. P. 65(a)(1); Local Civil Rule 65-1. The notice requirement, which assures due process, "implies a hearing in which the defendant is given a fair opportunity to oppose the application and to prepare for such opposition." *Granny Goose Foods v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 432 n.7, 94 S. Ct. 1113, 1121 (1974); *FTC v. Enforma Nat. Prods.*, 362 F.3d 1204, 1217 (9th Cir. 2004) [reversing an injunction when the district court did not provide adequate notice that the "proceeding would actually constitute a hearing on the preliminary injunction"]. Some courts require, at a minimum, the notice required under Rule 6(d), presently 14 days. *Harris County v. Carmax Auto Superstores Inc.*, 177 F.3d 306, 325 (5th Cir. 1999); see Fed. R. Civ. P. 6(d); see also Local Civil Rule 6-1 (motions typically require 28 days' notice). Certainly, when a party is not given sufficient time to prepare a full response, and especially when issues are complex and the record is large, the court should not issue a preliminary injunction. *Lozano v. City of Hazleton*, 459 F. Supp. 2d 332, 334 n.1 (M.D. Pa. 2006).

That is the case here, where despite its best efforts, there was no way the City could meaningfully address the innumerable fact contentions contained in Plaintiffs' *ex parte* application and other exhibits in less than five days, which includes the Fourth of July holiday and a weekend.

To protect against rushing into preliminary injunctions, this Court's Local Rule 65-1 contemplates that these injunctions will only issue after TRO proceedings and only after an Order to Show Cause. *See also* Rutter Civil Proc. Before Trial, ¶¶ 13:124, 13:146. Thus, no preliminary injunction may issue under the Local Rules.

Given the factual disputes, delay and voluminous materials, discovery is warranted here, prior to granting a preliminary injunction. In *Valenzuela v. Ducey*, 2017 U.S. Dist. LEXIS 10993, at *19-20 (D. Ariz. 2017), the Court found the current record insufficient to make a fair determination of whether a preliminary injunction was warranted. Because the plaintiffs sought a preliminary injunction granting class-wide relief, the Court properly denied plaintiffs' motion for a preliminary injunction and directed the parties to conduct discovery before filing renewed motions for class certification and a preliminary injunction. The Court should follow a similar process here.

## VIII.  CONCLUSION

Based on the foregoing, Defendant City respectfully requests that the Court deny Plaintiffs' ex parte application and request for a temporary restraining order and preliminary injunction.

Date: July 8, 2025

Respectfully submitted,

HYDEE FELDSTEIN SOTO, City Attorney
DENISE C. MILLS, Chief Deputy City Attorney
KATHLEEN KENEALY, Chief Asst City Attorney

By:  /s/ *Cory M. Brente*
**CORY M. BRENTE**, Senior Assistant City Attorney
Attorneys for Defendant City of Los Angeles