Carol A Sobel SBN 84483
Weston Rowland SBN 327599
Law Office of Carol A. Sobel
2632 Wilshire Boulevard, #552
Santa Monica, CA 90403
t. (310) 393-3055
e. carolsobellaw@gmail.com
e. rowland.weston@gmail.com

David Loy SBN 229235
Aaron R. Field SBN 310648
First Amendment Coalition
534 4th St., Suite B
San Rafael, CA 94901
t. (415) 460-5060
e. dloy@firstamendmentcoalition.org
e. afield@firstamendmentcoalition.org

Peter Bibring, SBN 223981
Law Office of Peter Bibring
2140 W. Sunset Blvd. #203
Los Angeles, CA 90026
t. (213) 471-2022
e. peter@bibringlaw.com

Paul Hoffman, SBN 71244
Michael Seplow, SBN 150183
John Washington, SBN 315991
Schonbrun, Seplow, Harris, Hoffman & Zeldes LLP
200 Pier Avenue #226
Hermosa Beach, California 90254
t.(310) 396-0731
e. hoffpaul@aol.com
e. mseplow@sshhzlaw.com
e. jwashington@sshhlaw.com

Susan E Seager SBN 204824
Law Office of Susan Seager
128 N. Fair Oaks Avenue
Pasadena, CA 91103
t. (310) 890-8991
e. susanseager1999@gmail.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES PRESS CLUB, STATUS COUP,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF LOS ANGELES, a municipal entity, JIM McDONNELL, LAPD CHIEF, sued in his official capacity;<br><br>Defendants. | Case No. 25-cv-05423 HDV-E<br><br>**PROPOSED ORDER RE: PLAINTIFFS' EX PARTE APPLICATION FOR CONTEMPT; SANCTIONS**<br><br>Hon. Hernán D. Vera<br><br>Date: N/A<br>Time: 10:00 A.M..<br>Ctrm: 5B Hon. Hernán Vera |

i

PLAINTIFFS'PROPOSED ORDER RE: EX PARTE APPLICATION FOR CONTEMPT; SANCTIONS

I. **BACKGROUND**

On July 10, 2025, the Court granted Plaintiffs application for a Temporary Restraining Order, Dkt No. 44 ("TRO Order"), based on its finding that repeatedly and over multiple days of protests in June 2025, LAPD violated the First Amendment by ordering journalist to leave protest areas (in violation of California Penal Code § 409.7), detaining and arresting journalists, and subjecting journalists who persisted in documents the protests to "an onslaught of projectiles and other shows of physical force," including a number of occasions where LAPD apparently targeted individuals who were clearly identifiable as members of the press or fired indiscriminately at crowds that included members of the press.

The TRO Order expressly restricted Defendants' conduct in order to ensure compliance with constitutional protections for journalists present at and documenting protest activity on the streets and sidewalks of the Defendant City:

Specifically, the July 10 order applied to any "duly authorized" journalist and required that:

2. If LAPD or another law enforcement agency establishes a police line or rolling closure at a demonstration, march, protest, or rally where individuals are engaged in activity that is protected pursuant to the First Amendment to the United States Constitution, LAPD is enjoined from:
   a) Prohibiting a journalist from entering or remaining in the closed areas.
   b) Intentionally assaulting, interfering with, or obstructing any journalist who is gathering, receiving, or processing information for communication to the public (including by restricting journalists to areas from which they do not have sufficient opportunity to observe and report on protests, including the interaction between police and protestors).
   c) Citing, detaining, or arresting a journalist who is in a closed area for failure to disperse, curfew violation, or obstruction of a law enforcement officer for gathering, receiving, or processing information. If LAPD detains or arrest a

person who claims to be a journalist, that person shall be permitted to promptly contact a supervisory officer of the rank of captain or above for purposes of challenging that detention, unless circumstances make it impossible to do so.

3. LAPD is further enjoined from using less-lethal munitions ("LLMs") and other crowd control weapons (including kinetic impact projectiles ("KIPs"), chemical irritants, and flash-bangs) against journalists who are not posing a threat of imminent harm to an officer or another person.

