HYDEE FELDSTEIN SOTO, City Attorney
DENISE C. MILLS, Chief Deputy City Attorney (SBN 191992)
KATHLEEN KENEALY, Chief Assistant City Attorney (SBN 212289)
CORY M. BRENTE, Senior Assistant City Attorney (SBN 115453)
GABRIEL S. DERMER, Assistant City Attorney (SBN 229424)
200 North Main Street, 6th Floor
Los Angeles, CA 90012
Phone No.: (213) 978-7558/ Fax No.: (213) 978-7011

Attorneys for Defendants CITY OF LOS ANGELES and
POLICE CHIEF JIM MCDONNELL

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES PRESS CLUB, STATUS COUP,<br><br>                    Plaintiffs,<br>     vs.<br><br>CITY OF LOS ANGELES, a municipal entity, JIM MCDONNELL, LAPD CHIEF, sued in his official capacity;<br><br>                    Defendants. | CASE NO. 25-CV-05423 HDV-E<br><br>DECLARATION OF DEPUTY CHIEF T. SCOTT HARRELSON IN RESPONSE TO OSC RE COMPLIANCE WITH THE TRO AND EXHIBITS |

## DECLARATION OF T. SCOTT HARRELSON

///

///

1

I, T. SCOTT HARRELSON, declare:

1. I am employed by the City of Los Angeles as a Deputy Chief with the Los Angeles Police Department ("LAPD"). I have been employed by LAPD since 1995. I understand that on August 18, 2025, the Court in the above-captioned matter issued an order to show cause regarding compliance with a Temporary Restraining Order ("TRO") issued by the Court in the same matter on or about July 10, 2025. I further understand that the Court ordered "Defendants to show cause in writing, no later than August 22, 2025, describing in detail all measures that the LAPD and its counsel have taken to disseminate the Court's TRO and ensure compliance with its terms." I submit this declaration in response to the Court's order to show cause. If called to testify, I could and would competently do so of my own personal knowledge.

2. I have attended advanced training on the incident command system, and I have been the Incident Commander, or have participated in a leadership role, in over 40 protests and/or demonstrations, including Dodgers and Lakers championship parades.

3. I am familiar with state laws and LAPD policies concerning crowd dispersal methods and interactions with the press during protests and demonstrations. Specifically, I understand that Penal Code section 13652 (A.B. 48) prohibits law enforcement from using "kinetic energy projectiles," which include LLMs, "to disperse any assembly, protest, or demonstration." I further understand that under Penal Code section 409.7 (S.B. 98), a "duly authorized representative" of the press "may enter closed areas" during a "demonstration, march, protest, or rally." These statutes became effective on January 1, 2022. Accordingly, in order to inform LAPD employees of such enactments, the Office of the Chief of Police disseminated a notice to all department personnel on December 14, 2021, entitled "Assembly Bill 48 – Use of Kinetic Energy Projectiles and Chemical Agents; and Senate Bill 98 – Media Access to Closed Areas – Assemblies, Protests or Demonstrations." Attached as **Exhibit A** is a true and correct copy of this notice. Exhibit A recapitulates Penal Code sections 13652 and 409.7.

4.  With respect to section 13652, Exhibit A states in pertinent part that "if kinetic energy projectiles or chemical agents are used during assemblies, protests, or demonstrations, they shall only be used to defend against a threat to life or serious bodily injury to any individual, including a peace officer, or to bring an objectively dangerous and unlawful situation safely and effectively under control."  With respect to section 409.7, Exhibit A states in pertinent part that "[a] duly authorized representative of the media shall include any member of the news service, online news service, newspaper, or radio or television station or network; and those persons may enter the closed area [at any demonstration, march, protest or rally]."  Exhibit A further states that "[o]fficers shall not intentionally assault, interfere with, or obstruct the duly authorized representative of the media who is gathering, receiving, or processing for communication to the public."  Exhibit A also states that media who are in the "closed area…shall not be cited for failure to disperse, a violation of curfew" or for violating Penal Code section 148 (willful obstruction of a peace officer) "for gathering, receiving or processing information."

5.  I am also aware that LAPD has issued training information on these matters. For example, attached hereto as **Exhibit B** is a true and correct copy of an LAPD Training Bulletin entitled "Crowd Management, Intervention, and Control – Part II Media," dated May 2025.  Exhibit B specifically instructs officers on how to comply with Penal Code section 409.7 and states the following: "Representatives of the media include anyone representing a news service, online news service, newspaper, radio, television station or network. Those persons may enter closed areas for the purpose of gathering, receiving, or processing information for communication to the public.  Closed areas include any area where officers have closed access to the public, including but not limited to the immediate areas surrounding any emergency field command post, police/skirmish line, or other rolling closure at any demonstration, march, protest, rally, or where individuals are primarily engaged in any activity that is protected by the First Amendment to the United States Constitution or Article I of the California Constitution."

