HYDEE FELDSTEIN SOTO, City Attorney
DENISE C. MILLS, Chief Deputy City Attorney (SBN 191992)
KATHLEEN KENEALY, Chief Assistant City Attorney (SBN 212289)
CORY M. BRENTE, Senior Assistant City Attorney (SBN 115453)
GABRIEL S. DERMER, Assistant City Attorney (SBN 229424)
200 North Main Street, 6th Floor
Los Angeles, CA 90012
Phone No.: (213) 978-7558/ Fax No.: (213) 978-7011

Attorneys for Defendants CITY OF LOS ANGELES and
POLICE CHIEF JIM MCDONNELL

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES PRESS CLUB, STATUS COUP, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF LOS ANGELES, a municipal entity, JIM MCDONNELL, LAPD CHIEF, sued in his official capacity; <br><br> Defendants. | CASE NO. 25-CV-05423 HDV-E <br><br> DECLARATION OF CARLOS DE LA GUERRA IN RESPONSE TO OSC RE COMPLIANCE WITH THE TRO |

1

## DECLARATION OF CARLOS DE LA GUERRA

I, Carlos De La Guerra, declare as follows:

1. I am employed by the City of Los Angeles ("City") as a Managing Senior Assistant City Attorney with the Los Angeles City Attorney's Office (the "Office"). I have personal knowledge of all the facts set forth herein and if called upon to testify, I would do so competently. As to those matters of which I am informed and believe, I believe them to be true and accurate.

2. I serve in the Public Safety General Counsel Division ("PSGEN") of the Office's Municipal Branch. My duties involve providing legal advice and counsel to the City's public safety-related departments and legislative bodies, including the Los Angeles Police Department ("LAPD" or "Police Department") and the Board of Police Commissioners.

3. This declaration is submitted in response to the Court's August 18, 2025 Order to Show Cause directing the City to describe in writing "all the measures that the LAPD and its counsel have taken to disseminate the Court's [July 2025] TRO and ensure compliance with its terms."

4. On Friday, July 11, 2025, at approximately 10:20 a.m., I was informed by a member of my Office's Litigation Branch that the Court had issued a Temporary Restraining Order ("TRO") against the City in the matter entitled *Los Angeles Press Club v. City of Los Angeles*, relating to the Police Department's handling of journalists during protests. Paragraphs 2 and 3 of the TRO enjoin LAPD from taking certain actions, such as: prohibiting a journalist from entering or remaining in a closed area established by police during a protest; intentionally assaulting or interfering with a journalist engaged in news gathering during a protest; citing, detaining, or arresting a journalist who is in a closed area for failure to disperse; and using less-lethal munitions and other crowd control weapons against journalists who are not posing a threat of imminent harm.

5. The TRO further ordered LAPD management "to summarize [the] Order and disseminate its contents to all LAPD officers responding to a protest in Los Angeles."

6.    Upon receiving notice of the issuance of the TRO, my Office immediately commenced efforts and discussions – both internally and with the Police Department – to prepare a summary of the TRO for dissemination by LAPD.  By approximately 12:25 p.m. on July 11, it had been decided that I would be the point person in the Office who would assist LAPD in preparing the Court-ordered summary.  I promptly reached out to LAPD management – the Office of the Chief of Police ("OCOP") and the Office of the Chief of Staff – to alert them about the TRO and discuss the preparation of the summary ordered by the Court. Within minutes, Deputy Chief Scott Harrelson had directed Sgt. Michelle Smith of the Department's Office of Constitutional Policing and Policy to reach out to me to discuss the drafting of a summary.

7.    By approximately 2:20 pm on July 11, the Police Department had prepared a first draft of a summary. Specifically, Sgt. Smith had drafted a summary styled as an OCOP Notice from the Chief of Police to all LAPD personnel, which she sent to LAPD management and to me for review and comment. I further distributed the draft OCOP Notice to colleagues in my Office's Litigation Branch.

8.    During the afternoon and evening on Friday, July 11 and the morning and afternoon on Saturday, July 12, members of my Office engaged in the review, analysis, and discussion of the draft OCOP Notice, and researched and suggested further revisions and additions to the draft Notice. By approximately 4:20 p.m. on July 12, my Office had arrived upon a near final draft of the Notice.

