HYDEE FELDSTEIN SOTO, City Attorney
DENISE C. MILLS, Chief Deputy City Attorney (SBN 191992)
KATHLEEN KENEALY, Chief Assistant City Attorney (SBN 212289)
CORY M. BRENTE, Senior Assistant City Attorney (SBN 115453)
GABRIEL S. DERMER, Assistant City Attorney (SBN 229424)
200 North Main Street, 6th Floor
Los Angeles, CA 90012
Phone No.: (213) 978-7558/ Fax No.: (213) 978-7011

Attorneys for Defendants CITY OF LOS ANGELES and
POLICE CHIEF JIM MCDONNELL

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES PRESS CLUB, STATUS COUP, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF LOS ANGELES, a municipal entity, JIM MCDONNELL, LAPD CHIEF, sued in his official capacity; <br><br> Defendants. | CASE NO. 25-CV-05423 HDV-E <br><br> DECLARATION OF CAPTAIN YASIR ALI GILLANI REGARDING FURTHER DISSEMINATION OF THE TERMS OF THE COURT'S TRO |

1

DECLARATION OF CAPTAIN YASIR ALI GILLANI REGARDING FURTHER DISSEMINATION OF THE TERMS OF THE COURT'S TRO

I, YASIR ALI GILLANI, declare:

1. I am employed by the City of Los Angeles as a Captain with the Los Angeles Police Department ("LAPD"). My current assignment is Captain of the Risk Management and Legal Affairs Division. I have been employed by LAPD since 1999. I understand that the Court in the above-captioned matter issued a Temporary Restraining Order ("TRO") on July 10, 2025. I further understand that the Court ordered "Defendants to show cause in writing, no later than August 22, 2025, describing in detail all measures that the LAPD and its counsel have taken to disseminate the Court's TRO and ensure compliance with its terms." I further understand that on August 22, 2025, Deputy Chief Harrelson submitted a declaration to this Court explaining what LAPD had thus far done to disseminate the TRO. I submit this declaration in order to describe LAPD's further efforts to disseminate the Court's TRO. If called to testify, I could and would competently do so of my own personal knowledge.

2. On July 15, 2025, the Office of the Chief of Police ("OCOP") posted a notice on LAPD's Local Area Network ("LAN") addressed to all department personnel and entitled "Temporary Restraining Order Regarding Journalists At Demonstrations and Protests." Attached as **Exhibit A** is a true and correct copy of the July 15, 2025, OCOP notice. Exhibit A stated its purpose was to "inform personnel of the Temporary Restraining Order (TRO) issued on July 10, 2025, by United States District Judge Hernán Vera that prohibits targeting journalists, who are not posing a threat of imminent harm to an officer or another person, with less-lethal munitions and other crowd control weapons (including kinetic impact projectiles, chemical irritants, and flash bangs)." Exhibit A then stated the terms of the Court's TRO. The declaration of Deputy Chief T. Scott Harrelson, which was filed on August 22, 2025 (Dkt. 75) in the above-captioned matter, described the process of drafting Exhibit A and its posting on the LAN.

3. On August 25, 2025, I attended the hearing in this matter. During the hearing, I heard the Court express that LAPD did the "minimum" by posting Exhibit A

on the LAN. Given the Court's remarks during the hearing, I decided that LAPD should further disseminate and explain the terms of the Court's TRO. Accordingly, the next day, on August 26, 2025, in consulation with the Office of the Los Angeles City Attorney, I composed the following email message: "On July 10, 2025, United States District Judge Hernan D. Vera issued a Temporary Restraining Order (TRO) that prohibits any officer from targeting journalists, who are not posing a threat of imminent harm to an officer or another person, with less-lethal munitions and other crowd control weapons. The TRO also provides that if police establish a police line or rolling closure during a demonstration, march, protest, or rally, LAPD officers shall not prohibit a duly authorized representative of a media organization engaged in news gathering from entering or remaining in the closed areas. When an officer is approached by a person who claims to be a member of the media during a crowd control situation, and the officer cannot determine if the person is "duly authorized" by a media organization to be there, the officer should call a supervisor to make an objectively reasonable determination whether the person is permitted to be in a closed area or behind the police line. Under Penal Code section 13652, during any assembly, protest or demonstration, chemical agents, the 40mm Less-Lethal Launcher, the 37mm Less-Lethal Launcher, and the FN 303 shall not be used to disperse a crowd. Instead, they can only be used to defend against what an officer reasonably believes to be an immediate threat to the safety of the officer or others, or to bring a dangerous and unlawful situation safely and effectively under control (please refer to the Training Bulletin titled Crowd Management, Intervention and Control- Part II Media, dated May 2025). Please review the attached Office of the Chief of Police Notice dated July 15, 2025, which discusses the TRO and related Department policies in more detail. If there are any questions about the attached document or regarding members of the media in any crowd control situation, please contact the Office of Constitutional Policing and Policy." A true and correct copy of my email is attached hereto as **Exhibit B.**

4. In order to ensure individualized distribution of Exhibit B, along with the OCOP Notice (Exhibit A), I requested that the Department Operations Center ("DOC") email both documents to each and every LAPD employee. DOC sent the email on August 26, 2025 at approximately 3:30 PM.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 28 day of August, 2025, in Los Angeles, California.

_____
Captain Yasir Ali Gillani

DECLARATION OF CAPTAIN YASIR ALI GILLANI REGARDING FURTHER DISSEMINATION OF THE TERMS OF THE COURT'S TRO