UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-05423-HDV-E | Date | September 25, 2025 |
| Title | *Los Angeles Press Club et al v. City of Los Angeles et al* | | |

| | |
|---|---|
| Present: The Honorable | Hernán D. Vera, United States District Judge |

| Wendy Hernandez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:    (IN CHAMBERS) ORDER DENYING *EX PARTE* APPLICATION FOR CONTEMPT [63]**

## I.    INTRODUCTION

Before the Court is Plaintiffs Los Angeles Press Club's and Status Coup's *Ex Parte* Application for Contempt and Sanctions ("Application"). [Dkt. 63]. For the foregoing reasons, Plaintiffs' motion is denied.

## II.    BACKGROUND

Los Angeles Press Club and Status Coup initiated the instant action against the City of Los Angeles and Los Angeles Police Department ("LAPD") Chief Jim McDonnell in his official capacity. Complaint [Dkt. 1]. Plaintiffs allege that the LAPD violated Plaintiffs' First Amendment right of access and right to be free from retaliation; violated Plaintiffs' rights under Article I of the California Constitution; violated California Penal Code sections 409.7 and 13652; and violated the Tom Bane Civil Rights Act, Cal. Civil Code § 52.1. *Id.* ¶¶ 45–53.

On July 3, 2025, Plaintiffs moved for a temporary restraining order enjoining Defendants from dispersing, citing, arresting, or assaulting journalists present at protests and from using crowd control weapons or other force against journalists who pose no imminent threat of serious harm. *Ex Parte* Application for Temporary Restraining Order 1 [Dkt. No. 16]. On July 10, 2025, the Court granted Plaintiffs' Application ordering, in relevant part:

2. If LAPD or another law enforcement agency establishes a police line or rolling closure at a demonstration, march, protest, or rally where individuals are engaged in activity that is protected pursuant to the First Amendment to the United States Constitution, LAPD is enjoined from:
   a. Prohibiting a journalist from entering or remaining in the closed areas.
   b. Intentionally assaulting, interfering with, or obstructing any journalist who is gathering, receiving, or processing information for communication to the public (including by restricting journalists to areas from which they do not have sufficient opportunity to observe and report on protests, including the interaction between police and protestors).
   c. Citing, detaining, or arresting a journalist who is in a closed area for failure to disperse, curfew violation, or obstruction of a law enforcement officer for gathering, receiving, or processing information. If LAPD detains or arrest a person who claims to be a journalist, that person shall be permitted to promptly contact a supervisory officer of the rank of captain or above for purposes of challenging that detention, unless circumstances make it impossible to do so.

Order Granting Temporary Restraining Order ("TRO Order") 12–13 [Dkt. 44].

The Court ordered the LAPD to summarize the TRO Order and disseminate its contents to all LAPD officers within 72 hours. *Id.* at 13. The Court also set a briefing schedule for a hearing on a preliminary injunction. *Id.* at 14. The parties twice stipulated to extend the TRO. [Dkts. 46, 59].

On August 13, 2025, Plaintiffs filed the instant Application. Plaintiffs contend that Defendants violated the Court's TRO on August 8, when LAPD officers formed a skirmish line and advanced on journalists at the front of the crowd, hitting them with batons and knocking them to the ground, even as journalists provided press identification. Application at 1, 6–10.

On August 18, the Court ordered Defendants to show compliance with its TRO and set Plaintiffs' Application for hearing on August 25, 2025. [Dkt. 68]. Defendants moved for an extension of time to respond, which was denied. [Dkts. 70, 81]. Defendants averred that it disseminated the Court's TRO Order to LAPD personnel on July 15 and posted it to the LAPD's internal home page. Declaration of Carlos De La Guera ¶¶ 9, 11–16 [Dkt. 75-6]; Declaration of Scott Harrelson ¶¶ 6–8 [Dkt. 75-1], Ex. C [Dkt. 75-4], Ex. D [Dkt. 75-5]. The Court heard oral argument on the Application on August 25 and took the matter under submission. [Dkt. 78].

On September 11, 2025, the Court issued a preliminary injunction finding that Plaintiffs established a likelihood of success on both their state law and federal claims ("PI Order"). [Dkt. 83]. In doing so, the Court clarified that when the LAPD establishes a police line or rolling closure, it is enjoined from:

> Prohibiting a journalist from entering or remaining in the closed areas, **unless access will interfere with emergency operations**, in which case access may be denied for only so long and only to such an extent as is **necessary to prevent actual interference**.

PI Order at 31 (emphasis added). The Court also added that the LAPD is enjoined from using crowd control weapons, including batons, "against journalists who are not posing a threat of imminent harm to an officer or another person." *Id.*

### III.    LEGAL STANDARD

District courts have inherent and statutory authority to enforce compliance with orders through civil contempt. *Spallone v. United States*, 493 U.S. 265, 276 (1990); 18 U.S.C. § 401. The purpose of civil contempt is "coercive or compensatory, whereas the purpose of criminal contempt is punitive." *Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc.*, 539 F.3d 1039, 1042 (9th Cir. 2008). A party's "disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply" constitutes civil contempt. *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993).

