HYDEE FELDSTEIN SOTO, City Attorney (Bar No. 106866)
DENISE C. MILLS, Chief Deputy City Attorney (Bar No.191992)
KATHLEEN KENEALY, Chief Assistant City Attorney (SBN 212289)
GABRIEL S. DERMER, Assistant City Attorney (Bar No. 229424)
OFFICE OF THE CITY ATTORNEY OF LOS ANGELES
200 North Main Street, 6th Fl., City Hall East
Los Angeles, California 90012
Telephone: (213) 978-7558
Facsimile: (213) 978-7011

RICHARD T. EGGER, Bar No. 162581
richard.egger@bbklaw.com
A. PATRICIA URSEA, Bar No. 221637
patricia.ursea@bbklaw.com
ZACHARY SCALZO, Bar No. 305065
zachary.scalzo@bbklaw.com
BEST BEST & KRIEGER LLP
2855 E. Guasti Road, Suite 400
Ontario, California 91761
Telephone: (909) 989-8584
Facsimile: (909) 944-1441

Attorneys for Defendants
CITY OF LOS ANGELES; JIM MCDONNELL

BEST BEST & KRIEGER LLP

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| LOS ANGELES PRESS CLUB, STATUS COUP,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF LOS ANGELES, a municipal entity, JIM MCDONNELL, LAPD CHIEF, sued in his official capacity; Defendants. | Case No. 2:25-cv-05423-HDV-E<br>Assigned to: Judge Hernan D. Vera<br><br>**EX PARTE APPLICATION FOR STAY OF THE SEPTEMBER 10, 2025 PRELIMINARY INJUNCTION PENDING APPEAL**<br><br>Action Filed:  June 16, 2025 |

**EX PARTE APPLICATION**

PLEASE TAKE NOTICE that, in accordance with Local Rule 7-19 and this Court's Civil Standing Order Section XIII, Defendants City of Los Angeles and Chief Jim McDonnell ("City" or "Defendants"), by and through their counsel of record, respectfully apply to this Court on an ex parte basis for an order staying the Preliminary Injunction entered on September 10, 2025 (ECF No. 83) pending appeal. This Application is based on Federal Rules of Civil Procedure, Rule 62 and Federal Rules of Appellate Procedure, Rule 8(a)(1)(A), the accompanying Memorandum of Points and Authorities, the Declarations of Lt. Joseph Dunster, the Declaration of Richard Egger, other supporting declarations and exhibits, the record, and any further evidence or argument the Court may permit.

**Good Cause and Urgency**

Good cause and urgency exist for the relief requested. The City has filed a Notice of Appeal of the Preliminary Injunction. In addition, the City faces imminent enforcement obligations under the Court's September 10, 2025, Preliminary Injunction Order ("Order") because there is an upcoming "No Kings" protest scheduled for Saturday, October 18, 2025, which requires it to deploy officers subject to the constraints of the Order. The Order enjoins the Los Angeles Police Department ("LAPD") from a broad range of actions relating to its handling of "journalists" during protests, and requires LAPD to take a number of affirmative actions, described in the accompanying Memorandum of Points and Authorities below. Although the Court described the injunction as "mirror[ing] the Defendants' own policies" (Order at p. 27), it imposes ambiguous mandates that create serious operational uncertainty and a substantial risk of contempt for good-faith conduct to preserve public safety. Given the immediate and concrete risk to officer and public safety posed by these uncertainties—and the fact that the City has

Best Best & Krieger LLP

09801.02810\44299480.1

1  invoked its right of appeal—the City respectfully requests that the Court stay the
2  Order pending appeal.

### Notice

4    Pursuant to Local Rule 7-19, defense counsel notified Plaintiffs' counsel of
5  the date and substance of this motion by email on October 14, 2025, and
6  participated in a video call with Plaintiffs' counsel on October 15, 2025. Plaintiffs'
7  counsel indicated that they oppose this application.  (See Declaration of Richard
8  Egger, ¶¶ 2-3.)

9    Separate from the electronic filing of this Application, counsel for the City
10  emailed a complete copy of this filing to Plaintiffs' counsel on October 15, 2025.

### Plaintiffs' Counsel Information

12    Pursuant to Local Rule 7-19, Plaintiffs' counsels' contact information is as
13  follows:

Carol A Sobel
Weston Rowland
LAW OFFICE OF CAROL A. SOBEL
2632 Wilshire Boulevard, #552
Santa Monica, CA 90403
t. (310) 393-3055
Email: carolsobellaw@gmail.com;
rowland.weston@gmail.com

Peter Bibring SBN 223981
LAW OFFICE OF PETER BIBRING
2140 W Sunset Blvd # 203,
Los Angeles, CA 90026
t. (213) 471-2022
Email: peter@bibringlaw.com

David Loy
Aaron R. Field
FIRST AMENDMENT COALITION
534 4th St., Suite B
San Rafael, CA 94901
t.(415) 460-5060
Email
dloy@firstamendmentcoalition.org;
afield@firstamendmentcoalition.org

Paul Hoffman
Michael Seplow
John Washington
SCHONBRUN, SEPLOW, HARRIS,
HOFFMAN & ZELDES LLP
9415 Culver Blvd, #115
Culver City, California 90230
t.(310) 396-0731
hoffpaul@aol.com
mseplow@sshhzlaw.com
jwashington@sshhlaw.com

2:25-CV-05423-HDV-E
EX PARTE APPLICATION FOR STAY OF
THE PRELIMINARY INJUNCTION
PENDING APPEAL

BEST BEST & KRIEGER LLP

09801.02810\44299480.1

1

2　Susan E Seager
　　Law Office of Susan Seager
3　128 N. Fair Oaks Avenue
4　Pasadena, CA 91103
　　t. (310) 890-8991
5　susanseager1999@gmail.com

6

7　　　　　　　　　　　　**Relief Requested**

8　　　　The City respectfully request that the Court stay the Preliminary Injunction

9　(ECF No. 83) in its entirety pending disposition of the City's appeal to the Ninth

10　Circuit Court of Appeals.

11
　　Dated:  October 15, 2025　　　　　　　BEST BEST & KRIEGER LLP
12

13

14　　　　　　　　　　　　　By:　_____
　　　　　　　　　　　　　　　RICHARD T. EGGER
15　　　　　　　　　　　　　　A. PATRICIA URSEA
　　　　　　　　　　　　　　　ZACHARY SCALZO
16　　　　　　　　　　　　　　Attorneys for Defendants
　　　　　　　　　　　　　　　CITY OF LOS ANGELES; JIM
17　　　　　　　　　　　　　　MCDONNELL

18

19

20

21

22

23

24

25

26

27

28

2:25-CV-05423-HDV-E
EX PARTE APPLICATION FOR STAY OF
THE PRELIMINARY INJUNCTION
PENDING APPEAL

09801.02810\44299480.1

BEST BEST & KRIEGER LLP

1

# TABLE OF CONTENTS

2

**Page**

3  I.    INTRODUCTION ........................................................................... 11

4  II.   ARGUMENT ................................................................................ 11

5         A.    The City is Likely to Succeed on the Merits ..................................... 12

            1.    The Injunction Is Overbroad.................................................. 12

6                 a.    The Order Improperly Treats Nonparty Journalists
                        as Direct Beneficiaries Rather Than Incidental
7                       Ones.................................................................... 13

8                 b.    Plaintiffs Failed to Carry Their Burden to Justify
                        Relief Extending Beyond Their Own Members............. 14

9         2.    Plaintiffs Lack Article III Standing ........................................ 16

