Carol A Sobel SBN 84483
Weston Rowland SBN 327599
Law Office of Carol A. Sobel
2632 Wilshire Boulevard, #552
Santa Monica, CA 90403
t. (310) 393-3055
e. carolsobellaw@gmail.com
e. rowland.weston@gmail.com

David Loy SBN 229235
Aaron R. Field SBN 310648
First Amendment Coalition
534 4th St., Suite B
San Rafael, CA 94901
t. (415) 460-5060
e. dloy@firstamendmentcoalition.org
e. afield@firstamendmentcoalition.org

Peter Bibring, SBN 223981
Law Office of Peter Bibring
2140 W. Sunset Blvd. #203
Los Angeles, CA 90026
t. (213) 471-2022
e. peter@bibringlaw.com

Paul Hoffman, SBN 71244
Michael Seplow, SBN 150183
John Washington, SBN 315991
Schonbrun, Seplow, Harris, Hoffman &
Zeldes LLP
200 Pier Avenue #226
Hermosa Beach, California 90254
t.(310) 396-0731
e. hoffpaul@aol.com
e. mseplow@sshhzlaw.com
e. jwashington@sshhlaw.com

Susan E Seager SBN 204824
Law Office of Susan Seager
128 N. Fair Oaks Avenue
Pasadena, CA 91103
t. (310) 890-8991
e. susanseager1999@gmail.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES PRESS CLUB, STATUS COUP,<br><br>PLAINTIFFS,<br><br>v.<br><br>CITY OF LOS ANGELES, a municipal entity, JIM McDONNELL, LAPD CHIEF, sued in his official capacity;<br><br>DEFENDANTS. | Case No. 25-cv-05423 HDV-E<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT CITY OF LOS ANGELES'S EX PARTE APPLICATION FOR A STAY OF THE PRELIMINARY INJUNCTION PENDING APPEAL**<br><br>Hon. Hernán D. Vera<br><br>Date:  n/a<br>Time:  n/a<br>Ctrm:  5B |

**INTRODUCTION**

Defendants' ex parte application for a stay is both untimely and improper. The Court should reject it on procedural grounds, or allow Plaintiffs to file opposition briefing on a reasonable timeline since Defendants took weeks to prepare their motion.

This Court issued its Order Granting Plaintiffs' Motion for Preliminary Injunction ("Preliminary Injunction"), Dkt. No. 83, on September 10, 2025. Now, *five weeks* later, the City files a request to stay the Preliminary Injunction pending appeal on grounds that there is an upcoming "No Kings" protest this weekend without offering any evidence related to the protests or urgency and without even attempting to explain why they could not have brought this as a noticed motion weeks ago. Plaintiffs strongly disagree that speculation about the "No Kings" protest would be a basis for staying the injunction. With their expansive intelligence, Defendants no doubt were aware of the "No Kings" protest long before this week. Indeed, Defendants first gave notice of their intent to move for a stay on September 26, 2025 (though not as an ex parte and without mentioning any specific protests), then inexplicably waited nearly three weeks before filing it, yet still demand that the Court and Plaintiffs respond on short timelines due to their unsupported claim of urgency.

Additionally, what Defendants label a motion for a stay is, in fact, an untimely motion for reconsideration. Local Rule 7-18 requires a motion for reconsideration be filed within 14 days of the challenged order. Defendants missed that mark by weeks.

Defendants devote the bulk of their application — fifteen of the twenty pages — to arguments that the City is likely to succeed on the merits of their appeal. Most of these arguments (on Plaintiffs' lack of standing, on the impropriety of applying an injunction to nonparties, on the factual basis for the Preliminary injunctions) rehash the same points they made in opposition to Plaintiffs' motion for a Preliminary Injunction and which the Court already rejected. Defendants offer some modifications to these arguments, and attempt to introduce additional evidence, all readily available to them at the time they prepared their opposition to Plaintiffs' Motion for a Preliminary Injunction two months ago. The Court should reject these arguments both on the merits for the reasons it already did, and because they constitute an improper motion for reconsideration and improper efforts to supplement the record.