The Court also ordered LAPD management to summarize the Court's Order and distribute it to all LAPD officers.

On August 8, 2025, protestors rallied at the Home Depot in Westlake, just outside of Downtown Los Angeles, and, over the course of approximately two hours, peacefully marched from the Home Depot to the federal Metropolitan Detention Center ("MDC"), until about 100 people were assembled on Alameda Street outside the garage entrance to the MDC. Beckner-Carmitchel Dec. at ¶¶ 4-6; Romano Dec. ¶ 4.

Shortly before 9 p.m., LAPD officers formed a line across Alameda Street. Romano Dec. ¶ 6 and Exhibit 100. Without warning and without prior any order to disperse, the officers started shouting "move back" as they quickly advanced, shoving protesters and journalists alike and striking them with batons. Romano Dec. ¶¶ 7-10 and Exhibit 101; Beckner-Carmitchel Dec. ¶ 7; Berg Dec. ¶¶ 3-5 and Exhibits 82, 84.

Extensive video evidence submitted by Plaintiffs documents LAPD's repeated and egregious violations over the next two hours. See, in approximate chronological order, Exhibits 102, 100, 101, 82, 84, 83, 88, 89, 90 106, 94, 95, 105, and 96.

LAPD officers first advanced on a crowd that included journalists plainly identified as such with press identification openly displayed — and in several instances held aloft to show advancing officers. Despite the express provisions of the TRO Order and California law, and their obligations under the First Amendment, LAPD officers ordered journalists who were covering to move or leave the area (despite having not given clear orders to move or disperse prior to using force). LAPD officers repeatedly used force — specifically shoving and striking with hands and batons

— against journalists who posed no threat of harm and were simply covering police action and not moving, including striking photojournalist Nick Stern in the face, leaving him bleeding from a gash on his chin, and striking journalist Tina-Desiree Berg and opening a large wound on her finger. After pushing the group up Alameda away from the entrance to MDC, at which point many of the protesters left, LAPD officers then pushed the remaining protesters and journalists down a side street where they kettled them, told them to face a wall, placed plastic flex-cuffs on them including journalists with openly displayed press identification. See Exh. 107.

Throughout this encounter, members of the press asserted their right to remain, reminded officers of the law and the TRO Order, and asked officers to speak with a public information officer ("PIO") or commanding officer. Officers repeatedly ignored them or told them to wait (*see, e.g.*, Exh. 106 at 1:25 through 2:20 (officer repeats "not right now")), Exh. 95 at 1:45).

## II.  THE LEGAL STANDARD ON A MOTION FOR CONTEMPT

Courts have inherent power to enforce their orders through civil contempt." *See Spallone v. United States*, 493 U.S. 265, 276 (1990) (citation omitted). "A district court has wide latitude in determining whether there has been a contemptuous defiance of one of its orders." *Sloane v. Karma Enterprises, Inc.*, Case No. CV 08-5094 MMM (VBKx), 2008 WL 11343430, at *2 (C.D. Cal. Nov. 25, 2008) (citing *Stone v. City of San Francisco*, 968 F.2d 850, 856 (9th Cir. 1992)), cert. denied, 506 U.S. 1081 (1993).

In a motion regarding contempt, "the moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply." *Federal Trade Comm'n v. Enforma Natural Prods., Inc.*, 362 F.3d 1204, 1211 (9th Cir. 2004) (citation and quotation marks omitted) "The defendant's conduct 'need not be willful' to violate a consent judgment.'" *Robinson v. Delicious Vinyl Records Inc.*, Case No. 2:13-cv-04111-CAS(PLAx), 2014 WL 1715520, at *1 (C.D. Cal. Apr. 30 2014) (quoting *In re Dual-Deck Video Cassette Recorder Antitrust Litigation*, 10 F.3d 693, 695 (9th Cir. 1993); *see also McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949) ("The absence of wilfulness does not relieve from civil contempt."). "[T]here is 'no good faith exception to the requirement of obedience.'" *Robinson*,