The Training Bulletin notes that although "[a]uthorized members of the media are allowed behind police lines[,]…the Department may restrict media access to the command post, or crime scenes for the purpose of the preservation of evidence." The Training Bulletin further notes that "[n]othing precludes officers from enforcing other applicable laws if the member of the media is engaged in activity that is otherwise unlawful or is interfering with official law enforcement duties including, but not limited to, collecting evidence and making arrests."

6. On Friday, July 11, 2025, Carlos De La Guerra, Managing Senior Assistant City Attorney of the Public Safety General Counsel Division of the City Attorney's Office, learned about the Court's TRO and emailed me a copy and discussed it with me. I understood that in order to comply with the TRO "LAPD management" had to "summarize [the] Order and disseminate its contents to all officers responding to a protest in Los Angeles." I also understood that the TRO required LAPD to comply with Penal Code sections 13652 and 409.7. Accordingly, I sent the TRO to Sgt. Michelle Smith of the Office of Constitutional Policing and Policy, and directed her to draft a notice on behalf of the Office of the Chief of Police ("OCOP") summarizing the terms of the TRO. Sgt. Smith relied on the TRO and Exhibit A to draft the notice. In the afternoon on July 11, Sgt. Smith had completed a first draft of the notice, and sent it to Mr. De La Guerra to obtain additional feedback. I understand that, throughout July 11, Mr. De La Guerra discussed the draft notice with members of his office, who suggested and made revisions. On Saturday, July 12, Chief Jim McDonnell approved an iteration of the notice. On July 12 and on Sunday, July 13, iterations of the notice continued to be discussed and revised. On the late afternoon of Monday, July 14, I received a final version of the notice, which I understood incorporated revisions to address the concerns of the plaintiffs' attorneys. On the morning of Tuesday, July 15, I arranged for Chief McDonnell to sign the notice. I further arranged for the notice to be posted on LAPD's Local Area Network ("LAN") on July 15, which I further discuss below. Attached as **Exhibit C** is a true and correct copy

of the notice issued by the Office of Chief of Police to all department personnel on July 15, 2025.

7. Exhibit C is entitled "Temporary Restraining Order Regarding Journalists At Demonstrations and Protests." Exhibit C states that the purpose of the notice is to "inform personnel of the Temporary Restraining Order (TRO) issued on July 10, 2025, by United States District Judge Hernán Vera that prohibits targeting journalists, who are not posing a threat of imminent harm to an officer or another person, with less-lethal munitions and other crowd control weapons (including kinetic impact projectiles, chemical irritants, and flash bangs)." Exhibit C then repeats the language from the Court's TRO with respect to Penal Code section 409.7 and provides further guidance on who qualifies as a journalist. Next, under a heading that states "Reminder Regarding Use of Kinetic Energy Projectiles And Chemical Agents During Demonstrations," Exhibit C repeats the language from the Court's TRO with respect to Penal Code section 13652. This section also provides additional language from section 13652 and refers personnel to Exhibit B "for further guidance on determining media access to closed areas." Exhibit C further advises that anyone with questions should contact the Office of Constitutional Policing and Policy, which drafted the notice.

8. All notices from the Office of the Chief of Police, including Exhibit C, are posted on LAPD's Local Area Network ("LAN"), an intranet hub which is a standard and very effective way to disseminate important notices department-wide. All personnel are expected to review these notices. The LAN is the hub for all of LAPD's internal resources and communications, including the Department manual, transfers, promotional opportunities, fundraisers, retirements, and requests for days off. When Exhibit C was first posted, it appeared on the LAN's homepage, but now it is only one-click from the homepage under the publications tab. Attached as **Exhibit D** is a true and correct notice from the Office of the Chief of Police dated June 22, 2011, which provides that LAPD's

method for distributing notices is to post them on the LAN, rather than distributing paper copies of them.

     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 22nd day of August, 2025, in Ventura, California.

_____
Deputy Chief T. Scott Harrelson

6

DECLARATION OF DEPUTY CHIEF T. SCOTT HARRELSON IN RESPONSE TO OSC RE COMPLIANCE WITH THE TRO