9.    At approximately 4:40 p.m. on Saturday, July 12, I emailed the near final version of the draft OCOP Notice to LAPD management, including Chief Harrelson, for review, comment, and approval. I also informed LAPD that the Office planned to send a copy of the draft Notice to plaintiffs' counsel, Carol Sobel, to consult with her as to any specific concerns that the parties could address informally prior to dissemination and without the need for Court intervention.

10.    At approximately 7:20 p.m. on Saturday, July 12, Chief Harrelson informed me that LAPD management, including the Chief of Police, had reviewed the draft OCOP

3

1  Notice and that it was good to go.

2      11.    Shortly thereafter, at approximately 7:55 p.m. on Saturday, July 12, my

3  colleague, Cory Brente emailed plaintiffs' attorney, Carol Sobel, alerting her that the City

4  would like to share a copy of the draft Notice with her so that she could express if she

5  had any comments or concerns. Ms. Sobel responded that she did want to review a draft

6  of the Notice. At approximately 9:15 p.m. on Saturday, July 12, Mr. Brente sent an email

7  to Ms. Sobel attaching a copy of the draft OCOP Notice.

8      12.    The following afternoon, on Sunday, July 13, Ms. Sobel sent an email to Mr.

9  Brente setting forth some comments, concerns, and suggested revisions of the draft

10  OCOP Notice. Over the course of Sunday afternoon and the morning of Monday, July 14,

11  my colleagues and I engaged in further discussions, analysis, and research in response to

12  Ms. Sobel's comments and concerns, and made revisions to the Notice to address them.

13      13.    At approximately 11:25 a.m. on Monday, July 14, my Office had finalized

14  the OCOP Notice, pending additional input from Ms. Sobel. At approximately 11:45

15  a.m., Mr. Brente sent an email to Ms. Sobel attaching the new draft of the OCOP Notice

16  and stating that the City had included language to address her concerns.

17      14.    Later that afternoon, at approximately 2:05 p.m., Ms. Sobel responded to

18  Mr. Brente, stating that with the changes implemented by the City, the OCOP Notice

19  worked for her.  Mr. Brente then notified me and other members of our Office that Ms.

20  Sobel had reviewed the draft and was good with it.

21      15.    I promptly notified LAPD management and the Chief of Police of the

22  additional language that had been included in the draft Notice, and they concurred with

23  the revisions.  A few hours later, at approximately 5:40 p.m., I provided Chief Harrelson

24  and Sgt. Smith with a copy of the final OCOP Notice for dissemination.

25      16.    Sgt. Smith sent me and Chief Harrelson a message the following morning to

26  confirm that the OCOP Notice had been published on the Department's Local Area

27  Network ("LAN"). A true and correct copy of the final OCOP Notice that LAPD

28  management disseminated to inform personnel about the TRO issued by the Court

regarding journalists at demonstrations and protests is attached as **Exhibit C** to the
Declaration of Chief Harrelson, which I have reviewed and which is being filed
concurrently with this declaration. The bottom of the third page of the OCOP Notice
states that it distributed to "Distribution D", which I understand based on my review of
Section 090.80 of the LAPD Manual means that it was intended for distribution to all
Department employees, both sworn and civilian.

17. Although I do not have access to the Department's LAN, I am informed and
believe that the LAN is the Department's internal web network, or intranet, to which all
Department employees have access, and which is used to communicate and distribute
information Department-wide. Upon information and belief, and based on my review of
Section 095 of the LAPD Manual, LAPD employees are expected to familiarize
themselves with Police Department directives, training materials and informative
publications directed to them.

18. I am familiar with the Police Department's existing policies and practices
regarding interactions with the media during protests and demonstrations, as well as
statutory provisions on the subject, including Penal Code sections 409.7 and 13652. The
Police Department's OCOP Notice to inform personnel of the Court's TRO was
consistent with, and provided cross-references to, the Police Department's existing
policies and practices on those subject matters.


I declare under penalty of perjury under the laws of the United States of America
that the foregoing is true and correct. Executed this 22nd day of August, 2025, in Los
Angeles, California.

Carlos De La Guerra

DECLARATION OF CARLOS DE LA GUERRA IN RESPONSE TO OSC RE COMPLIANCE WITH THE TRO