Civil contempt is a "severe remedy," so "principles of basic fairness require that those enjoined receive explicit notice of what conduct is outlawed before being held in civil contempt." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1802 (2019) (cleaned up). Accordingly, courts should afford the party subject to contempt with sufficient notice and opportunity to defend itself before finding the party in contempt. *United States v. Ayres*, 166 F.3d 991, 995 (9th Cir. 1999).

To hold a party in civil contempt, the Court must find, based on clear and convincing evidence, that (1) the party violated a court order, (2) beyond substantial compliance, and (3) not based on a good faith and reasonable interpretation of the order. *Taggart*, 139 S. Ct. at 1802. Violation of a court order is shown by the party's "failure to take all reasonable steps within the party's power to comply." *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006). If the moving party meets its burden, the burden "then shifts to the contemnors to demonstrate why they were unable to comply." *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999) (quoting *Stone v. City & Cnt. of San Francisco*, 968 F.2d 850, 856 n.9 (9th Cir. 1992)).

### IV.    DISCUSSION

Plaintiffs request that the Court (1) modify its July 10 order to encompass the use of batons, (2) find Defendants in contempt for the August 8 incident, (3) impose civil contempt remedies, (4) appoint a special master to investigate the LAPD's conduct on August 8, and (5) award reasonable attorneys' fees associated with responding to Defendants' violations. Application at 3.

Plaintiff proffers evidence showing that when the LAPD formed a skirmish line, officers pushed back the crowd with batons, without distinction as to protestors and media. *See* Declaration of Tina-Desiree Berg ("Berg Decl.") ¶¶ 5–7 [Dkt. 63-7], Ex. 82 at 1:16–17, 1:59 [Dkt. 64] (showing the LAPD pushing back photojournalist Nick Stern, though he proffered his press badge); *id.* ¶¶ 8–9, Ex. 84 at 0:54–0:59 [Dkt. 64] (showing Stern with blood on his face, after an LAPD officer appeared to swing a baton at him); Declaration of Sean Beckner-Carmitchel ("Beckner-Carmitchel Decl.") ¶¶ 7–8 [Dkt. 63-6], Ex. 104, 108 [Dkt. 64] (same);

Berg Decl. ¶ 12, Ex. 82 at 3:01–3:10, 5:28 [Dkt. 64] (showing an officer strike Berg with a baton).  Later, LAPD officers kettled protestors and media alike and ordered them to stand against a wall.  Beckner-Carmitchel Decl. ¶ 14.  When journalist Sean Beckner-Carmitchel asked, "Does that include media?," the officer instructed him to join the others against the wall.  *Id.*, Ex. 105 at 0:08–12 [Dkt. 64].  Beckner-Carmitchel and several other journalists were zip-tied.  *Id.* ¶¶ 15–16; Declaration of Adam Rose ¶¶ 13–14, Exs. 91–97 [Dkt. 63-4].  Two of these journalists, who lacked press identification, were transported to the LAPD's detention center.  *Id.* ¶ 15.

The Court expresses no approval for this conduct.  To the contrary, the evidence presented is disturbing and, at the very least, shows that Defendants violated the spirit if not the letter of the Court's initial restraining order.

But the Court nonetheless recognizes that its TRO Order, which exclusively focused on Defendants' First Amendment violations and primarily on the LAPD's use of crowd control weapons, may not have been sufficiently clear to afford Defendants "explicit notice" of their obligations to journalists.  *Taggart*, 139 S. Ct. at 1802 (cleaned up).  To that end, the Court has now made abundantly clear in its PI Order that state law affords journalists specific protections above and beyond the First Amendment.  In particular, California Penal Code section 409.7 permits journalists access to closed areas, without risking assault, detention or arrest.  Cal. Pen. Code § 409.7(a)(1)–(3).  As the Court explained, the California state legislature intended for this statute to be interpreted in parallel with California Penal Code section 409.5, such that journalists may be excluded ***only if*** "police personnel at the scene reasonably determine that such unrestricted access *will interfere* with emergency operations," and even then, the restrictions must be "for only so long and only to such an extent as is necessary to prevent actual interference."  PI Order at 19–20 (quoting *Leiserson v. City of San Diego*, 184 Cal. App. 3d 41, 51 (1986)).  In other words, compliance with section 409.7 and the Court's preliminary injunction ***requires*** LAPD officers to identify journalists and permit them to continue their activities in closed areas, including from behind the skirmish line.[1]

Because the Court declines to find contempt on this record, it does not proceed to the remainder of Plaintiffs' request.  *See Simo v. Union of Needletrades, Indus. & Textile Emps. Sw. Dist. Council*, 322 F.3d 602, 610 (9th Cir. 2003) ("We . . . reach only those [arguments] necessary to our disposition of this case.").  Plaintiffs' Application is denied.

**IT IS SO ORDERED.**

---

[1] The Court notes that in opposing Plaintiffs' Motion for a Preliminary Injunction, Defendants adduced instances where they successfully complied with section 409.7.  *See* PI Order at 23, n. 15.

The Court's PI Order also clarifies that officers may not use batons against journalists who are not posing a risk of imminent harm.  PI Order at 31.