10                a.    Plaintiffs Do Not Have Direct Organizational
                        Standing.............................................................. 16

11                b.    Plaintiffs Do Not Have Associational Standing............. 18

12                c.    Plaintiffs Have Not Demonstrated a Sufficient
                        Likelihood of Future Injury...................................... 19

13        3.    The Court Issued A Mandatory Injunction Without
                Making The Required Findings ............................................. 21

14

15        4.    The Court's Factual Findings Are Unsupported by the
                Record ............................................................................ 22

16        5.    The Injunction Is Impermissibly Vague and Unworkable ....... 25

17                a.    The Definition of "Journalist" Is Unworkably
                        Vague................................................................. 25

18                b.    The Scope of Covered Persons Is Undefined and
                        Overbroad............................................................ 27

19                c.    The Liaison-Officer Requirement Is Unworkable ........ 27

20                d.    The Standards Governing Temporary Detentions
                        and "Interference" Are Ambiguous............................. 27

21                e.    The Use-of-Force Provisions Are Vague and
                        Internally Inconsistent ........................................... 28

22                f.    Overlap with Existing State Law Creates Confusion..... 29

23                g.    Internal Inconsistencies Undermine Clarity................ 29

          B.    The Injunction Will Cause Immediate and Irreparable Harm ........... 29

24        C.    No Substantial Injury to Plaintiff / Public Interest Favors a Stay ...... 30

25  III.  CONCLUSION ........................................................................... 32

26

27

28

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2855 E. GUASTI ROAD, SUITE 400
ONTARIO, CALIFORNIA, 91761

2:25-CV-05423-HDV-E
EX PARTE APPLICATION FOR STAY OF
THE PRELIMINARY INJUNCTION
PENDING APPEAL

# TABLE OF AUTHORITIES

Page

**Federal Cases**

*Associated Gen. Contractors of Am. v. Cal. Dep't of Transp.*
713 F.3d 1187 (9th Cir. 2013)........................................................................18

*Branzburg v. Hayes*
408 U.S. 665 (1972) .......................................................................................25

*Bresgal v. Brock*
843 F.2d 1163 (9th Cir. 1987)........................................................................25

*Califano v. Yamasaki*
442 U.S. 682 (1979) .......................................................................................12

*Cheairs v. City of Seattle*
145 F.4th...........................................................................................................24

*Cheairs v. City of Seattle*
145 F.4th 1233 (9th Cir. 2025)......................................................................23

*City of Los Angeles v. Lyons*
461 U.S. 95 (1983) ..................................................................................19, 20

*Clapper v. Amnesty Int'l USA*
568 U.S. ...........................................................................................................20

*Clapper v. Amnesty Int'l USA*
568 U.S. 398 (2013) ..................................................................................16, 21

*Drakes Bay Oyster Co. v. Jewell*
747 F.3d 1073 (9th Cir. 2014)........................................................................12

*E. Bay Sanctuary Covenant v. Barr*
934 F.3d 1026 (9th Cir. 2019)........................................................................12

*East Bay Sanctuary Covenant v. Garland*
994 F.3d 962 (9th Cir. 2020).........................................................................16

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2855 E. GUASTI ROAD, SUITE 400
ONTARIO, CALIFORNIA, 91761

2:25-CV-05423-HDV-E
EX PARTE APPLICATION FOR STAY OF
THE PRELIMINARY INJUNCTION
PENDING APPEAL

09801.02810\44299480.1

# TABLE OF AUTHORITIES
(continued)

**Page**

*Fellowship of Christian Athletes v. San Jose Unified School District*
82 F.4th 644 (9th Cir. 2023) ................................................................... 16

*Food & Drug Admin. v. All. for Hippocratic Med.*
602 U.S. 367 (2024) .............................................................................. 17

*Garcia v. Google, Inc.*
786 F.3d 733 (9th Cir. 2015) (en banc) ........................................... 21, 22

*Golden Gate Rest. Ass'n v. City & Cnty. of San Francisco*
512 F.3d 1112 (9th Cir. 2008) ............................................................... 31

*Havens Realty Corp. v. Coleman*
455 U.S. 363 (1982) .............................................................................. 17

*Hunt v. Washington State Apple Advertising Commission*
432 U.S. 333 (1977): (1) .................................................................. 18, 19

*Immigrant Defenders Law Center v. Noem*
145 F.4th 972 (9th Cir. 2025) .......................................................... 14, 15

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*
624 F.3d 1083 (9th Cir. 2010) ............................................................... 17

*Lacey v. Maricopa County*
693 F.3d 896 (9th Cir. 2012) ................................................................. 19

*Lujan v. Defenders of Wildlife*
504 U.S. 555 (1992) .............................................................................. 19

*Maryland v. King*
567 U.S. 1301 (2012) (Roberts, C.J., in chambers) ....................... 30, 31

*NetChoice, LLC v. Bonta*
__ F.4th __, 2025 WL 2600007 (9th Cir. Sept. 9, 2025) ............... 18, 19

*Nken v. Holder*
556 U.S. 418 (2009) ............................................................. 11, 12, 30, 31

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2855 E. GUASTI ROAD, SUITE 400
ONTARIO, CALIFORNIA, 91761

2:25-CV-05423-HDV-E
EX PARTE APPLICATION FOR STAY OF
THE PRELIMINARY INJUNCTION
PENDING APPEAL

09801.02810\44299480.1

1

# TABLE OF AUTHORITIES
(continued)

2

**Page**

3

4

*Noem v. Vasquez Perdomo*
5
   __ S.Ct. __, 2025 WL 2585637 (2025) (Kavanaugh, J., concurring) ...............20

6

*O'Shea v. Littleton*
7
   414 U.S. 488 (1974) .......................................................................................20

8

*Öztürk v. Hyde*
9
   2025 WL 2679904 (2d Cir. 2025) ..................................................................14

10

*Portland Police Ass'n v. City of Portland, By and Through Bureau of Police*
   658 F.2d 1272 (9th Cir. 1981) ........................................................................20

11

12

*Press-Enterprise Co. v. Superior Court*
   464 U.S. 501 (1984) .......................................................................................19

13

14

*Press-Enterprise Co. v. Superior Court*
   478 U.S. 1 (1986) ...........................................................................................19

15

16

*Reporters Committee for Freedom of the Press v. Rokita*
   147 F.4th 720 (7th Cir. 2025)..........................................................................14

17

18

*Rodriguez v. City of San Jose*
   930 F.3d 1123 (9th Cir. 2019) ........................................................................17

19

*San Deigo Cnty. Gun Rts. Comm. v. Reno*
   98 F.3d 1121 (9th Cir. 1996), abrogated in part on other grounds by *District of*
20
   *Columbia v. Heller*, 554 U.S. 570 (2008) ......................................................21

21

*Schmidt v. Lessard*
22
   414 U.S. 473 (1974) (per curiam) ...................................................................25

23

*Scott v. Harris*
24
   550 U.S. 372 (2007) .......................................................................................23

25

*Stanley v. Univ. of S. Cal.*
26
   13 F.3d 1313 (9th Cir. 1994)......................................................................21, 22

27

28

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2855 E. GUASTI ROAD, SUITE 400
ONTARIO, CALIFORNIA 91761

2:25-CV-05423-HDV-E
EX PARTE APPLICATION FOR STAY OF
THE PRELIMINARY INJUNCTION
PENDING APPEAL

09801.02810\44299480.1

### TABLE OF AUTHORITIES
#### (continued)

**Page**

*Town of Chester, N.Y. v. Laroe Estates, Inc.*
    581 U.S. 433 (2017) ......................................................................................... 16