Notably absent from Defendants' application is any meaningful attempt to show irreparable harm

1

from the injunction remaining in place while the appeal is pending. The Ninth Circuit has already set a briefing schedule, Dkt. No. 93, that will have the appeal of the Preliminary Injunction fully briefed by December 5, 2025 — just seven weeks away. The City has presumably complied with the Preliminary Injunction for the last five weeks (and with the TRO that included similar substantive terms for nearly nine weeks before that), and makes no showing why Defendants cannot continue for the next seven. This is particularly true since the Preliminary Injunction does not break new ground, but simply requires the City to follow existing law, including the First Amendment as detailed in the Ninth Circuit's opinion in *Index Newspapers LLC v. United States Marshals Service*, 977 F.3d 817 (9th Cir. 2020), California Penal Code sections 409.7 and 13652, as well as LAPD's own policies.

## LEGAL STANDARD

A stay pending appeal is an "extraordinary remedy." *United States v. Mitchell*, 971 F.3d 993, 999 (9th Cir. 2020) (quotation omitted). Such a "stay is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (quotation omitted). Rather, a stay pending appeal is an "exercise of judicial discretion," *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926), and "[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken*, 556 U.S. at 433-34. In exercising discretion to consider a stay, courts consider: "(1) whether the stay applicant has made a strong showing that [they are] likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id*. at 434 (quotation omitted). "The first two factors . . . are the most critical." *Id*.

## ARGUMENT

### I.   THE COURT SHOULD REJECT THE CITY'S APPLICATION AS AN IMPROPER *EX PARTE* WITHOUT PREJUDICE TO RENEWING AS A NOTICED MOTION

#### A.   Defendants have made no showing of need for *ex parte* relief

As this Court expressly notes in its chamber rules, "Ex parte applications are solely for extraordinary relief and are rarely justified." Civil Standing Order, Dkt. 9 at 18:2; *see also Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995).

"A party filing an ex parte application must support its request for emergency relief with 'evidence ... that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according

to regular noticed motion procedures,' and a showing 'that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect.'" *Betty's Best, Inc. v. Yuyao Aggpo Elec. Tech. Co.*, No 2:22-cv-09096-MCS-JPR, 2023 WL 8044338, at *1 (C.D. Cal. Feb. 15, 2023) (quoting *Mission Power*, 883 F. Supp. at 492).

Defendants have not even attempted this showing, nor could they meet this standard. Defendants assert some vague harm they will suffer if required to comply with the injunction. Against Defendants' claims, Plaintiffs submitted extensive evidence of members of the press being shot in the head, face, eyes and other vulnerable body areas in violation of Ninth Circuit clearly established law and LAPD policy. Staying the injunction allows Defendants to continue its lawless crowd control practices. First, Defendants introduce *zero* evidence that their "cause will be irreparably prejudiced" if heard as a noticed motion. *Id.* They assert that there is a protest this weekend, but provide *no evidence* — no evidence of the place, nature, or anticipated size of the protest, or of any reason to think they will face even a perceived need to use force or address journalists. They have simply waited five weeks and asserted that there is an urgency.

Second, to the extent Defendants may suggest that the upcoming protests are generally known, they have provided no explanation why they could not move for a stay sooner and so have failed to provide the required showing that they "without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Id.* Indeed, **the City first provided Plaintiffs' counsel with notice of their intent to move for a stay nearly three weeks ago on September 26, 2025** (although not as an ex parte and not refence to any specific protest). Bibring Dec., ¶ 2 & Exh. A. The parties met and conferred on Monday, September 29, and Plaintiffs agreed not to oppose a motion to shorten briefing on the stay that provided them their full time to respond. *Id.* ¶ 3. But the City did not file their motion then, but waited nineteen days — nineteen days that could have been used to follow the ordinary noticed motion procedures — then filed it as an emergency *ex parte*, forcing Plaintiffs to respond in 24 hours and asking the Court to rule with urgency. This is an egregious abuse of the *ex parte* process and the Court should reject it out of hand.

**B.    Addressing Defendants' improper *ex parte* on the merits would bless defendants who seek to short-circuit the requirements of FRAP 8**

The Court should reject Defendants' application as an improper *ex parte*, without prejudice to renewing it as a noticed motion, because allowing Defendants to seek a stay of injunction on an unjustified *ex parte* basis — even by this Court denying their application on the merits — would undermine appellate rules and establish perverse incentives for future defendants challenging injunctions.