2014 WL 1715520, at *1 (internal citation omitted).

### III. PLAINTIFFS' EVIDENCE ESTABLISHES DEFENDANTS VIOLATED THE INJUNCTION

Plaintiffs submitted videos, photographs and declarations regarding LAPD using force against and detaining multiple individual members of the press while policing a peaceful protest on August 8, 2025. These violations occurred even after the Court directed LAPD to distribute a summary of the TRO Order to all members of the Department, which LAPD did, incorporating the definitions of "journalist" codified by the California Legislature in California Penal Code §409.7. And these violations occurred even as Plaintiffs identified themselves as press and made repeated attempts to obtain a supervisor or Public Information Officer ("PIO") representative on the scene and to get LAPD officers who answered the phone at the Department's PIO office to address the unfolding situation.

Based on the evidence submitted in support of the motion, the Court finds clear and convincing evidence that Defendants violated this Court's injunction on numerous occasions on August 8, 2025. Plaintiffs need not show more to support a finding of contempt. In particular, they need not show that these violations were willful for the Court to find Defendants in civil contempt. *In Re: Crystal Palace Gambling Hall Inc.*, 817 F.2d 1361, 1365 (9th Cir. 1993); *see also McComb*, 336 U.S. at 191 ("it matters not with what intent the defendant did the prohibited act"). A finding of contempt is therefore appropriate here.

### IV. THE CITY FAILED TO TAKE REASONABLE STEPS TO PREVENT VIOLATIONS

Based on the evidence to date, it appears that the City did not take all reasonable steps to prevent violations of this Court's TRO Order. While "substantial compliance" is a defense to contempt, it rests not on the extent to which the City has complied with the Court's TRO Order, but instead, on whether the defendant took "all reasonable steps" to comply with the order. "If a violating party has taken all reasonable steps to comply with the court order, technical or inadvertent violations of the order will not support a finding of civil contempt." *General Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1379 (9th Cir. 1986) (internal quotations removed,

emphasis added). See also *Kelly v. Wengler*, 822 F.3d 1085, 1096 (9th Cir. 2016)("A contemnor in violation of a court order may avoid a finding of civil contempt only by showing it took all reasonable steps to comply with the order" (emphasis in original)).

The violations in this instance are by no measure "technical or inadvertent." These violations all occurred after the Court specifically ordered LAPD to disseminate the Courts order to all sworn officers. Yet, despite ample notice, Defendants' actions evince a blatant disregard for the First Amendment and an unwillingness or an inability or both on the part of the City to take steps necessary to ensure compliance with this Court's Injunction. Sean Beckner-Carmitchel and Mel Buer were detained despite visible press passes. Before being detained, Sean Beckner-Carmitchel asked LAPD Officers standing in line for a supervisor or public information officer multiple times, but his request was repeatedly denied. See e.g. Exhibit 090 at 3:02 available at https://drive.google.com/file/d/1is3kdg6eLDSp0-GWzw-aooLxEP531_SZ/view?usp=drive_link ; Exhibit 106 at 0:29-0:44 & 1:10-2:14 available at https://drive.google.com/file/d/1VC_YjLaSWjnh6c0gnuWs-kFpGPO570yc/view?usp=sharing. The City cannot claim substantial compliance or that reasonable steps were taken when, aside from the provision requiring notice to sworn officers, it appears the City has violated each section of the Court's July 10th order.

## V. PLAINTIFFS' REQUESTED SANCTIONS FOR CONTEMPT

In their application Plaintiffs ask this Court, based on a finding of contempt, to do the following: (1) modify the TRO order to clarify that it prohibits use of batons and other forms of force against journalists at protests who pose no threat; (2) order Defendants to show cause why additional sanctions should not issue, including but not limited to appointment of a Special Master and payment of civil penalties, and (3) order Defendants' to pay attorneys fees incurred in responding to Defendants' August 8 violations and bringing this application.