*TransUnion LLC v. Ramirez*
    594 U.S. 413 (2021) ......................................................................................... 16

*Trump v. CASA, Inc.*
    606 U.S. 831 (2025) ............................................................................... 12, 13, 14

*Updike v. Multnomah County*
    870 F.3d 939 (9th Cir. 2017) .......................................................................... 20

*Warth v. Seldin*
    422 U.S. 490 (1975) ......................................................................................... 19

*Washington v. Trump*
    145 F.4th 1013 (9th Cir. 2025) ....................................................................... 14

**State Cases**

*Leiserson v. City of San Diego*
    184 Cal.App.3d 41 (1986) ............................................................................... 25

**State Statutes**

Cal. Pen. Code § 409.7 ........................................................................... *passim*

Cal. Pen. Code § 409.7(a)(1) ............................................................................ 25

Cal. Pen. Code § 409.7(a)(1)-(3) ...................................................................... 18

Cal. Pen. Code § 13652 ....................................................................... 18, 20, 29

Cal. Pen. Code § 13652 .................................................................................... 28

**Rules**

Fed. R. Civ. P. Rule 8(a)(1)(A) ........................................................................ 11

Fed. R. Civ. P. Rule 62 .................................................................................... 11

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2855 E. GUASTI ROAD, SUITE 400
ONTARIO, CALIFORNIA 91761

2:25-CV-05423-HDV-E
EX PARTE APPLICATION FOR STAY OF
THE PRELIMINARY INJUNCTION
PENDING APPEAL

09801.02810\44299480.1

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2855 E. GUASTI ROAD, SUITE 400
ONTARIO, CALIFORNIA 91761

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**
(continued)

**Page**

Fed. R. Civ. P. 65(d)(1) ............................................................. 25

Fed. R. Civ. P. 65(d)(1)(B)–(C) ................................................ 25

**Constitutional Provisions**

First Amendment .................................................... 22, 24, 25, 30

**Other Authorities**

Los Angeles City Charter § 574 ................................................ 31

67 Ops. Cal. Atty. Gen. 535 (1984) .......................................... 26

*Florida State Conference of Branches and Youth Units of the NAACP v. Byrd*
    2025 WL 2294931 (2025) .................................................... 14

*National Education Association-New Hampshire v. NH Attorney General*
    2025 WL 2807652 ...................................................... 14, 16

Senate Bill 98 ............................................................................ 26

09801.02810\44299480.1

BEST BEST & KRIEGER LLP

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

On September 10, 2025, this Court issued an Order Granting Plaintiffs' Motion for a Preliminary Injunction (ECF No. 83) ("Order"), enjoining the Los Angeles Police Department ("LAPD") from a broad range of actions relating to the treatment of "journalists" at public protests and imposing several mandatory obligations on LAPD, including incorporating the Order into Department manuals and training materials, reissuing protest policies annually, and assigning at least one lieutenant or higher-ranking officer to every protest.

The City filed a Notice of Appeal on October 7, 2025, and respectfully submits this Ex Parte Application under Federal Rules of Civil Procedure, Rule 62 and Federal Rules of Appellate Procedure, Rule 8(a)(1)(A) seeking a stay pending appeal. Under *Nken v. Holder*, 556 U.S. 418, 434–35 (2009), a stay is warranted pending appeal because the City is likely to succeed on the merits, will suffer irreparable harm absent relief, and the balance of hardships and the public interest weigh in favor of maintaining public safety and effective governance.  In addition, ex parte relief is warranted because LAPD must operate under the Court's injunction during the "No Kings" protest scheduled for Saturday, October 18, 2025. The Order employs undefined and operationally impracticable standards that expose the City and its officers to contempt for good-faith actions taken to protect the public.  For these reasons, the City respectfully requests that the Court rule on this application expeditiously.  If this Court denies the application, the City intends to promptly move the Ninth Circuit for a stay of the Order pending appeal.

### II.    ARGUMENT

In determining whether to grant a stay of an injunction pending appeal, courts apply the four-factor test.  The Court must consider: (1) whether the applicant has made a strong showing that it is likely to succeed on the merits;

09801.02810\44299480.1

Best Best & Krieger LLP

(2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Nken*, 556 U.S. at 434.  When, as here, the party seeking the stay is a public entity, the third and fourth factors—injury to opposing parties and the public interest—merge. *Id*. at 435; *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).  In such cases, the Court must balance the interests of all affected persons and the public's interest in effective governance, safety, and enforcement of the law.  A stay is also warranted where an injunction exceeds the limits of equitable authority or interferes with public safety operations. See *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) (injunctive relief should be no more burdensome than necessary); *E. Bay Sanctuary Covenant v. Barr*, 934 F.3d 1026, 1029 (9th Cir. 2019) (same).  For the reasons below, a stay of this Court's Order pending appeal is necessary to preserve the status quo, prevent further disruption to lawful law enforcement operations, and ensure that the City can continue to protect life, property, and constitutional rights.

### A.    The City is Likely to Succeed on the Merits

#### 1.    <u>The Injunction Is Overbroad</u>

The Supreme Court recently held in *Trump v. CASA, Inc.,* 606 U.S. 831 (2025) that the equitable power to issue injunctive relief is limited to "affording complete relief to the [parties] before the court," and does not extend to fashioning rules of general applicability. *Id*. at 851-52.  In other words, a federal court may issue an injunction only broad enough to give complete relief to the plaintiffs who brought the case; it may not enter an order that directly protects everyone who happens to be in a similar position. Others can benefit incidentally—as a side effect—but they cannot become direct beneficiaries of the court's decree. *Id*. at 851-52.  The injunction here extends beyond those limits.  Instead of confining relief to the two plaintiff organizations—the L.A. Press Club and Status Coup—or

to their identifiable members, the Order applies to "any journalist covering a protest in [the City of] Los Angeles."  (Order at p. 30.)  That language gives every journalist, regardless of affiliation, the same enforceable protections as Plaintiffs themselves.  Under *CASA*, that kind of direct protection for nonparties goes beyond what is necessary to provide complete relief.  *CASA,* 606 U.S. at 851-52.

> **a.      The Order Improperly Treats Nonparty Journalists as Direct Beneficiaries Rather Than Incidental Ones**

In *CASA*, the Supreme Court reaffirmed that equitable relief must be confined to the plaintiffs before the court, except where nonparties receive merely "incidental" benefits. *CASA*, 606 U.S. at 852.  Here, the Court reasoned that "some incidental benefits to third parties" are necessary to give Plaintiffs complete relief (Order, p. 28:20)—but there is nothing incidental about the benefits that all non-member journalists will receive from the injunction. The Supreme Court clarified the meaning of "incidental" by way of an example: an injunction prohibiting a neighbor from playing loud music may incidentally benefit nearby residents, but those neighbors do not become direct beneficiaries of the order.  *CASA*, 606 U.S.  at 853, fn. 6.  In that example, the incidental benefit occurs passively and naturally because the neighbors are not identified in the injunction and only benefit as a collateral consequence of the injunctive relief afforded to the named plaintiff.  In contrast, here, the Court affirmatively extended protections to "any journalist covering a protest in [the City of] Los Angeles," regardless of any connection to the plaintiffs or evidence of individual harm. (Order, at pp. 27–30.)  That expansion transforms third parties into direct recipients of judicial relief, which is the sort of "universal injunction" *CASA* held exceeded a district court's equitable authority. *CASA*, 606 U.S. at pp. 853-5854.