Although civil defendants may often wish to address a petition for a stay of an injunction to an appellate court rather than the district court that just issued the injunction order, Federal Rule of Appellate Procedure 8(a)(1)(C) expressly requires that a "party must ordinarily move first in the district court" for "an order suspending, modifying, restoring, or granting an injunction while an appeal is pending." *See Baker v. Adams Cnty./Ohio Valley Sch. Bd.*, 310 F.3d 927, 930 (6th Cir. 2002) (noting that the "cardinal principle of stay applications" under Federal Rule of Appellate Procedure 8(a) is that parties must ordinarily move first in the district court (quoting 16A Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3954 (3d ed. 1999)).

There are important reasons for this rule. The Supreme Court has emphasized the value of having a district court, which is most familiar with the record in the case, first address the stay motion. *See Cumberland Tel. Co. v. Pub. Serv. Comm.*, 260 U.S. 212, 219 (1922) (cited in the Advisory Committee Note to Fed. R. App. P. 8(a)) (acknowledging the importance of a district court's initial review of a stay motion because it "is the one which has considered the case on its merits and, therefore, is familiar with the record."); *see also Jones v. Critchfield*, No. 1:25-CV-00413-DCN, 2025 WL 2496314 (D. Idaho Aug. 29, 2025) (denying plaintiffs' request for an injunction pending appeal, explaining that "the Court recognizes this is not only a procedural step Plaintiffs must take before seeking an injunction from the Ninth Circuit, but having the District Court address the matter first plays an important substantive role in the efficient administration of justice").

Addressing Defendants' improper *ex parte* on the merits — even by denying it — establishes a method for other civil defendants to short-circuit the process contemplated by Rule 8 by seeking a stay via an unjustified *ex parte* that gets quickly rejected and allows them to move to the Court of Appeals. Regardless what the intent of Defendants here might be, the Court should not incentivize abuse of the *ex parte* process in future cases. The Court should reject Defendants' application solely on procedural

4

grounds, as an improper *ex parte*, without prejudice to their bringing the measure before the Court via

noticed motion, or should simply set a reasonable briefing schedule.

## II.    DEFENDANTS' RECYCLED ARGUMENTS OPPOSING THE PRELIMINARY INJUNCTION DO NOT CONSTITUTE A "STRONG SHOWING" THEY WILL SUCCEED ON THE MERITS.

To justify a stay, Defendants "must show a *strong* likelihood of success on the merits." *Index,*

977 F.3d at 824 (emphasis in original). They do not come close.[1]

### A.    Defendants' Application is an Improper Motion for Reconsideration

Defendants' Ex Parte Application is a thinly disguised motion for reconsideration that asks this

Court to reverse itself on every element of its Preliminary Injunction decision — its findings that

Plaintiffs have standing, that Plaintiffs' are likely to succeed on the merits of their claims, that Plaintiffs'

would suffer irreparable harm in the absence of an injunction, and that the balance of equities and public

interest favor an injunction — based on purported facts and law that were readily available and could

have been presented to the Court in the lengthy time this motion was briefed and then argued. The City

cannot circumvent the Local Rules by calling the motion something other than what it is.

Under Local Rule 7-18, "A motion for reconsideration of an Order on any motion or application

may be made only on the grounds of (a) a material difference in fact or law from that presented to the

Court that, in the exercise of reasonable diligence, could not have been known to the party moving for

reconsideration at the time the Order was entered, or (b) the emergence of new material facts or a change

of law occurring after the Order was entered, or (c) a manifest showing of a failure to consider material

facts presented to the Court before the Order was entered." In addition, "[n]o motion for reconsideration

may in any manner repeat any oral or written argument made in support of, or in opposition to, the original

motion." *Id.* Significantly, "[a]bsent good cause shown, any motion for reconsideration must be filed no

later than 14 days after entry of the Order that is the subject of the motion or application."

Defendants' Motion for a Stay violates all three prohibitions in Local Rule 7-18: the motion is

---

[1] Plaintiffs oppose Defendants' renewed arguments that they likely to succeed on the merits of the appeal for the same reasons set forth by the Court and Plaintiffs' brief in support of their motion for preliminary injunction. *See* Preliminary Injunction, Dkt. No. 83; Dkt. No. 47. To the extent Defendants have raised any new arguments, Plaintiffs request an opportunity to address them on a reasonable briefing schedule rather than through this unjustified ex parte application.

untimely, it advances no new law or evidence that Defendants could not have presented at the time Plaintiffs' motion for a preliminary injunction was argued nearly two months ago and it repeats the prior arguments the Court rejected.