### A. Appointment of a Special Master

Federal Rules of Civil Procedure Rule 53 authorizes the courts to appoint a Special Master under "exceptional conditions." Fed Rules Civ Proc R 53(a). "Rule 53 contemplates that the master will assist the court with specific tasks and exercise necessary power." *Burlington N. R.R.*

*v. Dep't of Revenue*, 934 F.2d 1064, 1071 (9th Cir. 1991).  The "appointment of a special master is generally an interlocutory order and not appealable." *National Org. for Reform of Marijuana Laws v. Mullen*, 828 F.2d 536, 540 (9th Cir. 1987).

The Ninth Circuit has interpreted the "exceptional" standard to include cases involving complex litigation, or when there are "problems associated with compliance with the district court order." *United States v. Suquamish Indian Tribe*, 901 F.2d 772, 775 (9th Cir. 1990); *see also Hoptowit v. Ray*, 682 F.2d 1237, 1263 (9th Cir. 1982) (upholding Special Master appointment based, in part, on the need to monitor compliance with the district court's order enjoining the State from using "unnecessary physical force against prisoners" and ordered supervision of the penitentiary). *See also Stone v. City & Cty. of S.F.*, No. 91-16927, 1992 U.S. App. LEXIS 14436, at *27 n.18 (9th Cir. June 25, 1992) (approving a Special Master "to investigate, report, and recommend actions that the City could take to ensure compliance with the consent decree.")

"There are no judicial decisions requiring a final determination of constitutional violation before an 'exceptional condition' justifying reference to a master can arise under Rule 53(b)." *Nat'l Org. for Reform of Marijuana Laws*, 828 F.2d at 543. Nor is there any "circuit authority that requires a determination of intentional disregard of court orders before a special master may be appointed under Rule 53(b). *Id.* "[T]he prospect of non-compliance is an 'exceptional condition' that justifies reference to a master." *Id.* at 542. That prospect is real in this instance.

Here, both the complexity of the litigation and the obvious need to investigate and monitor Defendants' compliance support the appointment of a Special Master who could assist the Court to ensure compliance with the Orders in both this case and *BLM, et al. v. City of Los Angeles, et al.*, Case No. 2:20-cv-05027 CBM-AS.  The Special Master's findings on the reasons for violations for the Court's TRO Order could inform additional measures to achieve compliance in the future and help ensure that the LAPD's past is no longer prologue to its treatment of journalists.

### B.      Monetary Contempt Sanctions

"Courts have statutory authority to punish both civil and criminal contempt pursuant to 18 U.S.C.S. § 401." *Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 955 (9th Cir. 2014). After a finding of contempt, a court may issue sanctions for two purposes: "to

compel or coerce obedience to a court order" and "to compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance[.]" *O'Connor v. Midwest Pipe Fabrications, Inc.*, 972 F.2d 1204, 1211 (10th Cir. 1992) (citation omitted).

When determining the amount of a monetary sanction like the one requested here, the court should consider "the amount of defendant's financial resources and the consequent seriousness of the burden to that particular defendant." *United Mine Workers*, 330 U.S. at 304; see also *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1378 (9th Cir. 1986). The City of Los Angeles has a yearly operating budget of approximately $10.5 billion. For the fiscal year 2024-2025, by far the greatest liability payments were for lawsuits against the Los Angeles Police Department, topping $100,000,000. *See* Jordan Rynning, *As LA veers toward a financial crisis, $320M in liability payouts play a big role*, LAist (Mar. 14, 2025), at https://laist.com/news/politics/los-angeles-liability-payments-rise-nearing-fiscal-emergency. Although the City has declared a fiscal emergency, the budget problems are attributable in large part to liability payments for actions against the Los Angeles Police Department. *Id.*

## VI.   REASONABLE ATTORNEY FEES

"If the party bringing and prosecuting contempt proceedings prevails, that party may recover its costs and fees incurred in so doing." *Id.* (citing *Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 958 (9th Cir. 2014)). The court has broad discretion to award Plaintiffs' attorney's fees as compensatory damages. *Harcourt Brace Jovanovich Legal & Prof'l Publ'ns v. Multistate Legal Studies*, 26 F.3d 948, 953 (9th Cir. 1994). If Defendants had followed the Court's TRO Order, Plaintiffs would have no reason to bring this motion to compel obedience. Therefore, Plaintiffs also request reasonable attorney's fees to compensate Plaintiffs for the time and expenses incurred by bringing this motion. *Housing Rights Center v. Donald Sterling*, 2004 WL 3610228 at *3 (C.D. Cal. Dec 29, 2004).