In granting the injunction here, the Court further reasoned that narrower relief "would be wholly ineffective" because LAPD officers may not be able to tell

BEST BEST & KRIEGER LLP

09801.02810\44299480.1

BEST BEST & KRIEGER LLP

1    who belongs to each organization. (Order at p. 28.)  That rationale does not align

2    with *CASA*'s incidental-benefits framework.  Administrative challenges cannot

3    justify extending an injunction to all potential journalists.  The more tailored

4    approach—limiting the order to Plaintiffs and their members, who can be readily

5    identified—would have provided complete relief without enlarging the injunction's

6    scope beyond the parties to this case.  By extending the injunction well beyond

7    what was necessary to afford Plaintiffs complete relief, the Court created a

8    universal "journalistic injunction" that the Supreme Court in *CASA* expressly

9    disapproved.

10    **b.    Plaintiffs Failed to Carry Their Burden to Justify**

11    **Relief Extending Beyond Their Own Members**

12    Courts have applied *CASA* to generally limit injunctive relief to actual

13    plaintiffs, including an organization and its members.  *See, e.g., Immigrant*

14    *Defenders Law Center v. Noem,* 145 F.4th 972, 995 (9th Cir. 2025)  (holding

15    abroader order applying beyond an organization and its members would improperly

16    extend to parties not before the court); *Washington v. Trump*, 145 F.4th 1013, 1038-

17    39 (9th Cir. 2025) (limiting relief to the state plaintiffs and declining to extend

18    protections to every affected individual nationwide to avoid remedies that interfere

19    broadly with governmental operations and which are beyond what is necessary to

20    afford relief to the actual litigants); *Id.* (noting even when a challenged policy

21    affects numerous individuals, the scope of equitable relief must correspond to the

22    injury of the prevailing parties.).[1]   To justify injunctive relief reaching beyond their

23    _____

24    [1] See, also, e.g., *Reporters Committee for Freedom of the Press v. Rokita*, 147 F.4th
720, 728 (7th Cir. 2025) (limiting relief to the named media organizations and their
members, declining to extend the injunction to all journalists in the state); *Florida*

25    *State Conference of Branches and Youth Units of the NAACP v. Byrd*, 2025 WL
2294931, *19 (2025) (holding cannot enjoin enforcement of an executive or

26    legislative policy against anyone, anywhere)); *Öztürk v. Hyde*, 2025 WL 2679904,
*21 (2d Cir. 2025) (cautioning that "nationwide" or classwide injunctions are

27    disfavored absent clear statutory authorization.); *National Education Association-
New Hampshire v. NH Attorney General*, 2025 WL 2807652, at *26 (holding

28

09801.02810\44299480.1

BEST BEST & KRIEGER LLP

1   membership, Plaintiffs bore the burden of demonstrating that such scope was

2   necessary to afford them complete relief. *Immigrant Defenders Law Center v.*

3   *Noem,* 145 F.4th at 995.   Plaintiffs have not carried that burden.

4           In granting the injunction, the Court reasoned that "Plaintiffs allege—and

5   have shown, for preliminary purposes—that Defendants indiscriminately deployed

6   force against Plaintiffs' members" and the City—"confronting the exigencies of

7   large-scale protests—are unlikely to be able to determine whether an individual is a

8   member of the LA Press Club or Status Coup before using force." (Order, p. 28:22-

9   24.)  But that reasoning is based on evidence of potential harm ***only*** to members of

10  the Plaintiff organizations. Plaintiffs' own evidence shows that their memberships

11  are readily identifiable. (See Order at pp. 8-9 (LA Press Club has "1,000 member

12  journalists"); *id*., p. 9:11-12 (Status Coup has "over 3,000 paying members").)

13  Given those defined memberships, the injunction could have been limited to the

14  Plaintiffs and their members.  Plaintiffs could provide their members with notice of

15  the injunction and require them to display credentials identifying their affiliation.

16          The Court's stated "exigencies of large-scale protests," (in which officers

17  purportedly could not realistically determine whether a particular journalist was a

18  member of the L.A. Press Club or Status Coup before using force) is difficult to

19  reconcile with the rest of the Order.  The Order requires LAPD to distribute and

20  enforce its 33-page injunction to every officer.  (Order at p. 33.)  If officers can be

21  expected to read and apply the detailed Order during the same chaotic conditions,

22  they can likewise be expected to recognize members of the Plaintiff organizations

23  that are carrying credentials. The "exigencies" the Court cited, therefore, do not

24  justify extending the injunction to every "journalist" in the City.

25

26

27  ───────────────────
    plaintiffs "have not shown that a universal injunction is necessary to provide them

28  with complete relief.")

2:25-CV-05423-HDV-E
EX PARTE APPLICATION FOR STAY OF
THE PRELIMINARY INJUNCTION
PENDING APPEAL

09801.02810\44299480.1

Although the injunction here is not extraterritorial, Plaintiffs actually requested a "universal injunction" by seeking protections for all journalists, and the Court granted relief of that scope. *Nat'l Educ. Ass'n–N.H.*, 2025 WL 2807652, at *26. Because Plaintiffs did not meet their burden to justify such expansion, the injunction should be narrowed to the Plaintiffs and their identified members.

### 2.    Plaintiffs Lack Article III Standing

The constitutional requirements of Article III permit federal courts to decide only actual "cases" or "controversies." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423–24 (2021). The burden of establishing standing rests with the party invoking federal jurisdiction. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411–12 (2013); *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) ("[S]tanding is not dispensed in gross.") Here, the Court adopted Plaintiffs' arguments that they have both direct standing in their own right and associational standing on behalf of their members. This was error.

### a.    Plaintiffs Do Not Have Direct Organizational Standing

A plaintiff organization alleging direct standing (i.e., to sue in its own right) must establish that "[t]he injuries affect plaintiff[']s[] core mission and [its] organizational funding." *East Bay Sanctuary Covenant v. Garland,* 994 F.3d 962, 975 (9th Cir. 2020). An organization asserting standing on its own behalf must show a "diversion of resources" that directly impairs its operations, not a voluntary decision to spend resources on advocacy or litigation. *See Fellowship of Christian Athletes v. San Jose Unified School District*, 82 F.4th 644, 682-83 (9th Cir. 2023) ("While an organization may not 'manufacture' an injury by 'choosing to spend money fixing a problem that otherwise would not affect the organization at all,' it 'can establish standing by showing that [it] would have suffered some other injury had [it] not diverted resources to counteracting the problem.'"). The claimed mission and diversion of resources cannot be abstract or hypothetical. Rather, the

organization must show "how the [alleged act giving rise to an injury] impedes [its] ability to carry out [its] mission or requires [it] to divert substantial resources away from the organization['s[] preferred use[]." *Rodriguez v. City of San Jose*, 930 F.3d 1123, 1135 (9th Cir. 2019). And the plaintiff must show "how the requested relief would redress any broader harm that the organization[] work[s] to combat." *Id.*

Here, as to the Los Angeles Press Club, the Court noted its nonprofit mission to support and defend journalism through scholarships, networking, and awards programs, and found that it had "diverted significant time and resources to assist injured journalists with medical and legal services, provide tips on safety and access during protests, and document press rights violations." (Order at pp. 8–9, citing Rose Decl. ¶¶ 2, 5, 20–21, 24.) As to Status Coup—an alleged for-profit media outlet relying on protest coverage—the Court found that it had diverted resources from "on-the-ground" reporting to producing advocacy content about press safety. (Order at p. 9, citing Chariton Decl. ¶¶ 1–10.) Those findings are insufficient to establish organizational standing.