**B.    Defendants' Effort to Add Previously Available Materials to the Record is Improper and Does not Help Them**

As evidence in support of their application, Defendants submit two body-worn camera videos from June 8, 2025, a declaration from Lt. Dunster of LAPD's Metro division that provides his firsthand accounts of the protests and discusses the terms of the Preliminary Injunction, raising concerns about particular provisions. All this material was available previously. Certainly the videos and testimony regarding June 8 protests were available when the City filed its papers in opposition to Plaintiffs' Motion for Preliminary Injunction, Dkt. No. 69, on August 18, 2025. Nor can the City even claim insufficient time to prepare. On Plaintiffs' stipulation, this Court provided the City four weeks after Plaintiffs filed their motion to file their response. *See* Dkt. No. 59 (Order Re Stipulated Agreement on briefing schedule).

A district court reviewing a motion to stay a preliminary injunction should not examine new evidence that was available to the party proffering such evidence at the briefing stage and before an injunction was entered. *See Commure, Inc. v. Canopy Works, Inc*., No. 5:24-CV-02592-NW, 2025 WL 2601555, at *1 (N.D. Cal. May 13, 2025) (explaining that "a motion to stay is not an opportunity to relitigate matters, submit new evidence, or raise new arguments") (citing *Trading Bay Energy Corp. v. Union Oil Co. of California*, 225 F.App'x. 428, 430 (9th Cir. 2006)). In declining to consider such new evidence, federal courts have analogized a motion to stay with the standards governing a motion for reconsideration. *See, e.g*., *Newspaper, Newsprint, Mag. & Film Delivery Drivers, Helpers, & Handlers, Int'l Bhd. of Teamsters, Loc.Union No. 211 v. PG Publ'g Co*., No. 2:19-CV-1472-NR, 2019 WL 9101872, at *2 (W.D. Pa. Dec. 27, 2019); *ODonnell v. Harris Cnty*., 260 F. Supp. 3d 810, 815 (S.D. Tex. 2017). The Court should reject the City's new submission.

**C.    The Injunction Is Not Overbroad**

A mandatory injunction is one that "goes well beyond simply maintaining the *status quo pendente lite*." *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994) (injunction requiring university to renew coach's expired contract at substantially higher pay was mandatory). The injunction here is a

"[p]rohibitory injunction" simply to "preserve the status quo pending a determination of the action on the merits," *Sierra Club v. Trump*, Case No. 19-cv-00892-HSG; Case No. 20-cv-01494-HSG; 2025 U.S. Dist. LEXIS 190929, *15-16 (N.D. Cal. 2025) (quotation omitted). *See also Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1061 (9th Cir. 2014) (quotation omitted). It requires the City to follow the law, and the status quo is the existing legal standards of *Index Newspapers*, the two Penal Code sections enacted after the George Floyd protests and LAPD policies implementing the Penal Code provisions.[2]

Moreover, in circumstances involving 40mm KIPs[3] at one of the 2020 Floyd protests, the Ninth Circuit recently affirmed the denial of qualified immunity to an officer who shot a peaceful protestor in the head. The Court underscored that the manufacturer's description cautions that the 40mm foam baton is intended to "incapacitate" the target, not disperse someone. *Sanderlin v. Dwyer*, 116 F.4th 905, 917 (9th Cir. 2024). Significantly, the Ninth Circuit also held in *Sanderlin* that the unconstitutionality of this use of force against protestors was "clearly established" by the Circuit's prior decisions in *Nelson v. City of Davis*, 685 F.3d 867, 873-74 (9th Cir. 2012) and *Deorle v. Rutherford*, 272 F.3d 1272, 1279 (9th Cir. 2001). Together, *Nelson* and *Deorle* clearly established that the use of force at issue here and in *Sanderlin* was unreasonable under the circumstances. *Sanderlin*, *supra*, at 917. In this respect, too, the injunction only requires the Defendants to comply with "clearly established" Ninth Circuit law when they deploy the 40mm launchers in a protest.