The Court allows Plaintiffs to submit a request for fees following the Court's ruling on this motion, to account for the full amount of fees expended to bring this motion.

## VII.   ORDER ON CONTEMPT AND SANCTIONS

Based on the foregoing, the Court FINDS DEFENDANTS IN CONTEMPT of its TRO

Order, and ORDERS as follows:

1. The Court modifies paragraph 3 at page 13 of its TRO Order as follows:

LAPD is further enjoined from using less-lethal munitions ("LLMs") and other crowd control weapons (including kinetic impact projectiles ("KIPs"), chemical irritants, **batons,** and flash-bangs) **or other forms of force** against journalists who are not posing a threat of imminent harm to an officer or another person.

2. The Court further orders that, at any demonstration, march protest, or rally where individuals are engaged in activity that is protected pursuant to the First Amendment to the United States Constitution, where LAPD provides any police presence, LAPD shall designate a PIO liaison, who shall be present at the protest, with primary responsibility for ensuring that the LAPD complies with the TRO Order, this order, and other orders in this action, as well as the requirements of Penal Code section 409.7.  Officers on scene shall promptly connect any journalist complaining of violations with the PIO liaison.  This PIO requirement is in addition to and does not alter any of Defendants other, preexisting legal obligations regarding protests, including but not limited to the requirement in California Penal Code section 409.7(a)(3) that if a "duly authorized representative is detained by a peace officer or other law enforcement officer, that representative shall be permitted to contact a supervisory officer immediately for the purpose of challenging the detention, unless circumstances make it impossible to do so." Further, no prior approval, including but not limited to prior approval from the on-scene PIO, a supervisory officer, any other law enforcement officer, or any other agent or representative of Defendants, shall be a prerequisite for journalists' access to and protection against dispersal from closed areas.  The parties shall meet and confer about these requirements and submit a joint report to the Court within 28 days of the date of this Order outlining their agreements, or areas of disagreement, on the duties and obligations of this PIO liaison.

3. The Parties are ORDERED to meet and confer regarding the selection of a Special Master at the City's expense to conduct an independent investigation into the LAPD's violation of the TRO Order on August 8, 2025, and the scope of the Special Master's instructions

to report on the LAPD's recent conduct along with recommendations for further actions to ensure LAPD's compliance with the TRO Order, and subsequent orders in this case, and the law. The parties shall submit a joint report to the Court within 28 days of the date of this Order outlining their agreements, or areas of disagreement, on Special Master candidates, the appropriate scope and terms of a Special Master.

2. Plaintiffs shall submit a brief proposing appropriate monetary sanctions for contempt by August 29, 2025. Defendants shall submit a response brief by September 11, 2025. Plaintiffs shall submit a reply by September 18, 2025. Briefs shall follow the rules and limitations for motions pursuant to the Central District's Local Rules and this Court's standing civil order.

3. The Court sets a hearing on September 25, 2025 at 10 a.m., at which it will consider the appointment of a Special Master and appropriate monetary contempt sanctions.

4. Defendants shall pay Plaintiffs' reasonable attorneys' fees incurred in responding to the August 8 incident and filing this motion, up to and including the September 25 hearing and any further litigation of the amount of fees. Following the hearing on September 25, 2025, the parties shall meet and confer regarding the amount of attorneys' fees. If they are unable to agree, Plaintiffs may file an application setting forth their reasonable fees within 21 days of the hearing. Defendants may oppose and Plaintiffs may file a reply, consistent with the timing, rules, and limitations for motions pursuant to the Central District's Local Rules and this Court's standing civil order.

**IT IS SO ORDERED.**

DATED: _____

UNITED STATES DISTRICT JUDGE

Lodged by:
LAW OFFICE OF CAROL A. SOBEL

  /s/   Carol A. Sobel           .
Attorneys for Plaintiffs