The Court did not cite any evidence that either of the Plaintiffs' core missions was to assist journalists who had been harmed by allegedly unconstitutional uses of force on journalists during protest events. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982); *see also La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest,* 624 F.3d 1083, 1088 (9th Cir. 2010). The case on which the Court relied to support its injunction, *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024), does not support the Court's conclusion as to standing. There, the Supreme Court held that organizations may not "spend [their] way into standing" by diverting resources to research, petitions, advocacy, or education. *Id.* at 394–96. Here, Plaintiffs' assertions similarly describe self-directed resource diversion, not any concrete

2:25-CV-05423-HDV-E
EX PARTE APPLICATION FOR STAY OF
THE PRELIMINARY INJUNCTION
PENDING APPEAL

09801.02810\44299480.1

BEST BEST & KRIEGER LLP

1    interference with their operational ability to publish, distribute, or perform the

2    journalistic or administrative functions that comprise their core activities.

3    ### b.    Plaintiffs Do Not Have Associational Standing

4    Where organizational plaintiffs seek to proceed on behalf of their members,

5    they must satisfy the three-part test articulated in *Hunt v. Washington State Apple*

6    *Advertising Commission*, 432 U.S. 333, 343 (1977): (1) their members must have

7    standing to sue in their own right; (2) the interests they seek to protect must be

8    germane to the organization's purpose; and (3) **neither the claim asserted nor the**

9    **relief requested may require the participation of individual members in the**

10   **lawsuit**.  As to the third element, the Ninth Circuit has recently reaffirmed that

11   associational standing is unavailable where the claims asserted require

12   individualized proof of harm or liability. *NetChoice, LLC v. Bonta*, __ F.4th __,

13   2025 WL 2600007, at *6–7 (9th Cir. Sept. 9, 2025); see also *Associated Gen.*

14   *Contractors of Am. v. Cal. Dep't of Transp.*, 713 F.3d 1187, 1194 (9th Cir. 2013).

15   Here, the Court found that Plaintiffs had associational standing by relying on

16   declarations about individual members' alleged past injuries.  (Order at pp. 15–16.)

17   The Court's focus on the individual harms of Plaintiffs' members necessarily

18   means that the third element of the *Hunt* test (that the individual members need not

19   participate in the suit) is not satisfied.  Indeed, Plaintiffs' alleged state and federal

20   claims turn on individualized circumstances.  The state-law provisions on which

21   Plaintiffs rely—Penal Code sections 409.7 and 13652—require individualized

22   determinations tied to the unique circumstances of each encounter. *See* Cal. Pen.

23   Code § 409.7(a)(1)-(3) (applying to "duly authorized representative[s]" of news

24   organizations who are "gathering, receiving, or processing information"); *see also*

25   *id.* § 13652(b), (b)(1)-(4), (b)(7) (limiting the use of certain projectiles and

26   chemicals to situations where it is "objectively reasonable"); *id.* § 13652(b)(4)

27   (requiring a "reasonable effort" to identify persons "engaged in violent acts.").  The

28

BEST BEST & KRIEGER LLP

2:25-CV-05423-HDV-E
EX PARTE APPLICATION FOR STAY OF
THE PRELIMINARY INJUNCTION
PENDING APPEAL

09801.02810\44299480.1

Best Best & Krieger LLP

1    same is true of Plaintiffs' federal claims.  For instance, a restriction on access is

2    constitutional only upon specific findings of an overriding interest, narrow

3    tailoring, and the inadequacy of "reasonable alternatives."  *Press-Enterprise Co. v.*

4    *Superior Court)*, 464 U.S. 501, 510 (1984); *Press-Enterprise Co. v. Superior Court*,

5    478 U.S. 1, 13–14 (1986).  A First Amendment retaliation claim requires proof that

6    an officer took adverse action against a particular journalist "because of" their

7    protected activity and that the officer's conduct would chill a person of ordinary

8    firmness from continuing that activity.  *Lacey v. Maricopa County*, 693 F.3d 896,

9    916–17 (9th Cir. 2012).

10       Accordingly, determining whether Plaintiffs can establish their claims

11    requires individualized proof regarding the conduct of each journalist and officer,

12    the reasonableness of each officer's judgment, and the context of each protest or

13    interaction.  These issues cannot be adjudicated in the abstract or resolved on an

14    organizational basis.  They demand testimony, video evidence, and credibility

15    assessments unique to each alleged incident.  Because liability rests on these

16    person-specific factual showings, the claims cannot be proven—or defended—

17    without participation of the affected members themselves. *Warth v. Seldin*, 422

18    U.S. 490, 515–16 (1975); *NetChoice*, 2025 WL 2600007, at *6–7.  Thus, Plaintiffs

19    cannot satisfy the third element of *Hunt*, and their claims fail as a matter of law.

### c.    Plaintiffs Have Not Demonstrated a Sufficient Likelihood of Future Injury

22       To obtain prospective relief, Plaintiffs must show a "sufficient likelihood that

23    [they] will again be wronged in a similar way."  *City of Los Angeles v. Lyons*, 461

24    U.S. 95, 111 (1983).  A plaintiff lacks standing to obtain injunctive relief on the

25    basis of past injuries alone.  *Id.* at 103. Standing must be shown throughout the

26    litigation with the "manner and degree of evidence required at the successive stages

27    of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  Here,

28

09801.02810\44299480.1

1  Plaintiffs identify no plan by LAPD to restrict press access or use unlawful force,

2  nor any imminent event involving the same conditions.  Plaintiffs' allegations of

3  past incidents—spread across several different events months ago—cannot

4  establish the "real and immediate threat of repeated injury" required for injunctive

5  standing.  *Updike v. Multnomah County*, 870 F.3d 939, 947 (9th Cir. 2017) (quoting

6  *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)); *Lyons*, 461 U.S. at 105.

7      In the Order, the Court distinguished *Lyons* and *Vasquez* because the

8  plaintiffs in those cases could not show a realistic likelihood of being stopped or

9  subjected to police misconduct again, whereas the Plaintiffs here aver that they

10  intend to continue covering public protests where similar encounters with law

11  enforcement are possible. (Order at pp. 17–18.)  But Plaintiffs' voluntary intention

12  to engage in protected newsgathering does not equate to an imminent threat of

13  future unlawful conduct by the City; intent to exercise a constitutional right is not

14  itself evidence of an impending constitutional violation. *See Lyons*, 461 U.S. at

15  105–11; *Clapper v. Amnesty Int'l USA*, 568 U.S. at 410–14.

16      The record contains no showing of a "real and immediate" threat of repeated

17  injury resulting from a specific City policy or practice.  *Noem v. Vasquez Perdomo*,

18  __ S.Ct. __, 2025 WL 2585637,  *2–3 (2025) (Kavanaugh, J., concurring).  Rather,

19  LAPD has implemented new training and policies to comply with Penal Code

20  sections 409.7 and 13652. (Whiteman Decl. ¶¶ 3–15; Gomez Decl. ¶¶ 26, 30–36,

21  ECF No. 69.)  This evidence negates any claim of "continuing, present adverse

22  effects."  *O'Shea*, 414 U.S. at 495–96.