The only arguably "mandatory" act in the Court's preliminary injunction is for Defendants to have an officer of sufficient rank on site, rather than just on call, at protests to ensure compliance with the Preliminary Injunction. Preliminary Injunction at 33. But California Penal Code Section 409.7 already requires that journalists "be permitted to contact a supervisory officer immediately" if they believe they have been wrongfully detained, so the Preliminary Injunction merely requires presence of that officer on scene. But this procedural safeguard to help ensure compliance with the substantive terms of the Preliminary Injunction does not impose any substantive obligations on the City in how they respond to

---

[2] Defendants purport to quote language from Penal Code § 409.7 that "expressly permits restricting press access when 'unrestricted access will interfere with emergency operations,'" which the Preliminary Injunction does not.  But that language simply does not appear in the text of § 409.7.

[3] The 40mm KIPS launchers are the primary crowd control weapons visible in the exhibits submitted by Plaintiffs in support of the injunction.

PLAINTIFFS' OPPOSITION TO CITY'S EX PARTE APPLICATION
FOR STAY OF PRELIMINARY INJUNCTION PENDING APPEAL

journalists and does not go "well beyond simply maintaining the status quo."[4]

## III.    DEFENDANTS HAVE NOT SHOWN IRREPARABLE HARM WITHOUT A STAY PENDING APPEAL AS THE PRELIMINARY INJNCTION'S TERMS ARE TAKEN FROM *INDEX NEWSPAPERS*, THE CALIFORNIA PENAL CODE, AND LAPD'S OWN POLICIES, AND ARE WORKABLE

It is difficult to understand how Defendants are harmed absent a stay. The term "journalist" in the Court's order is consistent with past orders issued by the LAPD since 2020. An October 2020 sent by then-Deputy Chief Dominic Choi states that "the Department WILL recognize individuals who self-identify as media representatives and will NOT require specific media credentials. … While officers can ask individuals who identify themselves as a member of the media for identification from the organization they represent, which may consist of a business card or company ID, **the inability to produce identification does not preclude an individual from acting as a member of the media."** *See* Dkt. No. 37, Exh. 79 to Sobel Dec., at 136 (Choi memo dated Oct. 30, 2020) (emphasis in original). The LAPD's definition of a "journalist" is consistent with the definition in the similar injunction upheld by the Ninth Circuit in *Index Newspapers*, 977 F.3d at 823; *see also Index Newspapers LLC v. City of Portland*, 480 F. Supp. 3d 1120, 1156 (D. Or. 2020).[5]

This definition of a "journalist" has been the operational standard for Defendants for the past five years. It provides more clarity than the definition in California Penal Code section 409.7, which applies to a "duly authorized representative of any news service, online news service, newspaper, or radio or television station or network." California Penal Code section 409.7(a)(1).

---

[4] To avoid any doubt on this point, the Court could also make findings that, for the reasons already articulated in the Preliminary Injunction, and based on the evidence and arguments already submitted in support thereof (including the evidence of LAPD's conduct on August 8, 2025, when they blatantly violated the TRO then in effect), the law and facts "clearly favor" the issuance any arguably mandatory terms in the Preliminary Injunction. *Stanley*, 13 F.3d at 1320.

[5] "To facilitate the…identification of Journalists…the following shall be considered indicia of being a Journalist: visual identification as a member of the press, such as by carrying a professional or authorized press pass, carrying professional gear such as professional photographic equipment, or wearing a professional or 2 authorized press badge or other official press credentials, or distinctive clothing, that identifies the wearer as a member of the press…. These indicia are not exclusive[.] [Law enforcement officials] shall not be liable for unintentional violations of this Order in the case of an individual who does not carry or wear a press pass, badge, or other official press credential, professional gear, or distinctive clothing that identifies the person as a member of the press. *Index Newspapers LLC v. City of Portland*, 480 F. Supp. 3d 1120, 1156 (D. Or. 2020) (emphasis added). *See also Goyette v. City of Minneapolis*, Case No. 20-cv-1302, 2021 WL 5003065, at *16 (WMW/DTS) (D. Minn. Oct. 28, 2021).