23      Plaintiffs' asserted injury depends on a series of contingencies — that a

24  future protest will occur, that they will cover it, that violence will erupt, and that an

25  individual officer will disregard state law and LAPD's policies.  Courts have

26  repeatedly held that such a "string of contingencies" is "too speculative and

27  conjectural for resolution by a federal court."  *Portland Police Ass'n v. City of*

28

BEST BEST & KRIEGER LLP

09801.02810\44299480.1

*Portland, By and Through Bureau of Police,* 658 F.2d 1272, 1274 (9th Cir. 1981);
see also *Clapper v. Amnesty Int'l USA*, 568 U.S. at 410; *San Deigo Cnty. Gun Rts.
Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996), abrogated in part on other
grounds by *District of Columbia v. Heller*, 554 U.S. 570 (2008).

### 3. <u>The Court Issued A Mandatory Injunction Without Making The Required Findings</u>

Mandatory injunctions are disfavored, and will not be granted unless the facts
and law clearly favor the moving party. *Garcia v. Google, Inc.,* 786 F.3d 733, 740
(9th Cir. 2015) (en banc). A mandatory injunction is one that "goes well beyond
simply maintaining the status quo pendente lite" or compels a party "to take
affirmative action." *Stanley v. Univ. of S. Cal.,* 13 F.3d 1313, 1320 (9th Cir. 1994)
(mandatory injunctions are not issued in doubtful cases) (emphasis and citations
omitted). Because such relief intrudes deeply into the affairs of the enjoined party,
courts require a showing far stronger than the serious questions or "likelihood of
success" standard that governs prohibitory injunctions. *Google, Inc.,* 786 F.3d at
738.

The Order's injunction is mandatory, not prohibitory, in significant part.
Paragraphs 7, 8, and 9 of the Order require the City to take affirmative actions—
including notifying all sworn officers of the injunction, incorporating the Order into
Department manuals and training materials, reissuing protest policies annually, and
appointing supervisory "liaisons" at every protest to ensure compliance. (See Order,
pp. 33–34.) These directives go well beyond preserving the status quo. They
compel the City to undertake new administrative and managerial measures, thereby
constituting a mandatory injunction. Yet the Court did not find—nor could it on this
record—that the law and facts "clearly favor" Plaintiffs' entitlement to such relief.
Instead, the Court applied the ordinary preliminary injunction standard and found
only that Plaintiffs had a "strong likelihood of success" on their state law claims

BEST BEST & KRIEGER LLP

2:25-CV-05423-HDV-E
EX PARTE APPLICATION FOR STAY OF
THE PRELIMINARY INJUNCTION
PENDING APPEAL

09801.02810\44299480.1

BEST BEST & KRIEGER LLP

and "raised serious questions" regarding their federal claims. (Order, p. 22.) The Court's conclusion that Plaintiffs "raised serious questions" on their First Amendment claims is expressly inconsistent with the Ninth Circuit's requirement heightened standard to justify affirmative, mandatory relief. *Garcia*, 786 F.3d at 740. The Ninth Circuit routinely vacates or stays mandatory injunctions where district courts fail to make explicit findings that the "facts and law clearly favor" the movant. *Id.*; *Stanley*, 13 F.3d at 1320. Because the Court failed to apply the heightened *Garcia* standard required for mandatory relief, and because its findings fall short of that demanding threshold, the City is likely to succeed on appeal.[2]

### 4.    The Court's Factual Findings Are Unsupported by the Record

The Court's factual findings underlying the preliminary injunction are unsupported by the record and, in several instances, directly contradicted by the City's evidence. The Court drew sweeping conclusions of intentional misconduct and retaliation without addressing exculpatory video footage, declarations, and documentary evidence showing that LAPD's actions were directed toward violent actors, not journalists. These factual errors further undermine any finding that Plaintiffs are likely to succeed on the merits.

***Tomassi Incident.*** The Court found that LAPD officer "aimed in Tomasi's direction, hitting her leg with a rubber bullet," and treated this as evidence that officers intentionally targeted members of the media. (Order, p. 7.) This conclusion is directly refuted by body-worn video and sworn declarations. The officer expressly stated on video that he was targeting individuals who were throwing

---

[2] In addition, the Court's reasoning that the injunction "mirrors the Defendants' own policies" (Order, p. 27) underscores that the order was not necessary to preserve any rights in dispute. If LAPD's policies already reflect the required conduct, a redundant mandatory injunction compelling the reiteration of those policies and reissuance cannot be justified under the heightened, mandatory injunction standard; it only serves to invite contempt risk for alleged deviations from procedures already in place.

09801.02810\44299480.1

bottles and other projectiles at officers, not Ms. Tomasi. (Whiteman Decl. ¶ 15(a);
Dkt No. 69.) The video confirms that the officer's narration contemporaneously
described his intent—to respond to assaults by violent actors—and made no
reference to Tomasi.  Specific intent cannot be presumed from the use of force
alone; it must be established by evidence that protected activity was a substantial or
motivating factor. *Cheairs v. City of Seattle*, 145 F.4th 1233, 1246–47 (9th Cir.
2025).

 *Nigro Incident.* The Court also erred in describing the incident involving
photojournalist Michael Nigro. The Order states that Nigro "stood on a pedestrian
overpass … far from protest activity," and was struck by projectiles, which the
Court treated as evidence of targeting. (Order, pp. 7, 18–19.) Yet Nigro's own
declaration referred to a "pole" adjacent to his position—an object that does not
exist at that location. (ECF No. 69 at 15(b).)  The Court's substitution of "bridge"
for "pole"—a term not used by Nigro—overlooks a key factual inconsistency that
impeached his testimony.

 *Perjury in the Orendorff Declaration.*  Plaintiffs' declarant Anthony
Orendorff testified that he was a journalist targeted by LAPD. In fact, he had no
press credentials and was arrested after attacking an officer, resisting arrest, and
attempting to flee. (Moreno Decl. Ex. A [10:39:50–10:42:35]; ECF No. 69 at 22.)
The Court's order does not address these facts or acknowledge that Orendorff's
sworn statements were directly refuted by video evidence.  The omission of this
clear impeachment undermines the reliability of the Court's factual findings.  A
district court may not credit testimony contradicted by undisputed video and
documentary evidence. See *Scott v. Harris*, 550 U.S. 372, 380 (2007).

 *Montez Harris Was Not a Journalist.*  The Court repeatedly cited the
incident involving Montez Harris as evidence of journalists being targeted. (Order,
pp. 5–7, 19–20.)  Yet the record shows that Harris lacked any visible press

Best Best & Krieger LLP

2:25-CV-05423-HDV-E
EX PARTE APPLICATION FOR STAY OF
THE PRELIMINARY INJUNCTION
PENDING APPEAL

1    identification, made no claim to be credentialed, and in fact threatened officers

2    while physically pushing a police horse. (Gomez Decl. Exs. GG, HH, II; ECF No.

3    69 at 19.)  Officers responded only after Harris shoved the horse—an act

4    constituting assault on a police animal under California law.

5      ***Non-Journalist Declarations.*** Several declarants whose experiences the

6    Court relied upon would not meet the injunction's own definition of "journalist."

7    The Court cited incidents involving individuals who lacked professional press

8    credentials, carried no identifiable media equipment, or were not affiliated with any

9    recognized outlet.  (See Order, pp. 6–8, 18–21.) Under the Order's stated indicia of

10    press status—professional credentials, equipment, or clothing identifying them as

11    media (Order, p. 32)—many of these individuals would not qualify as "journalists."