8

## IV.    A STAY WOULD BE CONTRARY TO THE PUBLIC INTEREST

Under the fourth *Nken* factor, Defendants must prove that "issuance of the stay will [not] substantially injure" Plaintiffs or the public. *Nken*, 556 U.S. at 433-35. Defendants cannot carry their burden under this prong of *Nken*. Without the injunction, Plaintiffs risk serious physical injury by doing their job of covering protests and bringing news to the public. Defendants curiously argue that:

> Even without the injunction, journalists covering protests are protected by California Penal Code section 409.7, which guarantees media access to closed areas under specified conditions, and by the First Amendment, which prohibits viewpoint discrimination and protects newsgathering activities in traditional public forums. These laws remain fully enforceable and provide ample remedies in the event of alleged violations.

Defs. Ex Parte Application at 30:23-27. But of course, the Court entered the Preliminary Injunction based on proof of widespread pattern of violations of section 409.7, and the Preliminary Injunction was entered as a remedy for those violations and simply requires the City to follow the law. The City cannot have it both ways. If the City can comply with Penal Code section 409.7, it can follow the injunction. And if it cannot — as its long-running history of using force on and denying access to journalists at protests and the Court's factual findings show—the Preliminary Injunction is unquestionably necessary.

Courts also have "consistently recognized the significant public interest in upholding First Amendment principles." *Associated Press v. Otter*, 682 F.3d 821, 826 (9th Cir. 2012) (quotation marks omitted); *Index Newspapers*, 977 F.3d at 837-38. That is why, when a plaintiff "raise[s] serious First Amendment questions," … the balance of hardships "tips sharply in [the plaintiff's'] favor." *Cmty. House, Inc v. City of Boise*, 490 F.3d at 1041, 1059 (9th Cir. 2007) (alterations in original) (quotation marks omitted). And it is "always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quotation marks omitted) (granting injunction under Fourth Amendment).

The Ninth Circuit has repeatedly emphasized the importance of protests and the press in our constitutional democracy. *Collins*, 110 F.3d at 1372 ("Courts have many times emphasized the importance of government's permitting the public to engage in spontaneous First Amendment activity, such as demonstrations, in response to controversial events."); *id.* at 1371 ("A function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to

9

anger") (cleaned up); *Index*, 977 F.3d at 831 ("[T]he press has long been understood to play a vitally important role in holding the government accountable"); press because it would "limit the circulation of information to which the public is entitled in virtue of the constitutional guaranties") (emphasis added). Indeed, the "Constitution specifically selected the press . . . to play an important role in the discussion of public affairs" to serve as "a powerful antidote to any abuses of power" by "keeping officials elected by the people responsible to all the people whom they were selected to serve." *Mills v. Alabama*, 384 U.S. 214, 219 (1966) (citation omitted). "Filming the police contributes to the public's ability to hold the police accountable, ensure that police officers are not abusing their power, and make informed decisions about police policy." *Turner v. Lieutenant Driver*, 848 F.3d 678, 689 (5th Cir. 2017). Thus, "excluding the media from public fora can have particularly deleterious effects on the public interest." *Index Newspapers*, 977 F.3d at 830.

The media's role in informing the public is especially important here, where the protests and the LAPD responses have been issues of wide political debate. "The Free Speech Clause exists principally to protect discourse on public matters." *Brown v. Entm't Merch. Ass'n*, 564 U.S. 786, 790 (2011). It reflects "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). It is "[p]remised on mistrust of governmental power." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010). "[I]t furthers the search for truth," *Janus v. Am. Fed'n of State, Cty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2464 (2018), and "ensure[s] that . . . individual citizen[s] can effectively participate in and contribute to our republican system of self-government." *Globe Newspaper*, 457 U.S. at 604. Unless Plaintiffs' rights are protected, the public's ability to engage meaningfully in a constitutional democracy will be severely impaired. *Leigh*, 677 F.3d at 900 ("The free press is the guardian of the public interest, and the independent judiciary is the guardian of the free press.").

Dated:   October 16, 2025

Respectfully submitted,

LAW OFFICE OF CAROL A. SOBEL
LAW OFFICE OF PETER BIBRING

By: _____
          Peter Bibring

*Attorneys for Plaintiffs*

10

PLAINTIFFS' OPPOSITION TO CITY'S EX PARTE APPLICATION
FOR STAY OF PRELIMINARY INJUNCTION PENDING APPEAL