12    By granting relief based on testimony from individuals who fall outside the

13    injunction's scope, the Court created internal inconsistency and reinforced the

14    Order's vagueness problem.

15      ***Improper Presumption of Intent.*** Throughout its Order, the Court inferred

16    intent to retaliate against journalists from isolated uses of force during chaotic,

17    violent events. But the Ninth Circuit has expressly rejected such inferences. In

18    *Cheairs v. City of Seattle*, 145 F.4th atat 1246–47, the Ninth Circuit reaffirmed that

19    a First Amendment retaliation claim requires evidence that the plaintiff's protected

20    activity "was a substantial or motivating factor" in the officer's conduct, and it

21    affirmed summary judgment where the record contained no such evidence.  Here,

22    the Court made no finding of retaliatory motive supported by direct or

23    circumstantial evidence.  The record—including extensive body-worn video—

24    shows that LAPD's actions were directed toward violent individuals and threats to

25    officer safety, not toward journalists because of their reporting.

26      To the contrary, the declarations and video evidence establish that LAPD

27    officers consistently sought to accommodate and protect journalists during the June

28

BEST BEST & KRIEGER LLP

2:25-CV-05423-HDV-E
EX PARTE APPLICATION FOR STAY OF
THE PRELIMINARY INJUNCTION
PENDING APPEAL

09801.02810\44299480.1

1    2025 protests. Officers issued warnings before deploying crowd-control measures,

2    escorted media out of active arrest zones, and repeatedly acknowledged media

3    presence on body-worn video—"They're press—they're good." (Gomez Decl. Ex.

4    DD [14:25:30–14:58:55].) These statements demonstrate affirmative efforts to

5    respect and safeguard journalists' rights, not to retaliate against them.

6    **5.    The Injunction Is Impermissibly Vague and Unworkable**

7    Federal Rule of Civil Procedure 65(d)(1) requires that every injunction "state

8    its terms specifically" and "describe in reasonable detail—and not by reference to

9    the complaint—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(B)–

10   (C). These are "no mere technical requirements"; the rule is designed to prevent

11   uncertainty and confusion and to avoid contempt based on orders "too vague to be

12   understood." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974) (per curiam).

13   Consistent with that mandate, the Ninth Circuit requires injunctions to be narrowly

14   tailored and not more burdensome than necessary, particularly where they risk

15   intruding on agency discretion. *Bresgal v. Brock*, 843 F.2d 1163, 1170–72 (9th Cir.

16   1987).

17   **a.    The Definition of "Journalist" Is Unworkably Vague**

18   Although the First Amendment protects freedom of the press, it does not

19   define who qualifies as a journalist. *Branzburg v. Hayes*, 408 U.S. 665, 704 (1972)

20   (noting difficulty of defining "press" as a class of persons). Penal Code section

21   409.7 protects "[a] duly authorized representative of any news service, online news

22   service, newspaper, or radio or television station or network." (Pen. Code §

23   409.7(a)(1).) The phrase "duly authorized representative" denotes authorization

24   conferred by a news outlet—someone designated by a media entity to gather or

25   report information on its behalf. See *Leierson v. City of San Diego*, 184

26   Cal.App.3d 41, 49–51 (1986). This statutory structure reflects that press access is

27   intended to rest on a discernible link to a news organization rather than on self-

28

2:25-CV-05423-HDV-E
EX PARTE APPLICATION FOR STAY OF
THE PRELIMINARY INJUNCTION
PENDING APPEAL

09801.02810\44299480.1

BEST BEST & KRIEGER LLP

identification in the field.  LAPD policy mirrors this understanding. The December
8, 2021, memorandum from the Chief of Police implements Senate Bill 98 by
defining "members of the news media" as those holding valid press credentials or
identification issued by the LAPD, another law-enforcement agency, or a bona fide
news organization. (Order at p. 3 n.2; Sobel Decl. Ex. 80 [Dkt. 37].)

The Court's definition abandons that framework. The injunction extends
coverage to anyone exhibiting non-exclusive "indicia" of press status—such as
clothing, equipment, or positioning—and even states that a person "need not exhibit
every indicium to be considered a journalist." (Order, p. 5.) This open-ended
standard converts a limited statutory rule into a subjective, appearance-based test.
Under Penal Code section 409.7, an officer can confirm press status by verifying
authorization from a news entity; under the Court's version, anyone with a
smartphone or "PRESS" vest may claim protection regardless of affiliation.  Lt.
Dunster explains why this is unworkable. In practice, "PRESS" gear can be
purchased online, genuine reporters often dress like protestors, and countless
influencers or self-described "citizen journalists" film on smartphones
indistinguishable from participants. (Dunster Decl. ¶¶ 14–15.) Officers in protective
gear cannot safely pause to research each claim of media status.

The Court cited legislative history and a 1984 Attorney General opinion to
conclude that "the question of who counts as a 'duly authorized representative' …
is decided by the news media, not the officers on scene." (Order at p. 19 & n.11,
quoting 67 Ops. Cal. Atty. Gen. 535, 539 (1984).)  But the cited materials do not
support the Court's broad application.  The Attorney General opinion simply
rejected the notion that police may grant or withhold authorization; it explained that
"duly authorized" means authorized by the news organization itself.  *See* 67 Ops.
Cal. Atty. Gen.535, 539 (1984).  Likewise, the Legislature's decision to delete draft
language requiring authorization "from a commanding officer on scene" in Senate

09801.02810\44299480.1

Best Best & Krieger LLP

Bill 98 clarified only that officers do not control press access, not that anyone claiming to be media must be accepted as such. Read together, these sources tie "duly authorized" to verifiable authorization from a bona fide news organization— not to self-identification in the field.

### b.    The Scope of Covered Persons Is Undefined and Overbroad

The Order binds "Defendants and their officers, agents, servants, employees, attorneys and any person in active concert or participation with any of the foregoing." (Order, ¶ 1.) As Lt. Dunster explains, LAPD routinely receives assistance from more than twenty outside agencies—LASD, CHP, Ventura Sheriff, and federal partners such as DHS and ICE—each operating under its own command structure and use-of-force policies. (Dunster Decl. ¶ 10.) Because LAPD cannot direct or discipline those officers, the injunction effectively holds the City responsible for conduct beyond its control; this violates Rule 65(d).

### c.    The Liaison-Officer Requirement Is Unworkable

Paragraph 9 requires the appointment of "at least one lieutenant or above" at every protest to ensure compliance. Lt. Dunster describes this as "non-achievable." (Dunster Decl. ¶¶ 11–12.) LAPD cannot assign a command-level officer to every spontaneous or small-scale event, particularly when multiple protests occur simultaneously. The Order does not explain whether the liaison must be physically present, whether several are needed for concurrent scenes, or whether other qualified supervisors—such as sergeants or detectives—may serve that function. This requirement "sets the LAPD up for inevitable failure." (*Id*. ¶ 12.)

### d.    The Standards Governing Temporary Detentions and "Interference" Are Ambiguous

Paragraphs 1(a) and 2(c) forbid detaining journalists for failure to disperse but provide no exception for brief, safety-based detentions used to verify

09801.02810\44299480.1

credentials. Lt. Dunster explains that LAPD's "inner-perimeter" tactic—a common method to de-escalate violent situations—involves temporarily detaining all persons, including media, until they can be safely released. (Dunster Decl. ¶ 16.) California Penal Code § 409.7 expressly permits restricting press access when "unrestricted access will interfere with emergency operations," but the injunction omits this statutory qualification. The same vagueness pervades the prohibitions on "interfering with" or "obstructing" journalists. (Order, ¶¶ 1(b), 2(b).)  Lt. Dunster testifies that officers cannot tell whether directing a reporter to move away from a skirmish line or momentarily blocking a camera during an arrest might constitute "interference." (Dunster Decl. ¶ 17.)

### e.     The Use-of-Force Provisions Are Vague and Internally Inconsistent

Paragraph 3 bars the use of less-lethal munitions or chemical agents against journalists "not posing an imminent threat," but provides no definition of "imminent threat" or "objectively dangerous and unlawful situation." Lt. Dunster explains that such tools—40 mm launchers, 37 mm "skip-fire" rounds, and CS gas—cannot be narrowly confined to violent actors when journalists are embedded within the crowd.  (Dunster Decl. ¶¶ 7–9.)  He cites the June 8, 2025, events, when CS gas was essential to stop Molotov-cocktail and fireworks attacks and caused no reported injuries.  (*Id*. ¶¶ 5–6.)  The injunction's absolute restriction disregards those realities and forces officers to choose between violating the Order or failing to protect life and property.  Moreover, Paragraph 3(a)'s mandate for "repeated, audible announcements" in "multiple languages" before deploying less-lethal options is unworkable.  As Dunster notes, warnings are often impossible when officers face an unexpected assault or must act instantaneously to defend against imminent harm.  (*Id*., ¶ 18.)  The Order thus conflicts with California Penal Code §

Best Best & Krieger LLP

09801.02810\44299480.1

13652, which already governs less-lethal use and requires only "objectively reasonable" warnings.

### f.    Overlap with Existing State Law Creates Confusion

Several provisions duplicate or conflict with existing California statutes—most notably Penal Code §§ 409.7 and 13652—which already delineate journalists' rights and the lawful limits on crowd-control tools. As Lt. Dunster observes, the Order's overlapping but inconsistent mandates create confusion in training and policy implementation, increasing the likelihood of inadvertent noncompliance. (Dunster Decl. ¶ 18.) Where state law already supplies clear standards, additional and inconsistent federal language only deepens uncertainty and impairs LAPD's ability to maintain public safety.

### g.    Internal Inconsistencies Undermine Clarity

The injunction also contradicts itself in ways that make compliance impossible.  Paragraph 3 prohibits the use of crowd-control weapons "against journalists," while Paragraph 4 simultaneously states that "incidental exposure" to such devices does not violate the Order. Yet the Court's findings cite several incidents of "incidental" contact as evidence of violations justifying relief. (Order, pp. 6–8, 18–21.)  This inconsistency leaves officers without clear guidance on when lawful crowd-control measures become contemptuous conduct. Similarly, Paragraph 3(a) requires "repeated, audible announcements" in "multiple languages," yet provides no definition of "repeated," "audible," or "appropriate."

### B.    The Injunction Will Cause Immediate and Irreparable Harm

A stay pending appeal is also warranted because, absent such relief, the City will suffer immediate and irreparable harm. As discussed above, there are several vague and ambiguous portions of the injunction, which Lieutenant Dunster explains are impossible to implement with certainty in the field. (Dunster Decl. ¶¶ 7–18.) As a result, the injunction creates an ongoing risk that LAPD officers and City

BEST BEST & KRIEGER LLP

2:25-CV-05423-HDV-E
EX PARTE APPLICATION FOR STAY OF
THE PRELIMINARY INJUNCTION
PENDING APPEAL

09801.02810\44299480.1

leadership could face contempt for actions taken in good faith.  Because contempt carries severe penalties for both individual officers and the City, the risk of enforcement based on unavoidable ambiguities constitutes a classic form of irreparable injury. *See Nken*, 556 U.S. at 434 (irreparable harm exists where compliance risks serious and unrecoverable consequences). The City thus faces a continuing, immediate, and irreparable threat from an injunction it cannot reliably obey.

Further, the Supreme Court has recognized that such interference with a government's ability to enforce its laws and fulfill its protective duties constitutes irreparable harm. As Chief Justice Roberts explained, "[a]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."  *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers).  The same principle applies here: the City of Los Angeles, acting through its law-enforcement officers, is enjoined from carrying out its core statutory duties to maintain public safety under state and local law.  Moreover, the chilling effect extends beyond operational command. Supervisors hesitate to issue clear directives, fearing that even well-intentioned instructions could later be deemed "interference" or "obstruction" of journalists under the injunction.  (Dunster Decl. ¶ 17.)  This paralysis places officers and civilians alike at greater risk of injury.

### C.     No Substantial Injury to Plaintiff / Public Interest Favors a Stay

A stay of the injunction pending appeal will not substantially injure Plaintiffs. Even without the injunction, journalists covering protests are protected by California Penal Code section 409.7, which guarantees media access to closed areas under specified conditions, and by the First Amendment, which prohibits viewpoint discrimination and protects newsgathering activities in traditional public forums. These laws remain fully enforceable and provide ample remedies in the

BEST BEST & KRIEGER LLP

09801.02810\44299480.1

Best Best & Krieger LLP

1    event of alleged violations.  As noted above, the Court itself recognized that LAPD

2    has complied with Penal Code section 409.7 in numerous instances and permitted

3    journalists to operate behind skirmish lines or within closed areas when safe and

4    appropriate. (Order, pp. 23–24.) These findings confirm that the City already

5    implements and honors the rights guaranteed under California and federal law.

6    Plaintiffs cannot demonstrate any cognizable injury from a temporary stay. A stay

7    would merely preserve the pre-injunction status quo—the very period during which

8    LAPD consistently acted to accommodate and protect members of the media,

9    subject to the same legal obligations that existed prior to this litigation.

10        The public interest also weighs decisively in favor of a stay LAPD is charged

11    by law with maintaining public safety, preventing crime, and protecting life and

12    property. (See Los Angeles City Charter § 574.) When courts enjoin a municipality

13    from performing those fundamental duties, the public suffers an institutional injury

14    that extends far beyond the parties to the litigation.  See, e.g., *Maryland v. King*,

15    567 U.S. at 1303.  That principle applies with full force here.  The injunction

16    impairs the City's ability to fulfill its statutory and constitutional obligation to

17    preserve public order, endangering both officers and the public.  Indeed, the public

18    interest lies not in constraining legitimate law enforcement activity, but in ensuring

19    it can be carried out safely, lawfully, and effectively. Courts in the Ninth Circuit

20    have consistently recognized that the public interest favors the effective

21    enforcement of laws designed to protect public safety.  *Golden Gate Rest. Ass'n v.*

22    *City & Cnty. of San Francisco*, 512 F.3d 1112, 1126 (9th Cir. 2008); *see Nken*, 556

23    U.S. at 436 ("There is always a public interest in prompt execution of [laws].")

24        In short, because the injunction's vague provisions risk paralyzing legitimate

25    law-enforcement responses, staying the injunction pending appeal is necessary to

26    protect the people of Los Angeles and to preserve the City's ability to meet its

27    fundamental obligation to safeguard life and property.

28

2:25-CV-05423-HDV-E
EX PARTE APPLICATION FOR STAY OF
THE PRELIMINARY INJUNCTION
PENDING APPEAL

09801.02810\44299480.1

1   **III.    <u>CONCLUSION</u>**

2          For the reasons above, the City requests that the Court stay enforcement of

3   the Preliminary Injunction pending appeal.

4

5   Dated:  October 15, 2025                    BEST BEST & KRIEGER LLP

6

7                                              By: _____
                                                   RICHARD T. EGGER
8                                                  A. PATRICIA URSEA
                                                   ZACHARY SCALZO
9                                                  Attorneys for Defendants
                                                   CITY OF LOS ANGELES; JIM
10                                                 MCDONNELL

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2:25-CV-05423-HDV-E
EX PARTE APPLICATION FOR STAY OF
THE PRELIMINARY INJUNCTION
PENDING APPEAL

09801.02810\44299480.1

BEST BEST & KRIEGER LLP